**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**John Cesario,**
**Carol Bergquist (Cesario)**
**Plaintiffs**

**V.** **Case # 05-905**

**Stephen C. Bergquist**
**Defendant**

# MOTION TO DISMISS

Now comes the Defendant Stephen C. Bergquist and moves this Honorable Court to dismiss, **with prejudice** the above, (#05-905) "Complaint". This "Complaint" mirrors all claims, accusations and assertions in case C.A. No. 02-289T heard and decided in the United States District Court. The 54 page **Report and Recommendation of United States Magistrate Judge David L. Martin,** clearly answers and denies all the Plaintiff's many frivolous complaints. The same **Report and Recommendation** has been upheld in the United States First Circuit Court of Appeals as well as the United States Supreme Court who refused to hear the Plaintiff's appeal.

The defendant prays this "Complaint" is **DISMISSED WITH PREDJUDICE** for the following reasons:

1. **The US District Court lacks Jurisdiction over subject matter**. The Cesario's federal "case" represents a collateral attack on the rulings of the Rhode Island Family, Superior and Supreme Court Judges. <u>See District of Columbia Court of Appeals v. Feldman,</u> 460 U.S. 462, 483 n.16. 103 S.Ct. 1303, 1316 n16, 75 L.Ed 2d 206 (1983) ("Lower federal courts possess no power whatever to sit in direct review of State Court decisions") ; <u>Donnelly v. Donnelly,</u> 515 F.2d 129 (1st Cir. 1975) ("the Federal Court is ill equipped to determine family obligations, lacking the power and the resources of State Family Courts to consider the best interest of the entire family") As such, it is respectfully submitted that Federal jurisdiction is not appropriate.

2

2. **The "Complaint" fails to state a claim upon which relief can be granted.** This Honorable Court found in its decision of C.A. No. 02-289T Cesario v. State of R.I.(which mirrors the facts and details in this case), p.16 "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." See Fernandez-Montes v. Allied Piolets Ass'n, 987 F. 2d 278, 284 (5th Cir. 1993). A complaint does not state a claim if the plaintiff relies upon bald assertions or unsupportable conclusions. See Dartmouth Review v. Dartmouth Coll., 851 F.2d 13, 16 (1st Cir. 1989); Gooley v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988) Nor is a Court required to accept as true sweeping and unwarranted averments of fact.

3. **Complaint is frivolous, complete fantasy, incoherent and insulting to all Rhode Island Judges involved in these matters and done only to harass and interfere with the lives of the Defendant and his children.**

Attached is the Report and Recommendation of Magistrate Judge David L. Martin, Case No. 02-289T Dismissed by Order of United States District Judge William E. Smith on January 15th, 2003 And Dismissed again in the United States First Circuit Court of Appeals, heard before Circuit Court Judges Torruella, Selya and Lipez.

Respectfully Submitted
(March 10th, 2005)

Stephen C. Bergquist
189 Legion Way
Cranston R.I. 02910
(401) 935-9177

**Certification**

**I hereby certify a true copy of this Motion to Dismiss was sent First Class US Mail to John and Carol Bergquist (Cesario) 64 Verdant Dr. Cranston R.I. 02920 on March 10th. 2005**

# United States Court of Appeals
## For the First Circuit

No. 03-1263

JOHN H. CESARIO, ET AL.,

Plaintiffs, Appellants,

v.

STATE OF RHODE ISLAND, ET AL.,

Defendants, Appellees.

Before

Torruella, Selya and Lipez,
Circuit Judges.

JUDGMENT

Entered: October 10, 2003

We have carefully reviewed the record in this case, including the briefs of the parties. Essentially for the reasons given by the magistrate judge in his well reasoned and lengthy report and recommendation, dated November 22, 2002, the judgment of the district court is affirmed. See 1st Cir. R. 27(c).

By the Court:

RICHARD CUSHING DONOVAN

Richard Cushing Donovan, Clerk.

[c: John H. Cesario, Carol Bergquist, Susan E. Urso, Esq., James R. Lee, Esq., Richard B. Woolley, Esq., Anthony R. Leone, Esq., Mark P. Dolan, Esq., Christopher M. Orton, Esq., Justin T. Shay, Esq. and Charles S. Beal, Esq.]

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

DISTRICT OF

JOHN H. CESARIO and
CAROL BERQUIST

V.

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS a/k/a STATE OF
R.I., PATRICIA MURRAY-RAPOZA, BRENDA
RIOLES, AND JOHN LYNCH

**JUDGMENT IN A CIVIL CASE**

Case Number: C.A. NO. 02-289S

**Jury Verdict.**

X **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

**JUDGMENT IS HEREBY ENTERED PURSUANT TO THIS COURT'S MEMORANDUM AND ORDER ENTERED ON JANUARY 15, 2003, ATTACHED HERETO.**

JANUARY 15, 2003
Date

Clerk

ALBA-SUE MERCURIO
(By) Deputy Clerk

37

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN H. CESARIO and, CAROL BERGQUIST, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 02-289S |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS a/k/a STATE OF R.I., PATRICIA MURRAY-RAPOZA, BRENDA RIOLES, and JOHN LYNCH, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This court is in receipt of the Report and Recommendation issued by Magistrate Judge Martin on November 22, 2002. The court has reviewed the objections to the Report and Recommendation filed by the *pro se* Plaintiffs and the responses of Defendants Brenda Rioles, Patricia Murray-Rapoza, and John Lynch to the *pro se* Plaintiffs' objections.

The court finds that the findings and legal reasoning of Magistrate Judge Martin are well supported by the facts and the law. The court further finds that the objections to the Report and Recommendation asserted by the *pro se* Plaintiffs are without merit. The court, therefore, accepts and adopts the findings in the November 22, 2002 report.

Accordingly the court hereby orders as follows:

1. Defendant State of Rhode Island's Motion to Dismiss Plaintiffs' Verified Amended Complaint is GRANTED.

36

2. As stated in Magistrate Judge Martin's report, Plaintiffs' "Amended Complaint II" is a legal non-entity, as it was not accepted for filing by the court. Therefore, the Motions to Dismiss Amended Complaint II of Defendants Patricia Murray-Rapoza, Rioles, and Lynch are DENIED, as they seek to dismiss a legal non-entity.

3. Subsequent to Magistrate Judge Martin's Report and Recommendation, Defendant Murray-Rapoza filed a Motion to Dismiss Plaintiffs' Verified Amended Complaint. Plaintiffs did not submit an opposition to this motion. Consequently, Defendant Murray-Rapoza's Motion to Dismiss Plaintiffs' Verified Amended Complaint is GRANTED.[1]

By Order:

Deputy Clerk

Enter:

WILLIAM E. SMITH
United States District Judge

[1] Neither Defendants Rioles nor Lynch have filed a motion to dismiss the Verified Amended Complaint. Although named as a defendant in the Verified Amended Complaint, Defendant Rioles claims that she was never served with the Verified Amended Complaint and that the time for service has now expired. Although that issue is not presently before the court, the court expressly adopts Magistrate Judge Martin's finding that Defendant Rioles' substantive arguments in favor of dismissal are clearly well founded. Defendant Lynch was not named as a defendant in the Verified Amended Complaint. Likewise, however, the court agrees with Magistrate Judge Martin's finding that Defendant Lynch's substantive arguments in favor of dismissal are well founded.

11/23/02
MPD

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN H. CESARIO and :
CAROL BERGQUIST, :
Plaintiffs, :
:
v. : C.A. No. 02-289 T
:
STATE OF RHODE ISLAND AND :
PROVIDENCE PLANTATIONS AKA STATE :
OF R.I., :
PATRICIA MURRAY-RAPOZA,[1] :
BRENDA RIOLES, and :
JOHN LYNCH, :
Defendants. :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the court are four motions to dismiss: 1) Defendant State of Rhode Island's Motion to Dismiss Plaintiffs' Verified Amended Complaint ("State's Motion to Dismiss VAC"), 2) Defendant Patricia Murray-Rapoza's Motion to Dismiss, 3) Defendant Brenda Rioles' Motion to Dismiss, and 4) Defendant John Lynch's Motion to Dismiss. These motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(a).

Also before the court is "Plaintiff's [sic] Motion to Ask the Court Permission to Further Amend, Fine Tune and Bring Complaint into Federal Compliance ("Plaintiffs' Motion to Amend" or "Motion to Amend"). The Motion to Amend has been referred to this Magistrate Judge for determination.

A hearing on all five motions was conducted on October 11,

---

[1] In the Verified Amended Complaint ("VAC") and the proposed Amended Complaint II, Plaintiffs identify this Defendant as Patricia Murray-Raposa. However, in her filings she identifies herself as Patricia Murray-Rapoza. The court adopts the latter spelling of Rapoza.

2002. After listening to oral argument, reviewing the memoranda and exhibits submitted, and performing independent research, I recommend that the State's Motion to Dismiss VAC be granted and that the motions to dismiss filed by the other Defendants be denied.[2] By separate order, issued with this Report and Recommendation, I deny Plaintiffs' Motion to Amend.

**Overview**

This case arises from a divorce proceeding in the Rhode Island Family Court and related actions for restraining orders in the Superior Court. Plaintiffs John H. Cesario ("Mr. Cesario") and Carol Bergquist ("Mrs. Bergquist")(collectively "Plaintiffs") allege that during those proceedings numerous wrongs were committed against one or both of them. The Defendants are the State of Rhode Island (the "State"), Attorney Patricia Murray-Rapoza ("Attorney Murray-Rapoza"), who served as guardian ad litem ("GAL") for the children in the divorce action, Attorney Brenda Rioles ("Attorney Rioles"), who represented Mrs. Bergquist in the divorce, and Attorney John Lynch ("Attorney Lynch"), who represented Stephen Bergquist ("Mr. Bergquist") in the divorce (collectively "Defendants"). Plaintiffs allege numerous violations of their constitutional and federal civil rights.

**Background[3]**

In June of 2000, Mrs. Bergquist filed an action for divorce against Mr. Bergquist. According to Plaintiffs, Mr. Bergquist

---

[2] The court recommends that the motions to dismiss filed by Defendants Murray-Rapoza, Rioles, and Lynch be denied only because the motions are directed towards the Amended Complaint II, a document which was not accepted for filing by the court. The arguments made in support of the motions to dismiss are otherwise well founded.

[3] The Background and Facts are partly based on information contained in Plaintiffs' Amended Complaint II. Although that document was not accepted by the court (because Plaintiffs had not complied with Fed. R. Civ. P. 15), it is helpful in understanding the relationship of the parties and Plaintiffs' claims.

left the marriage to a pursue a relationship with a neighbor, Amanda Assante ("Ms. Assante"). After filing for divorce, Mrs. Bergquist began a relationship with Mr. Cesario, who had previously had a relationship with Ms. Assante.

The divorce was acrimonious, and the close proximity of the Bergquist and Assante homes provided many occasions for conflict, some of which involved the police and, sadly, the minor Bergquist children. Making the situation even more difficult, the oldest Bergquist daughter had a close friendship with Ms. Assante's daughter, and the two girls attended the same elementary school.

**Facts**

**I. November 28, 2000, to August 31, 2001**

On November 28, 2000, Mr. Bergquist was granted a temporary restraining order against Mr. Cesario by the Providence Superior Court. See Plaintiffs' Exhibit ("Ex.") J (copy of 11/28/00 restraining order) at 1.[4] This temporary order was superceded on December 5, 2000, by a mutual restraining order which prohibited Mr. Cesario and Mr. Bergquist from bothering each other.[5] See

---

[4] It is unclear what filing Plaintiffs' Exhibits A through K accompanied. Plaintiffs in their memorandum indicate only that the exhibits were filed "previously." See Plaintiffs' Memorandum filed in support of Plaintiff's [sic] Motion to Ask the Court Permission to Further Amend, Fine Tune and Bring Complaint Into Federal Compliance ("Plaintiffs' Mem. Mot. to Amend") at 13 (Note: page 13 of Plaintiffs' Mem. Mot. to Amend is the first page of that document. At the hearing on October 11, 2002, Mr. Cesario indicated that a computer problem resulted in the pages of Plaintiffs' Mem. Mot. to Amend being numbered 13 to 33). To avoid confusion and for purposes of brevity, the court identifies them simply as "Plaintiffs' Exhibits."

[5] Although the temporary restraining order prohibited Mr. Cesario from contacting Mr. Bergquist and the three Bergquist children, see Plaintiffs' Exhibit ("Ex.") J (Superior Court Order of 11/28/00) at 1, the December 5, 2000, order only prohibited Mr. Cesario from contacting Mr. Bergquist, see id. (Superior Court Order of 12/5/00) at 2. A request by Mr. Bergquist's attorney that the order include the Bergquist children was rejected by the hearing justice. See Plaintiffs' Ex. H (Transcript of 12/5/00 hearing before Williams, J.) at 2.

Plaintiffs' Ex. H (Transcript of 12/5/00 hearing before Williams, J.) at 2-3; see also Plaintiffs' Ex. J at 2 (copy of 12/5/00 mutual restraining order).

Subsequently, the two men each claimed that the other had violated the restraining order. At a May 31, 2001, hearing before Judge Michael A. Silverstein, Mr. Cesario was found to be in civil contempt of the order, see Plaintiffs' Ex. G (Transcript of 5/31/00 hearing before Silverstein, J.) at 19, after admitting to telephoning Mr. Bergquist, see id. at 14, 16, 17. Judge Silverstein stated that he would "permit [Mr. Cesario] to purge himself of that contempt by complying with the court order heretofore entered by Mr. Justice Williams." Id. at 20. If Mr. Cesario failed to do so, Judge Silverstein stated that the court would impose a $5,000 civil contempt fine. See id.

In August of 2001, Mr. Bergquist again sought to have Mr. Cesario adjudged in contempt for violating the restraining order. See Plaintiffs' Ex. A (Transcript of 8/20/01 hearing before Fortunato, J.) at 2, 11. He accused Mr. Cesario of repeatedly driving by the house in which Mr. Bergquist resided, see id. at 2, 4, issuing a subpoena duces tecum to Mr. Bergquist's employer for Mr. Bergquist's work records,[6] see id. at 6-7, threatening Mr. Bergquist on the telephone, see id. at 10, and sending letters to Family Court judges, the GAL, and to Mrs. Bergquist's then attorney, which expressed dissatisfaction with the manner in

[6] The subpoena duces tecum was issued in connection with the Bergquist divorce proceeding. Although the subpoena indicated that it had been issued by Attorney Robert Watson, who was then representing Mrs. Bergquist in that action, see Plaintiffs' Ex. A (Transcript of 8/20/01 hearing before Fortunato, J.) at 6, Mr. Cesario admitted that he had filled out the subpoena, see id. at 7, 9, on behalf of Mrs. Bergquist after Attorney Watson failed to return her telephone calls, see id. at 7.

**II. The October 22, 2001, Hearing**

On October 22, 2001, at another hearing before Judge Fortunato, Mr. Bergquist and Mr. Cesario again each sought to have the other adjudged in contempt. See Plaintiffs' Ex. C (Transcript of 10/22/01 hearing before Fortunato, J.) at 1, 4-5. Because several of Plaintiffs' claims relate to this hearing, a detailed account is necessary.

Judge Fortunato asked Mr. Cesario what relief he was seeking. See id. at 1. Mr. Cesario answered that he wanted the restraining order[10] removed or modified and that he wanted to stop Mr. Bergquist from making derogatory statements about him to the children. See id. at 2. Judge Fortunato observed that the children were Mr. Bergquist's children and that he could say what he wanted to them. See id. Mr. Cesario also sought to remove the restraining orders which Judge Fortunato had imposed in August prohibiting Mr. Cesario from having contact with the Bergquist children or with Ms. Assante.[11] See id. at 1-2, 21, 26.

Mr. Bergquist asked that Mr. Cesario be adjudged in contempt for: 1) appearing on September 25, 2001, at a health club where the children were with their mother, see id. at 5; 2) filing an action for slander against Mr. Bergquist, see id. at 7; and 3) subpoenaing to the October 22, 2001, hearing the GAL, the

---

Report/Warrant for Commitment," Plaintiffs' Ex. B (Superior Court Docket Sheet reflecting action on 8/31/01), which bears a clerk's note so stating.

[10] It is unclear from the transcript to which restraining order Mr. Cesario was referring at that point.

[11] The transcript of the October 22, 2001, hearing does not contain any explicit reference to the restraining order prohibiting contact with Ms. Assante. Cf. Plaintiffs' Ex. C (Transcript of 10/22/01 hearing before Fortunato, J.) at 21. However, the court accepts Plaintiffs' assertion that Mr. Cesario sought removal of both restraining orders. See Amended Complaint II ¶ 13.

which the divorce proceedings were being conducted,[7] see Plaintiffs' Ex. A at 9. At a hearing on August 20, 2002, Judge Stephen J. Fortunato, Jr., found that Mr. Cesario had violated the order by issuing the subpoena for Mr. Bergquist's work records, see id. at 40, 42, and by sending the letters (concerning litigation to which Mr. Cesario was not a party and which interfered with legitimate concerns of Mr. Bergquist), see id. at 42. Judge Fortunato further found that by this conduct Mr. Cesario had been an "officious intermeddler," id. at 43. Finding that Mr. Cesario's behavior had been intentional and pervasive, Judge Fortunato sentenced him to the Adult Correctional Institutions ("ACI") for thirty days, see id. Judge Fortunato also issued a "further order," id. at 45,[8] prohibiting Mr. Cesario from contacting Mr. Bergquist and Ms. Assante directly or indirectly, see id.

On August 31, 2001, Mr. Cesario was released from the ACI after Judge Fortunato granted a motion to reduce sentence, see Plaintiffs' Ex. B (Superior Court Docket Sheet reflecting action on 8/31/01). As a condition of his release, Judge Fortunato restrained and enjoined Mr. Cesario from contacting the Bergquist children.[9] See id.

---

[7] Some of the letters were insulting, a fact which Mr. Cesario readily acknowledged. See Plaintiffs' Ex. A at 14, 33. The salutation to Mrs. Bergquist's attorney was "weasel." Id. at 9. Judge Stephen J. Fortunato, Jr., described the letter sent to Family Court Judge Haiganush Bedrosian as "abusive." Id. at 41.

[8] The page numbers of two pages of transcript reflecting this action are not legible. See Plaintiffs' Ex. A, the final two pages. The court cites to these pages as 45 and 46. Judge Fortunato's imposition of the order prohibiting contact with Mr. Bergquist and Ms. Assante is reflected on page 45.

[9] Plaintiffs have not submitted a transcript of the August 31, 2001, hearing. For purposes of considering the present motions, the court accepts Plaintiffs' claim that Judge Fortunato imposed such a condition. However, the only evidence of such action which Plaintiffs have submitted is a copy of a Superior Court "Criminal Case Action

children's therapist, the principal of the school which one of the children had attended, one of the children's teachers, and the psychologist who had conducted an evaluation of Mr. and Mrs. Bergquist for the Family Court to aid in the court's custody determination, see id. at 6, 9, 13.[12] In addition, Mr. Bergquist's attorney noted that Mr. Cesario had written the psychologist "a very lengthy, extraordinarily detailed and disparaging letter." Plaintiffs' Ex. C at 14.

Responding to the first of these charges, Mr. Cesario indicated that the encounter at the health club was inadvertent. See id. at 19-20, 27. Judge Fortunato, observing that the GAL's subpoena directed production of her records, asked Mr. Cesario what right he had to that material. See id. at 23. Mr. Cesario began to explain that he wanted to show the court that he was not a danger to the children. See id.; see also id. at 15, 28. However, Judge Fortunato interrupted: "But that is not even before me in this matter," id. at 23. Mr. Cesario cited "[t]he restraining order--." Id. Judge Fortunato responded that the Family Court would determine what was in "[t]he best interest of those children ...." Id. at 24.

Mr. Cesario then stated "[y]ou put a restraining order on me without any basis that I've done anything to the children based on lies that he told you." Id. Judge Fortunato, possibly not recalling that on August 31, 2001, he had prohibited Mr. Cesario from having contact with the children as a condition of Mr.

[12] Strictly speaking, the attorney representing Mr. Bergquist at the October 22, 2001, hearing only cited the subpoenaing of the GAL, the school principal, and the therapist. See Plaintiffs' Ex. C at 6. The other persons who were subpoenaed were identified by the GAL, see id. at 13, or by Mr. Cesario, see id. at 9. Given the nature of Mr. Bergquist's complaint, the court infers that it applied to all persons subpoenaed.

Cesario's release from the ACI,[13] answered that the initial restraining order had been issued long before by Judge Williams and that the November 28, 2000, order had been granted to Mr. Bergquist on behalf of himself and his children. See Plaintiffs' Ex. C at 24. Mr. Cesario pointed out that the request to extend the December 5, 2000, order to the children had been denied by Judge Williams. See id. at 25. Judge Fortunato then remarked that "[i]n any event, the Family Court ... has restrained you as well as Mr. Bergquist's female companion, from having contact with those children," id., and that "the real Order that presents a problem for you, if you consider it a problem, as you obviously do[,] is the Order of the Family Court," id. at 26.

Mr. Cesario volunteered that he had "no problem with that

---

[13] The October 22, 2001, transcript contains the following remarks by Judge Fortunato:

> THE COURT: And, yet, you have a motion to lift the restraining order here, Mr. Cesario, that says you asked me to lift the Restraining Order placed on you from being near the Bergoquist [sic] girls. I probably said, I think it is a good idea in light of this to have such an Order, and, **indeed, if there weren't one, I would probably have issued one.** But the real Order that presents a problem for you, if you consider it a problem, as you obviously do[,] is the Order of the Family Court. The Family Court has the primary responsibility for the best interest of those children, and they told you to keep away from these children. You may not like that Order, and Mrs. Bergoquist [sic] may not like it, but that's the Order.

Plaintiff's Ex. C at 26 (bold added).

> THE COURT: Let me say it again ... [t]he Family Court will figure out what is in the best interest of those children and whether you're a threat or not, or whether or not you can have any contact with them, whether it will be supervised, and the Family Court will do it [in] conjunction with the guardian ad litem. **This is not in front of me.** What is in front of me is your dragging the guardian ad litem in here with her records to which you have no rights.

Id. at 29-30 (bold added); see also Note 9.

order." Id. at 26. Judge Fortunato asked Mr. Cesario "[w]hat is your problem today, then?" Id. Thereafter, although Mr. Cesario indicated that he had subpoenaed the witnesses to show that he was not a danger to the children, he did not clearly articulate that he was still seeking to have the restraining order imposed by Judge Fortunato regarding the children removed. See id. at 26-30.

As the hearing drew to a close, Judge Fortunato granted a motion by the GAL to quash the subpoenas and ordered Mr. Cesario to pay her a counsel fee of $500.00. See id. at 31. Mr. Cesario withdrew his motion to have Mr. Bergquist adjudged in contempt, see id., and offered to dismiss his slander suit against Mr. Bergquist if Mr. Bergquist would agree to stop making derogatory statements about him to the children, see id. at 33. The transcript does not reflect whether this offer was accepted or if any action was taken on Mr. Bergquist's motion to adjudge Mr. Cesario in contempt. See Plaintiffs' Ex. C.

**III. October 25, 2001, to May 14, 2002**

On October 25, 2001, Mr. Cesario returned to Superior Court in connection with two motions which he had filed, one seeking to stay payment of the counsel fee to the GAL pending an appeal to the Rhode Island Supreme Court and one to report what Plaintiffs allege was "witness coercion." Amended Complaint II ¶ 14;[14] see also Plaintiffs' Ex. K (copies of motions filed 10/25/01). The basis for this charge was that the GAL had allegedly told Mrs. Bergquist's divorce lawyer, Attorney Rioles, that if Mrs. Bergquist appeared at October 22, 2001, hearing to support Mr. Cesario the GAL would file an emergency motion to have the children removed from Mrs. Bergquist's custody. See VAC ¶ 9.

Mr. Cesario was again found in civil contempt on December 10, 2001. See Amended Complaint II ¶ 16. Plaintiffs allege that

[14] See Note 3.

the basis for this finding was that Mr. Cesario had sent copies of the two motions which he filed on October 25, 2001, to the GAL.[15] See id. Plaintiffs also allege that the GAL testified falsely at the hearing on December 10, 2001, that she was afraid of Mr. Cesario. See id.

Meanwhile, the Bergquist divorce proceedings continued. Following a hearing on December 6, 2001, a final judgment was entered, apparently as a result of an agreement which had been reached between the parties. See Amended Complaint II ¶ 15. However, in April of 2002, Mrs. Bergquist sought to have the final judgment of divorce vacated, alleging that she had been under duress on December 6, 2001, and that her attorney had misrepresented her. See Plaintiffs' Ex. D (Transcript of 4/8/02 hearing before Bedrosian, J.) at 2, 7-8, 11-12; see also Plaintiffs' Ex. I (Family Court motions filed pro se by Mrs. Bergquist) at 2-7. Mrs. Bergquist complained to Family Court Judge Haiganush Bedrosian that Mr. Bergquist had filed "countless contempt charges," id. at 9, against her, falsely accusing her of having the children in the presence of Mr. Cesario, see id. Mrs. Bergquist also told Judge Bedrosian that Mr. Bergquist had been instilling fear of Mr. Cesario in the children for a year or longer. See id. at 10; see also Plaintiffs' Ex. I at 2-4. Judge Bedrosian advised Mrs. Bergquist that she was "free to file a Complaint after the entry of the Final Judgment," Plaintiffs' Ex. D at 19, but that to re-litigate the case based on what Mrs. Bergquist had stated at the hearing would not be proper, see id. Judge Bedrosian denied Mrs. Bergquist's motion to vacate the Final Judgment. See id.

Returning to the Superior Court case, Plaintiffs allege that Mr. Cesario was again found in civil contempt on February 28,

---

[15] In their Amended Complaint II, Plaintiffs assert that Judge Fortunato had "requested" that Mr. Cesario send these motions to the GAL. Amended Complaint II ¶ 16.

2002, by Judge Fortunato. See Amended Complaint II ¶ 17; Plaintiffs' Memorand[um] of Law filed in support of Motion to Amend ("Plaintiffs' Mem. Mot. to Amend") at 22. The basis for this contempt finding, according to Plaintiffs, was Mr. Cesario's authoring of a disciplinary complaint[16] to the Disciplinary Counsel for the Rhode Island Supreme Court, see Amended Complaint II ¶ 17, sending a plant to a divorce hearing, see Plaintiff's Mem. Mot. to Amend at 22, and sending a "vile letter" to Attorney Rioles, id.

Plaintiffs allege that the transcript of the February 28, 2002, contempt proceeding was altered. See Plaintiffs' Mem. Mot. to Amend at 22. They claim that Judge Fortunato "found [Mr. Cesario] guilty of three actions ...." Id. However, according to Plaintiffs, two of these findings--sending a plant to a Family Court hearing and sending an offensive letter to Attorney Rioles--are "mysteriously absent from the record of February 28th 2002." Id.

On April 15, 2002, Mr. Bergquist again moved to have Mr. Cesario adjudged in contempt for violating the Superior Court mutual restraining order because Mr. Cesario had appeared at a hearing on the divorce pursuant to a subpoena which had been issued but which was not notarized. See Amended Complaint II ¶ 20. Mr. Cesario countered that Mr. Bergquist had interfered with a hearing in Superior Court on November 6, 2001, for which he had neither been subpoenaed nor asked to attend.[17] See id.

---

[16] The identity of the person against whom the complaint was directed is unclear. Plaintiffs describe the complaint as "being very uncomplimentary to Judge Fortunato for his illegal sentencing of [Mr. Cesario] in August of 2001." Amended Complaint II ¶ 17. Plaintiffs also indicate that "[t]he complaint was sent to [A]ttorney Brenda Rioles with a note of some sort, non threatening." Id.

[17] It is unclear from the filings what the November 6, 2001, Superior Court hearing concerned. It may have been related to a restraining order which Mrs. Bergquist had obtained against Mr. Cesario on November 2, 2001, after filing a complaint in the Superior

Plaintiffs allege that during the hearing Judge Fortunato stated that he "didn't want any more pleadings unless attorneys were present," id., but that "[t]he word order was never used, nor were the parties told to pick up an order or to present an order," id. A document which Plaintiffs identify as being an information sheet filled out by Judge Fortunato's clerk states in relevant part: "No further pleadings or hearings will be conducted in this matter (00-6141) or any case brought by Mr. Cesario against Mr. Bergquist unless the parties are represented by attorneys." Plaintiffs Ex. F (Information Sheet dated 4/15/02). Plaintiffs contend that this order was not stated in court and violates, among other rights, Mr. Cesario's right of access to the courts. See Amended Complaint II ¶ 20.

On May 14, 2002, the Bergquist divorce case appeared on a Family Court calendar being called by Judge Stephen J. Capineri. See Plaintiffs' Ex. E (Transcript of 5/14/02 hearing before Capineri, J.). Plaintiffs allege that Mr. Bergquist's lawyer, Attorney Lynch, saw Mrs. Bergquist waiting in the corridor outside the courtroom, but falsely told Judge Capineri that he had not seen her. See Amended Complaint II ¶ 19. Plaintiffs further allege that Attorney Lynch lied to Judge Capineri about subpoenas which Mrs. Bergquist wanted to remain in force and about the motions which were before the court, see id., and that he falsely stated that he did not represent Ms. Assante, see Plaintiffs' Mem. Mot. to Amend at 31. Judge Capineri continued the matter until June 27, 2002. See Plaintiffs' Ex. E at 7.

---

Court which stated that Mr. Cesario "has continued to contact me and has been involved in my divorce against my wishes." Plaintiffs' Ex. K (Motions) at 5. Plaintiffs maintain that Mrs. Bergquist was pressured or induced, presumably by the GAL and/or Attorney Rioles, to obtain this restraining order. See Amended Complaint II ¶ 20; see also Plaintiffs' Ex. I (Letter from Debbie Crosby to Chief Judge Jeremiah S. Jeremiah, Jr., of 12/18/01) at 1.

**Travel**

There are three complaints in this matter: an initial Complaint, the VAC, and an Amended Complaint II which was not accepted for filing. The initial Complaint, filed on June 28, 2002, was brought only by Mr. Cesario. It alleged that the State, by its appointed officials, had violated Mr. Cesario's federal civil rights "through the State of R.I. Court System ...." Complaint at ¶ 4.

The VAC was filed on July 8, 2002, and added Mrs. Bergquist as a Plaintiff and Attorneys Murray-Rapoza, Rioles, and Lynch (collectively the "Attorney Defendants") as Defendants.[18] Although the VAC was served upon the State, it was not served upon the Attorney Defendants. On July 23, 2002, the State filed the instant State's Motion to Dismiss VAC. Plaintiffs responded by filing "Plaintiff's [sic] Objection to the State of R.I. Motion to Dismiss" ("Plaintiffs' Objection to State's Motion to Dismiss VAC") on August 6, 2002.

In the meantime, Plaintiffs had served an Amended Complaint II on Defendants.[19] However, the Amended Complaint II was not accepted for filing by the court. Unaware of this fact, Defendants responded to the Amended Complaint II by filing motions to dismiss. The State's motion to dismiss the Amended Complaint II was filed on August 6, 2002, Attorney Murray-Rapoza's on August 21, 2002, Attorney Rioles' on August 28, 2002, and Attorney Lynch's on September 11, 2002.

On August 28, 2002, Plaintiffs filed the present Motion to Amend. All Defendants except Attorney Rioles subsequently filed

---

[18] It appears that the VAC was filed pursuant to Rule 15(a) which allows a party to amend its pleading "once as a matter of course at any time before a responsive pleading is served ...." Fed. R. Civ. P. 15(a).

[19] The Amended Complaint II added Mr. Bergquist and Judge Fortunato as Defendants.

objections to the Motion to Amend.[20] On September 3, 2002, Chief Judge Ernest C. Torres denied the State's Motion to Dismiss the Amended Complaint II with the notation that "Plaintiff has not filed a second amended complaint."[21]

This Magistrate Judge conducted a hearing on the State's Motion to Dismiss, the Attorney Defendants' motions to dismiss, and Plaintiffs' Motion to Amend on October 11, 2002. The matter was then taken under advisement.

**Questions Presented**

1. Should the State's Motion to Dismiss VAC be granted?

2. Should the motions filed by the Attorney Defendants to dismiss the Amended Complaint II be granted?

3. Should Plaintiffs' Motion to Amend be granted?

For the reasons which follow, the court answers these questions yes, no and no.

---

[20] Rioles' failure to file an objection to the Motion to Amend may be due to the fact that she had been informed by the clerk's office that the Amended Complaint II had not been accepted because Plaintiffs had not complied with Rule 15 of the Fed. R. Civ. P. See Defendant Brenda Rioles' Motion to Dismiss ("Rioles' Motion to Dismiss"). Her motion to dismiss states that it was filed "out of an abundance of caution ...." Id. Since Rioles had not been served with a valid complaint, her counsel may have rightly concluded that it was unnecessary to file an objection to the Motion to Amend.

[21] Because the Amended Complaint II was not accepted for filing by the court and it is the only complaint which was served upon Murray-Rapoza, Rioles, and Lynch (the "Attorney Defendants"), their motions to dismiss are directed towards a document which is a nullity. Since they have not been served with a valid complaint, technically they are not part of the present action and have no standing. However, this circumstance arises through no fault of their own, but rather is directly attributable to Plaintiffs' actions in serving the Attorney Defendants with the Amended Complaint II prior to obtaining permission to file a second amended complaint in accordance with the provisions of Fed. R. Civ. P. 15(a). Therefore, the court will consider the arguments of the Attorney Defendants to the extent that they bear upon Plaintiffs' Motion to Amend.

## Discussion

### I. State's Motion to Dismiss VAC

The State seeks dismissal of the VAC on the grounds that the court lacks jurisdiction over the subject matter, see Fed. R. Civ P. 12(b)(1), and that the VAC fails to state a claim upon which relief can be granted, see id. 12(b)(6). In considering this motion, the court applies the following standard of review:

#### A. Standard of Review

##### 1. Pro Se Status

Plaintiffs are proceeding pro se, and, therefore, their complaint is held to a less stringent standard than one drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed. 652 (1972). It is to be "read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991). At the same time, a plaintiff's pro se status does not excuse him from complying with procedural rules. See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000).

##### 2. Fed. R. Civ. P. 12(b)(1)

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff. See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); see also Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000). It is the plaintiff's burden to prove the existence of subject matter jurisdiction. See Murphy, 45 F.3d at 522; Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977).

##### 3. Fed. R. Civ. P. 12(b)(6)

In ruling on a motion to dismiss pursuant to Rule 12(b)(6),

the court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. See Carreiro v. Rhodes, Gill, & Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1994); Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp.2d 491, 493 (D.R.I. 1993). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995). The court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); accord Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. See Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993). A complaint does not state a claim if the plaintiff relies upon bald assertions or unsupportable conclusions. See Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989); Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Nor is a court required to accept as true sweeping and unwarranted averments of fact. See In Re Mosello, 190 B.R. 165, aff'd, 193 B.R. 147, aff'd, 104 F.3d 352 (S.D.N.Y. 1995).

**B. Plaintiffs' Allegations**

Plaintiffs allege in the VAC that the State, "through its appointed officials has violated a multitude of [Plaintiffs'] [f]ederal civil rights protected under Title 42 during the period between August 22, 2001, until present through the State of R.I. Court System ...." VAC ¶ 4. The violations can be grouped generally as follows.

### 1. The ACI Sentence

Plaintiffs claim that the thirty day sentence imposed on Mr. Cesario on August 20, 2001,[22] was illegal for several reasons. First, they point to Judge Silverstein's statement to Mr. Cesario on May 31, 2001, that if he failed to comply with the restraining order during the following six months, a $5,000 civil contempt fine would be imposed upon him. See VAC ¶ 5; Plaintiffs' Ex. G at 20. Second, Plaintiffs aver that service (presumably of the notice of violation) was improper. See id. Third, they contend that the acts allegedly constituting the violation were not prohibited under the restraining order and were in fact protected by law. See id. Fourth, Plaintiffs argue that Mr. Cesario was denied his right against self-incrimination, right to jury trial, right to due process, right to an attorney, and "other rights protected under the United States Constitution." Id. Fifth, Plaintiffs charge the State with violating Mr. Cesario's rights under the First Amendment by sanctioning him for writing to Family Court officials about their negligence in addressing child abuse and the abuse of Mrs. Bergquist by her estranged husband and the court system. See id. In a related claim, Plaintiffs allege that Mr. Cesario brought the illegal sentence and violation of his rights to the attention of the State by writing to Judge Fortunato several times while incarcerated, but that "the State failed to remedy the situation." Id.

### 2. The Enjoinment of Mr. Cesario

Plaintiffs assert that the State twice wrongfully enjoined Mr. Cesario, denying him his right to the pursuit of happiness and damaging their reputations. See id. ¶ 6. The first occasion

---

[22] Plaintiffs state the date that Mr. Cesario was sentenced to the ACI as both as "August 22, 2001," VAC ¶ 5, and "August 20th 2001," id. ¶ 6. The hearing transcript is dated August 20, 2001. See Plaintiffs' Ex. A at 43.

was on August 20, 2001, when Judge Fortunato restrained Mr. Cesario from contacting Ms. Assante. See id. Plaintiffs contend this enjoinment was wrongful because no complaint had been filed by anyone and Ms. Assante had testified that Mr. Cesario had not harassed or interfered with her. See id. The second occasion was on August 31, 2001, when the State enjoined Mr. Cesario from contacting the Bergquist children. See id. Plaintiffs allege this action was done without cause and without notice to, or service upon, Mr. Cesario. See id.

### 3. The October 22, 2001, Hearing

Plaintiffs claim that the State denied Mr. Cesario his "right to a hearing with a trial on the merits on October 22, 2001," see id. ¶ 7, when Judge Fortunato refused to grant him a hearing in connection with three motions which Mr. Cesario had filed. See id. The motions sought to have Mr. Bergquist adjudged in contempt and to lift the restraining orders which had been entered against Mr. Cesario. See Amended Complaint II ¶ 13. Plaintiffs also claim that the State "through its appointed officials tainted the October 22, 2001, hearing against [Mr. Cesario] with a series [of] illegal acts." Id. ¶ 8. Specifically, Plaintiffs complain: 1) that Judge Fortunato allowed the GAL to testify even though the GAL had sought and obtained from the Family Court a protective order, see id.; 2) that by testifying the GAL broke not only the protective order but two other unspecified orders, see id.; and 3) that the transcript of the hearing was altered by deleting statements made by Judge Fortunato "that were contrary to the laws of the State of R.I. with regards to child abuse," id.; see also id. ¶ 17.

### 4. The Divorce Proceedings

Plaintiffs assert that on an unspecified date the State wrongfully restrained Mrs. Bergquist and denied her right to a hearing on the merits, see VAC ¶ 14, and denied Mrs. Bergquist's

right to a speedy and fair trial by allowing repeated continuances without good cause, see id. ¶¶ 15, 21. Plaintiffs charge the State with altering and tampering with a court document, namely a report submitted by the GAL to the Family Court on or about July 16, 2001. See id. ¶ 17. The altering was allegedly done by the GAL, Attorney Murray-Rapoza, and is supposedly evidenced by the fact that the GAL submitted a different report with the same date to Mrs. Bergquist's attorneys. See id. Asserting an individual claim, Mrs. Bergquist charges the State and Attorney Lynch with denying her right to a speedy and fair trial. See id. ¶ 21.

**5. Miscellaneous Claims**

Plaintiffs charge the State with negligence for repeatedly failing to provide adequate notice to them of court proceedings between March 2001 and December 2001. See id. ¶ 20. They contend that the State denied Mr. Cesario "his First Amendment rights of freedom of expression through extortion on December 10th, 2001, and February 28th, 2002." Id. ¶ 12. Plaintiffs allege that on April 15, 2002, the State, through its appointed agent, Judge Fortunato, violated Mr. Cesario's right to self representation by ordering that no further pleadings occur in the original restraining order case (P.C. 00-6141) unless the parties were represented by attorneys and further by prohibiting Mr. Cesario from filing any pleading in any case involving Mr. Bergquist unless Mr. Cesario was represented by an attorney. See id. ¶ 16.

Asserting an individual claim, Mr. Cesario accuses the State of denying him his First Amendment rights by finding him guilty of civil contempt. See id. ¶ 18. Less clearly, he charges the State "with violating his First Amendment right to obstruct justice and to extort the Co Plaintiff from bringing up witness tampering," VAC ¶ 18, and "conspiring to obstruct justice for a finding of fact and remanding the [Co Plaintiff] to the ACI until

the State of R.I. extorted $5000.00 from him," id. ¶ 19.

Both Plaintiffs charge "all Co Defendant(s) with negligence in taking action with respect to reported child abuse and mental cruelty," id. ¶ 10, "with conspiracy to obstruct justice by preventing hearings on witness tampering," id. ¶ 11, and "with conspiracy to interfere with civil rights," id. ¶ 22. Lastly, Plaintiffs assert that the State denied them their "rights to pursue happiness by preventing their relationship without due cause." Id. ¶ 13.

**C. Decision**

The State's Motion to Dismiss must be granted because Plaintiffs' claims are barred by: 1) the holding of the United States Supreme Court in Will v. Michigan, 2) the doctrine of judicial immunity, 3) the Rooker-Feldman doctrine, 4) the policy of abstention, and 5) the lack of constitutional basis for many of the alleged violations.

**1. Will v. Michigan**

A state is not a person within the meaning of 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)("It is settled beyond peradventure ... that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action."); Jones v. Rhode Island, 724 F.Supp. 25, 28 (D.R.I. 1989)("Based on the Supreme Court holding in Will, it is clear that neither the State of Rhode Island nor any of its officials acting in their official capacities, are 'persons' that can be held liable under § 1983"). Consequently, Plaintiffs cannot maintain an action against the State for alleged violations of their civil rights.

**2. Judicial Immunity**

Many of Plaintiffs' claims against the State are based on

the contention that Judge Fortunato (and to a lesser extent Judge Bedrosian) acted illegally or erroneously in making rulings which adversely affected Plaintiffs. However, these state officials are protected from suit by the doctrine of judicial immunity. See Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991)("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."); Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)("[T]his court has consistently adhered to the rule that judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities.")(internal quotation marks omitted); Stump v. Sparkman, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978)("[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."); Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)("Except where judges act completely without jurisdiction, they are protected from liability under section 1983 by the well-established doctrine of judicial immunity.); Slotnick v. Staviskey, 560 F.2d 31, 32 (1st Cir. 1977)("state court judge enjoys absolute immunity from suit under § 1983").

The First Circuit in Cok v. Cosentino, 876 F.3d 1 (1st Cir. 1989), affirmed on the basis of judicial immunity the dismissal of claims brought against a family court justice, a GAL, and a conservator by a disappointed litigant in a divorce proceeding.

> There is no question that [the Family Court Judge] was protected by absolute immunity from civil liability for any normal and routine judicial act. Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978). This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how

> malicious the motive. Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 499-500, 88 L.Ed.2d 507 (1985). Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity. Stump, 435 U.S. at 357, 98 S.Ct. at 1105; Sullivan v. Kelleher, 405 F.2d 486, 487 (1st Cir.1968).

Cok v. Cosentino, 876 F.3d at 3 (alteration in original).

**3. Rooker-Feldman**

To grant Plaintiffs the relief they seek, this court would have to review the rulings and judgments of the state courts.[23] However, such action is absolutely prohibited by the Rooker-Feldman doctrine. See Sheehan v. Marr, 207 F.3d 35, 39 (1st Cir. 2000)(explaining the doctrine and the two cases from which its name is derived and holding that "[t]he Rooker-Feldman doctrine prohibits federal district and circuit courts from reviewing state court judgments."); accord Picard v. Members of Employee Ret. Bd. of Providence, 275 F.3d 139, 145 (1st Cir. 2001) (describing the contours of "this jurisdictional doctrine").

In District of Columbia Court of Appeals v. Feldman, the Supreme Court reiterated that "lower federal courts possess no power whatever to sit in direct review of state court decisions." 460 U.S. 462, 483, 103 S.Ct. 1303, 1316, 75 L.Ed.2d 206 (1983) (quoting Atl. Coast Line R. Co. v. Eng'rs, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). In particular, the Court cautioned that:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being

---

[23] In their Amended Complaint II, Plaintiffs assert that "Carol Bergquist is entitled to vacate [Family Court] orders ...." Amended Complaint II ("AC II")¶ 27. This court lacks authority to vacate such orders. See Picard v. Members of Employee Ret. Bd. of Providence, 275 F.3d 139, 145 (1st Cir. 2001).

> called upon to review the state court decision. This the District Court may not do.

Id.

Plaintiffs cite Castro v. United States, 775 F.2d 399 (1st Cir. 1985), and implicitly suggest that Castro authorizes this court to review Judge Fortunato's ruling which prohibited Mr. Cesario from filing additional pleadings in the restraining order case or any case involving Mr. Bergquist. See Plaintiffs' Objection at 2. In Castro, the First Circuit upheld the issuance of an injunction permanently enjoining the plaintiffs from filing additional pleadings in the action and from commencing future legal proceedings against the United States or FDIC regarding the nonrenewal of the plaintiffs' temporary appointments with that agency. See Castro v. United States, 775 F.2d at 409-10. The First Circuit found that the injunction was warranted, given the plaintiffs' propensity to file frivolous and vexatious cases against the defendants, and that it was narrowly drawn to fit the specific vice encountered. See id.

Plaintiffs fail to recognize that Castro involved a challenge to an injunction issued by a federal district court, and, therefore, was properly subject to review by a federal appeals court. In contrast, Plaintiffs here seek to have this federal district court review a prohibition against further filings in a state court issued by a state superior court judge. Similarly, Plaintiffs' reliance on Cok v. Read, 770 A.2d 441 (R.I. 2001), in support of their contention that Judge Fortunato denied Mr. Cesario his "pro se rights," Plaintiffs' Objection at 2, is misplaced. Plaintiffs overlook the fact that Cok v. Read is a decision of the Rhode Island Supreme Court reviewing a decision of a Rhode Island Superior Court judge.

**4. Abstention**

Even if Plaintiffs' claims were cognizable in this court,

the well established policy of abstention requires that this court decline to entertain them. "The Supreme Court has long rejected federal court interference in state domestic relations policy." Amerson v. Iowa, 94 F.3d 510, 513 (8th Cir. 1996) (citing Ankenbrandt v. Richards, 504 U.S. 689, 701-02, 112 S.Ct. 2206, 2213-14, 119 L.Ed.2d 468 (1992)). "[A] federal court--even when it has jurisdiction--may abstain for reasons of comity and common sense from cases better handled by the state courts having authority over matrimonial and family matters." Armstrong v. Armstrong, 508 F.2d 348, 350 (1st Cir. 1974); see also Donnelly v. Donnelly, 515 F.2d 129, 130 (1st Cir. 1975)(holding that as a matter of policy court would not entertain a case that at base was a challenge to the state's authority to resolve domestic dispute even if it were properly before the court). As the Court of Appeals for the First Circuit has explained:

> The long-standing policy of the federal courts to avoid interference in state domestic relations disputes--for example, by abstaining from asserting federal subject matter jurisdiction over domestic relations matters, see Friends of Children, Inc. v. Matava, 766 F.2d 35 (1st Cir.1985); Sutter v. Pitts, 639 F.2d 842 (1st Cir.1981); Donnelly v. Donnelly, 515 F.2d 129 (1st Cir. [1975]), cert. denied, 423 U.S. 998, 96 S.Ct. 429, 46 L.Ed.2d 373 (1975); Armstrong v. Armstrong, 508 F.2d 348 (1st Cir.1974)--is not limited to the area of child custody, but extends to the entire field of domestic relations. See In re Burrus, 136 U.S. 586, 593- 94, 10 S.Ct. 850, 852-53, 34 L.Ed. 500 (1890)("The whole subject of the domestic relations of a husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.").

Hemon v. Office of Pub. Guardian, 878 F.2d 13, 15 (1st Cir. 1989). "[I]t would be inappropriate for a federal district court to address a claim that necessitates invalidating a state court judgment on a matter committed to the states in order to grant the relief sought." Amerson v. Iowa, 94 F.3d at 513.

Moreover, this court finds the words of Judge Selya in Gordon v. Crouchley, 554 F.Supp. 796 (D.R.I. 1982), to be particularly instructive in the circumstances of the present case:

> Historically, it has been the policy of the federal courts to allow the state judicial system to conduct its proceedings free from federal interference, except when certain types of exigent circumstances are present, Younger v. Harris, 401 U.S. 37, 43, 45, 91 S.Ct. 746, 750-751, 27 L.Ed.2d 669 (1971). This policy fully applies to civil proceedings in which salient state interests are implicated. Trainor v. Hernandez, 431 U.S. 434, 443-44, 97 S.Ct. 1911, 1917-18, 52 L.Ed.2d 486 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). Maintenance of the integrity of Rhode Island's judicial system is of paramount importance to the state. Morial v. Judiciary Commission, 565 F.2d 295, 299 (5th Cir.1977)(en banc), cert. denied, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978); Dostert v. Neely, 498 F.Supp. 1144, 1153 (S.D.W.Va.1980). Cf. Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 2522-23, 73 L.Ed.2d 116 (1982); Juidice v. Vail, 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977).... The plaintiff cannot, by the simple expedient of electing to ignore unobstructed state avenues of redress, pave the way for a detour through the federal courts, especially in a situation in which important issues of state policy would perforce be by-passed by such quixotic re-routing. Burford v. Sun Oil Co., 319 U.S. 315, 317-18, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943); Allstate Insurance Co. v. Sabbagh, 603 F.2d, 228, 230 (1st Cir.1979).

554 F.Supp. at 799-800.

**5. Constitutional Basis**

Lastly, many of Plaintiffs' claimed constitutional violations lack legal merit. Plaintiffs allege that Mr. Cesario's right to a jury trial was denied by the State when he was sentenced to the ACI by Judge Fortunato. See VAC ¶ 5. However, there is no constitutional right to a jury trial where a sentence of no more than six months is imposed for contempt. See Taylor v. Haynes,

418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974) ("[O]ur cases hold that petty contempt like other petty criminal offenses may be tried without a jury and that contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute."); United States v. Pina, 844 F.2d 1, 16 (1st Cir. 1988)(affirming sentences for contempt which did not exceed six months, but vacating sentences which did).[24]

Plaintiffs allege that the State denied Mrs. Bergquist her right "to a speedy trial in her divorce litigation P2000-1371 ... [by] allow[ing] constant and repeated continuances, most times without good cause." VAC ¶ 15. The constitutional right to a speedy trial is found in the Sixth Amendment and is applicable to

---

[24] The state argues that "the contempt motion before the Superior Court on August 22, 2001, was civil in nature, and, therefore, no constitutional right to a jury trial existed," Memorandum of Law in Support of Defendant, State of Rhode Island's Motion to Dismiss Plaintiffs' Verified Amended Complaint ("State's Mem.") at 8, citing State v. Ricci, 609 A.2d 951, 952 (R.I. 1992), for that proposition. However, the Ricci court

> distinguished criminal contempt from civil contempt by looking at the purpose of the punishment. The purpose of the sentence in a criminal contempt is punitive so as to vindicate the dignity and authority of the court. In contrast, punishment in a civil contempt is remedial and designed to reimburse complainants for the wrong done as a result of the noncompliance with a valid order of the court.

Id. at 952 (citations omitted). It is clear from the transcript that the thirty day sentence was intended to punish Mr. Cesario for violating the restraining order rather than to "reimburse" Mr. Bergquist for the wrong done as a result of the violation. See Plaintiffs' Ex. A at 39-43. Consequently, this court does not agree that the sentence was imposed for civil contempt. See In the Matter of Grand Jury Proceedings, 280 F.3d 1103, 1107 (7th Cir. 2002) (explaining difference between civil and criminal contempt and noting that "[a] contempt order is considered civil if the sanctions imposed are designed primarily to coerce the contemnor into complying with the court's demands, and criminal if the purpose is to punish the contemnor, vindicate the court's authority, or deter future misconduct.").

criminal prosecutions--not divorce proceedings. See Sabatier v. Dabrowski, 586 F.2d 866, 869 (1st Cir. 1978)(recognizing that applicability of Sixth Amendment right to speedy trial turns on whether the proceedings are "criminal prosecutions" within the meaning of the Sixth Amendment); United States v. Forty Thousand Dollars ($40,000.00) in U.S. Currency, 763 F.Supp. 1423, 1429 (S.D. Ohio 1991)(holding that the Sixth Amendment right to a speedy trial applies only to criminal prosecutions); Knight v. United States, Civ. A. No. 2:88-1615-2J, 1990 WL 160212, at *3 (D.S.C. 1990)("There is no constitutional right to speedy trial for a civil suit."). Thus, the right which Plaintiffs allege has been violated by the State does not exist.

For the same reason, Plaintiffs' claim that the prohibition against Mr. Cesario filing motions in any case involving Mr. Bergquist violates his a Sixth Amendment right to self representation, see VAC ¶ 16, is equally baseless. "The sixth amendment applies only in criminal prosecutions, and it, therefore, cannot be the source of the parallel right to self-representation in civil cases." Eitel v. Holland, 787 F.2d 995, 998 (5th Cir. 1986)(internal quotation marks and footnote omitted); cf. Miller v. United States, 669 F.Supp. 906, 911 (N.D. Ind. 1987)("A court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court.")(quoting Lysiak v. C.I.R., 816 F.2d 311, 313 (7th Cir. 1987)(per curiam)). Furthermore, "the right to represent oneself in a civil case is not one of the fundamental rights protected by the due process clause of the Fourteenth Amendment." Id. It is unclear whether Plaintiffs also claim that the prohibition violates Mr. Cesario's First Amendment rights, see VAC ¶¶ 18, 19. If they do, they are mistaken. See Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987)(holding that an order requiring leave of the court before plaintiffs filed any further complaints does

not violate the First Amendment); cf. Sindram v. Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993)(affirming, on grounds of absolute judicial immunity, dismissal of action against judges who had prohibited plaintiff from filing any new civil actions before paying sanctions).

To the extent that Plaintiffs' due process claims are based on allegations of negligence, see, e.g., VAC ¶ 5 (charging the State with failing to remedy the August 20, 2001, sentence despite Mr. Cesario's bringing the situation to the attention of state officials); VAC ¶ 6 (failing to give Mr. Cesario notice of the August 20, 2001, hearing); VAC ¶ 10 (failing to "tak[e] action with respect to reported child abuse and mental cruelty"); VAC ¶ 20 (failing to guarantee adequate notice of court proceedings), they cannot stand. The Due Process Clause is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986)(same); Cok v. Cosentino, 876 F.2d 1, 4 (1st Cir. 1989)("The Supreme Court has made plain that due process, whether procedural or substantive, is not implicated by mere negligence of persons acting under color of state law.").

Similarly, to the extent that Plaintiffs' claims allege violations of their right to procedural due process, those claims fail unless they can show that the state failed to provide them with an adequate post-deprivation remedy. See Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996); Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992)("[I]f a state provides adequate postdeprivation remedies--either by statute or through the common-law tort remedies available in its courts--no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct occasioned the deprivation."). Plaintiffs state that "Supreme

Court appeals have been initiated." Plaintiffs' Mem. Mot. to Amend at 33. Mr. Cesario confirmed at the hearing before this court on October 11, 2002, that Plaintiffs had appealed "every single decision" to the Rhode Island Supreme Court and had recently been notified that "the case" had been docketed. Since Plaintiffs are not without a remedy in state court, they cannot bring an action in this forum for redress of their procedural due process complaints.

Plaintiffs' claims of discrimination, see VAC ¶ 16, and of conspiracy, see id. ¶¶ 9, 11, 19, 22, are also deficient in that they are conclusory and lack the requisite specificity. See Judge v. City of Lowell, 160 F.3d 67, 74 (1st Cir. 1998) (discussing pleading requirements for § 1983 discrimination claims);[25] Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) (holding that complaint cannot survive a motion to dismiss if it contains conclusory allegations of conspiracy but does not support the claim with reference to specific facts). Consequently, they are deficient and their dismissal is required.

Lastly, Plaintiffs' claim that the State denied them their "rights to pursue happiness by preventing their relationship without due cause," VAC ¶ 13, fails to state a constitutional violation. "Although the Constitution provides many important

---

[25] Plaintiffs' claims of discrimination are so vague that it is not possible to determine whether allegation of an improper motive is required. See VAC ¶ 16; cf. Crawford-El v. Britton, 523 U.S. 574, 598, 118 S.Ct. 1584, 1596-97, 140 L.Ed.2d 759 (1998)(holding that trial court "may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment")(internal quotation marks omitted); Judge v. City of Lowell, 160 F.3d 67, 74 (1st Cir. 1998)(finding that Crawford-El decision permits continued use of specificity standard contained in Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989), and Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990), requiring the pleading of specific facts from which to infer illegal motive in cases in which proving an improper motive is an essential element).

protections, a specific guarantee for the pursuit of happiness is not among those granted by the Constitution or its amendments." Coffey v. United States, 939 F.Supp. 185, 191 (E.D.N.Y. 1996) (holding that, to the extent plaintiff claimed a violation of his constitutional right to the pursuit of happiness, he had failed to state a legally cognizable claim).

**6. Summary Re State's Motion to Dismiss**

In summary, the court finds that Plaintiffs' claims against the State in the VAC are barred by the holding of Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), by the doctrine of judicial immunity, by the Rooker-Feldman doctrine, by the policy of abstention, and by the lack of legal basis for many of their constitutional claims. Accordingly, I recommend that the State's Motion to Dismiss VAC be granted.

## II. Attorney Defendants' Motions to Dismiss Amended Complaint II

As previously noted, Chief Judge Torres denied the State's Motion to Dismiss the Amended Complaint II on September 3, 2002, because Plaintiffs had not filed such a document with the court. See Travel, supra. This ruling is equally applicable to the motions of the Attorney Defendants to dismiss that same complaint. Accordingly, I recommend that the motions of the Attorney Defendants to dismiss be denied.[26]

## III. Plaintiffs' Motion to Amend

The court now turns to consideration of Plaintiffs' Motion to Amend.

### A. Standard of Review

#### 1. Pro Se Status

The court again applies the liberal standard afforded pro se

---

[26] See Note 2.

litigants discussed in part I.A.1. of this Report and Recommendation.

**2. Fed. R. Civ. P. 15(a)**

Rule 15(a) of the Fed. R. Civ. P. provides in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). Despite the liberal amendment policy reflected in the above rule, this does not mean that leave will be granted in all cases. See Judge v. City of Lowell, 160 F.3d 67, 79 (1st Cir. 1998)(citing 6 Charles Alan Wright et al., Federal Practice and Procedure § 1487 at 611 (2d ed. 1990)). If the amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters. See id.; Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990)(same); see also Maurice v. State Farm Mut. Ins. Co., 235 F.3d 7, 11 (1st Cir. 2000)(concurring with district court's conclusion that proposed amendment was futile).

**B. Amended Complaint II**

In their objection to the State's Motion to Dismiss VAC, Plaintiffs state that they "have re-filed an amended complaint II which states a claim upon which relief may be granted." Plaintiffs' Objection at 1. It appears that this was the document which was served upon the Attorney Defendants (but not accepted by the court) and in response to which the Attorney Defendants filed their motions to dismiss. At the hearing on October 11, 2002, Mr. Cesario indicated that he had made some further revisions to the Amended Complaint II and that, if the

court granted permission to file another amended complaint, it would contain these revisions. The court inquired of Mr. Cesario whether Plaintiffs' memorandum of law, which was submitted in support of Plaintiffs' Motion to Amend, contained all of Plaintiffs' arguments for leave to amend. Mr. Cesario responded "pretty much, yes." Therefore, this court, in determining whether Plaintiffs should be allowed to file another amended complaint, considers not only the information contained in the Amended Complaint II, but also that included in Plaintiffs' Mem. Mot. to Amend, Plaintiffs' Exhibits A through K, and the arguments presented at the hearing on October 11, 2002.

Plaintiffs' Amended Complaint II is sixteen pages in length. It differs from the VAC most apparently by adding Mr. Bergquist and Judge Fortunato as defendants and by the addition of headings that purport to identify "counts." However, in many instances the numbered paragraphs do not correspond to a particular count. For example, paragraph "10" appears immediately beneath the heading "Counts 10-22," but it merely re-alleges the allegations contained in the preceding nine paragraphs. Those paragraphs appear to be introductory in nature with no particular causes of action alleged in them. Thus, it is impossible to determine what cause of action or facts constitute Count 10. Although the final count alleged is "Count 25," Plaintiffs do not identify or designate any counts numbered between 1 and 9. An even greater problem is presented by the fact that many of Plaintiffs' claims are buried within long single-spaced paragraphs, making identification of them a tedious and time consuming task. Plaintiffs appear to re-allege all of the claimed violations of their civil rights as pled in the VAC, supplemented by additional factual allegations. Although doing so may seem somewhat repetitious, out of an abundance of caution and in deference to Plaintiffs' pro se status, the court summarizes and then discusses the allegations as to each of the named Defendants,

starting with Judge Fortunato who is the target of most of Plaintiffs' complaints.

**1. Judge Fortunato**

Plaintiffs allege that Judge Fortunato has violated Mr. Cesario's civil rights, in contravention of 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and the Due Process Clause, from August 20, 2001, to the present by: 1) ignoring Mr. Cesario's right to an attorney, right against self incrimination, and right to a jury trial at the August 20, 2001, hearing in Superior Court, see Amended Complaint II ("AC II") ¶ 11; 2) finding Mr. Cesario in contempt at that hearing even though he had not been served with a motion to adjudge him in contempt or otherwise given notice of a contempt proceeding, see id.; 3) wrongfully enjoining Mr. Cesario at that hearing from contacting Ms. Assante when no complaint seeking such enjoinment had been filed, see id.; 4) wrongfully enjoining Mr. Cesario at the August 31, 2001, hearing[27] from contacting the Bergquist children when there was no complaint seeking such enjoinment, see id ¶ 12; 5) denying Mr. Cesario a fair hearing and a trial on the merits at the October 22, 2001, Superior Court hearing, see id. ¶ 13; 6) failing to correct "an error in law,"[28] see id., ¶ 13c); 7) removing from the record certain statements made by Judge Fortunato at the October 22, 2001, hearing or directing that those statements not be entered in the record, see id. ¶ 13; 8) violating Mr. Cesario's rights under the First and Fourteenth Amendments at the December 10, 2001, Superior Court hearing (presumably by finding

---

[27] Plaintiffs also refer to an "August 30th hearing," AC II ¶ 12. It is unclear to the court whether Plaintiffs intended to mention an additional hearing or whether the August 30th reference is a typographical error.

[28] It is unclear whether the error to which Plaintiffs refer in ¶ 13c) of AC II is the imposition of the thirty day sentence on Mr. Cesario, imposition of the restraining orders pertaining to Ms. Assante and the Bergquist children, or all three.

him in contempt), see AC II ¶ 16; and 9) violating Mr. Cesario's federally guaranteed right to access to the courts by ordering at the April 15, 2001, hearing that Mr. Cesario not bring any action against Mr. Bergquist unless represented by an attorney and that neither Mr. Cesario or Mr. Bergquist could file any pleadings in civil action PC 00-6141 unless represented by an attorney, see id. ¶ 20.

In addition, Plaintiffs allege that Judge Fortunato: 1) obstructed justice, committed extortion, and abused his power by finding Mr. Cesario in contempt on December 10, 2001, and February 28, 2002, in an effort to prevent Mr. Cesario from pursuing his efforts to demonstrate witness tampering by Attorney Murray-Rapoza and Attorney Rioles, see id. ¶¶ 16, 22; 2) negligently failed to take action to address abuse to the Bergquist children (the abuse being that Mr. Bergquist repeatedly told the children that Mr. Cesario would harm them or harm others, see id. ¶ 24); 3) committed torts of malicious prosecution, false arrest and imprisonment, and intentional infliction of emotional distress on August 20, 2001, when, without any jurisdiction, he sentenced Mr. Cesario to thirty days at the ACI for a civil contempt violation, see id. ¶¶ 25-26; and 4) altered the transcripts of the hearings on October 22, 2001, and February 28, 2002, in civil action PC 00-6141, see id. ¶ 27.[29]

Plaintiffs appear to make two arguments in an effort to circumvent the bar of judicial immunity. First, they contend that judges are not immune from liability for nonjudicial actions. See Plaintiffs' Mem. Mot. to Amend at 15 (citing Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d

[29] The foregoing summary of allegations against Judge Fortunato may not be exhaustive as the Amended Complaint II contains some allegations that are not linked to any specific defendant. See, e.g., ¶ 27.

9 (1991)).[30] Second, Plaintiffs assert that Judge Fortunato acted without jurisdiction, and, therefore, absolute judicial immunity cannot apply. See id. at 15-16 (citing Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)(holding that a judge "will be subject to liability only when he has acted in the clear absence of all jurisdiction") (internal quotation marks omitted)).[31]

**a. Nonjudicial Acts**

Plaintiffs appear to argue that Judge Fortunato's action in directing statements to be removed from or not entered in the record is a nonjudicial action for which there is no judicial immunity. See id. at 15. Plaintiffs identify the material allegedly omitted from the record as exchanges between Mr. Cesario and Judge Fortunato concerning: A) what Mr. Bergquist could legally say to his minor children and B) when Mr. Cesario's motions would be heard. In their memorandum, Plaintiffs set forth several statements in quotation marks and indicate "the latter four quotes were illegally removed or not entered in the court record." Plaintiff's Mem. Mot. to Amend at 15. Because the court is not entirely certain to which quotations Plaintiffs refer, it reproduces below the relevant portion of their memorandum.

> On page three [of the transcript of the October 22, 2001, transcript] Judge Fortunato asks John Cesario "Why do you say you have become an emotional danger?". John Cesario replied that Stephen Bergquist is telling the children that John Cesario was going to murder them, murder their mother and murder the Plaintiff. Judge Fortunato again replied "**he is their father he can say what he wants to them**". John Cesario again calmly told the Judge Fortunato that he cannot say that the kids are going to be harmed and murdered and their mother is going to be

---

[30] Pinpoint citation supplied by the court.

[31] Pinpoint citation and parenthetical supplied by the court.

> murdered because I am mad at you "judge Fortunato". Judge Fortunato again replied that **"they are his kids, he can say what he wants to"**. These statements shocked and outraged my witnesses and several other people in court. At the trial there was an intermission, at that intermission, John Cesario['s] witnesses told him to correct the Judge. John Cesario['s] first comments to Judge Fortunato were **"did the court misspeak when it said he can say anything he wants to his kids, including I am going to murder kids, him and cut their mother head off"**. Judge Fortunato did not reply, he just looked angry. John Cesario further asked the Judge when are his motions going go to be heard, Judge Fortunato replied **"they're not"**. ... The Plaintiffs maintain, and witnesses will support that the latter four quotes were illegally removed or not entered into the court record.

Plaintiffs' Mem. Mot to Amend. at 14-15 (nonstandard punctuation in original)(bold added).[32]

Assuming, as the court must for purposes of the present motion, that Judge Fortunato directed the above identified statements and questions to be excluded from the court record, such action does not fall outside the scope of judicial action so as to deprive him of judicial immunity. See Eades v. Sterlinske, 810 F.2d 723, 726 (7th Cir. 1987)(finding that action of trial judge in directing court reporter to alter transcript is a judicial act and, therefore, cloaked with absolute judicial immunity); Green v. Maraio, 722 F.2d 1013, 1017-18 (2nd Cir. 1983)(holding, while not sanctioning such actions, that instruction by trial judge to court reporter to alter trial transcript was within the scope of judge's absolute judicial immunity); Thomas v. Mengel, No. CIV. A. 94-6721, 1996 WL 84261, at *1 (E.D. Pa. Feb. 27, 1996)(granting motion to dismiss § 1983 action on grounds of judicial immunity where plaintiff alleged

---

[32] Although Plaintiffs refer to the "latter four quotes," Plaintiffs' Mem. at 15, it appears that Plaintiffs are also complaining about the omission of statements or questions which they paraphrase but do not set forth in quotation marks.

that state judges, among others, had conspired to alter official transcripts of criminal proceedings against him); Muhammad v. Daley, No. 90 C 1610, 1991 WL 169358, at *5 (N.D. Ill. Aug. 27, 1991)("even if the judge and court reporter conspired to alter [plaintiff's] transcripts both are immune to a civil rights suit")(*dicta*); cf. Forte v. Sullivan, 935 F.2d 1, 3 (1st Cir. 1991)(noting general agreement that court reporters who act at the behest of a judge are entitled to absolute quasi-judicial immunity from suit as to those actions). But see Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 437, 113 S.Ct. 2167, 2172, 124 L.Ed.2d 391 (1993)(holding court reporters are not absolutely immune from damages liability because, among other reasons, they "do not exercise the kind of judgment that is protected by the doctrine of judicial immunity.").

In reaching the conclusion that Judge Fortunato is protected by judicial immunity from Plaintiffs' claim that he caused the transcript to be altered the court is also heavily influenced by the following considerations. First and most importantly, the material allegedly deleted or omitted is of no meaningful significance to Plaintiffs' appeal of the two actions which Plaintiffs are challenging: Judge Fortunato's sentencing of Mr. Cesario to the ACI for thirty days and enjoining him from having contact with Ms. Assante and the Bergquist children. Second, the alleged omissions are largely comments by Judge Fortunato to the effect that Mr. Bergquist can say what he wants to his children. This statement is already in the record. See Plaintiffs' Ex. C at 2. Thus, if Plaintiffs contend that Judge Fortunato made a misstatement of the law in this regard, it is already at least partially reflected in the record, and they are free to attempt to persuade the Rhode Island Supreme Court of that error. As for Judge Fortunato's statement that Mr. Cesario's motions were not going to be heard on October 22, 2001, deciding whether or not particular motions will be heard on a given date is clearly a

judicial act for which Judge Fortunato is absolutely protected. Thus, the omitted statement is, in the context of Plaintiffs' complaint, of little consequence. Fourth, the State provides a procedure to correct the record. Article I, Rule 12(d) of the Rhode Island Supreme Court Rules permits a party to file a motion for that purpose.[33]

Similarly, the statements allegedly omitted from the transcript of the February 28, 2002, hearing do not hinder Mr. Cesario's ability to appeal the finding of contempt which Judge Fortunato made against him on that date. Plaintiffs allege that Judge Fortunato found Mr. Cesario in contempt based on three actions, but that the findings of fact for two of these actions, sending a plant to a divorce hearing and sending "a vile letter" to Attorney Rioles, Plaintiffs' Mem. Mot. to Amend at 22, are

---

[33] The procedure for correcting the record is reflected in Rules 10(e) and 12(d) of the R.I. Supreme Court Rules of Appellate Procedure.

> (e) *Correction or Modification of the Record.* If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the Supreme Court, or the Supreme Court, on proper suggestion or of its own initiative, may direct that the omission [or] misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the Supreme Court.

R.I. Sup. Ct. Rules, Art. 1, R. 10(e) (the bracketed word was substituted for "of").

> (d) *Motions to Correct Record.* Motions to correct the record as transmitted shall be made within twenty (20) days after docketing, or within such further time as the court or any justice thereof may order.

R.I. Sup. Ct. Rules, Art. 1, R. 12(d).

absent from the record. If these findings are not in the record, they cannot be a basis for upholding the finding of contempt. Thus, Mr. Cesario's task on appeal is actually lessened by the absence of these matters from the record. Moreover, even if findings regarding the two actions were omitted, such findings are irrelevant to the determination of the correctness of Judge Fortunato's finding of contempt based on the third action, the authoring of disciplinary complaint to the Rhode Island Supreme Court Disciplinary Counsel, see AC II ¶ 17.

**b. Absence of Jurisdiction**

Turning to Plaintiffs' second argument, i.e. that Judge Fortunato acted without jurisdiction in sentencing Mr. Cesario to the ACI and enjoining him from having contact with the Bergquist children and Ms. Assante, see Plaintiffs' Mem. Mot. to Amend at 15, the court has little difficulty in concluding that this argument should be rejected. In essence, Plaintiffs claim that the sentence was illegal and that Judge Fortunato acted without jurisdiction for three reasons. First, Plaintiffs argue, in effect, that on May 31, 2001, Judge Silverstein limited the punishment which could be imposed for future violations to a fine of $5,000.00.[34] See id. at 21; see also Plaintiffs' Ex. G at 20. Second, Plaintiffs claim that there was no "legitimate motion to

---

[34] The transcript of the May 31, 2001, hearing indicates that Judge Silverstein found Mr. Cesario to have violated the restraining order and that he was in civil contempt. See Plaintiffs' Exhibit G (Transcript of 5/31/01 hearing before Silverstein, J.) at 19-20. Judge Silverstein stated that he would "permit [Mr. Cesario] to purge himself of that contempt by complying with the court order heretofore entered by Mr. Justice Williams." Id. at 20.

Contrary to Plaintiffs' assertions, Judge Silverstein did not state that the punishment for a new violation would be a $5,000.00 fine. Rather, the Judge indicated that a $5,000.00 fine would be imposed for the violation adjudicated on May 31, 2001, unless Mr. Cesario purged himself of that contempt by complying with the restraining order for the following six months. See id. Therefore, Plaintiffs are mistaken in their belief that Judge Silverstein ruled that the only punishment which could be imposed upon Mr. Cesario for a new violation of the restraining order was a $5,000.00 fine.

adjudge [Mr. Cesario] in contempt of a court order." Plaintiffs' Mem. Mot. to Amend at 18. Third, there was no certification of service regarding a motion to adjudge Mr. Cesario in contempt. See id.

The United States Supreme Court has made clear that there is a distinction between a lack of jurisdiction and acting in excess of jurisdiction. See Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id. at 356-57, 98 S.Ct. at 1105.

It is apparent that Judge Fortunato was not acting "in the clear absence of all jurisdiction." Id. On December 5, 2000, an injunction was issued to both Mr. Bergquist and Mr. Cesario in PC 00-6141, prohibiting each from harassing the other. See Plaintiffs' Ex. J; see also Plaintiffs' Ex. G (Judge Silverstein reading into the record the order[35] which issued on December 5, 2000) at 16. The Rhode Island Superior Court has exclusive original jurisdiction of suits and proceedings of an equitable character, see R.I. Gen. Laws § 8-2-13 (1997 Reenactment), and the issuance of the restraining order was within that jurisdiction. Judge Fortunato, as a judge of that court, had authority to hear allegations that the restraining order had been violated and to impose punishment for violations. Even if Plaintiffs were correct in their contention that the sentence imposed by Judge Fortunato exceeded the penalty which Judge Silverstein had advised Mr. Cesario he faced if he failed to

[35] "An injunction shall issue to both parties. Neither party shall harass, interfere with, molest, or threaten the other. The order is effective immediately. Take notice of the stalking statute." Plaintiffs' Ex. G (Judge Silverstein reading into the record the order which issued on December 5, 2000) at 16.

abide by the restraining order (which they are not), this would not mean that Judge Fortunato was without any jurisdiction. At most, such a contention asserts that Judge Fortunato acted in excess of his jurisdiction—not in the clear absence of jurisdiction. The same also applies for the other two reasons offered by Plaintiffs, the alleged absence of a motion to adjudge Mr. Cesario in contempt and of a certification of service. Such procedural shortcomings do not destroy the basic jurisdiction which Judge Fortunato possessed to hear and punish violations of the restraining order.

In Stump, the Supreme Court noted the distinction between lack of jurisdiction and excess of jurisdiction:

> [I]f a probate judge, with jurisdiction over only wills and estates should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump v. Sparkman, 435 U.S. at 357 n.7, 98 S.Ct. at 1105 n.7 (citing Bradley v. Fisher, 13 Wall. 335, 352, 20 L.Ed. 646 (1872)). Similarly here, even accepting Plaintiffs' assertion that Judge Silverstein set the maximum penalty which could be imposed for a violation, Judge Fortunato's imposition of a greater sentence would be an act in excess of Judge Fortunato's jurisdiction for which he is immune. Cf. Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)(upholding absolute judicial immunity for judge who, following civil contempt hearing, committed plaintiff to mental hospital).

The same is also true for the issuance of the restraining orders prohibiting contact with the Bergquist children and with Ms. Assante. The Superior Court had the power to issue the original restraining order prohibiting Mr. Cesario from having contact with Mr. Bergquist. Plaintiffs are essentially

complaining about an expansion of the scope of that restraining order to include contact with the Bergquist children and Ms. Assante. Again, analogizing to the above example given by the Supreme Court, if Judge Fortunato were a judge of the Rhode Island Traffic Tribunal and issued similar restraining orders, he would be acting in the clear absence of jurisdiction and would not be immune from suit. However, as a Superior Court judge the issuance of such orders were within his jurisdiction.

The restraining orders prohibiting contact with the Bergquist children and Ms. Assante also could reasonably be viewed as an expansion of the original restraining order granted to Mr. Bergquist as opposed to being completely unrelated to that order. Given the history of difficulty between Mr. Bergquist and Mr. Cesario and the number of times that they had turned to the courts for assistance in resolving that difficulty, Judge Fortunato's actions in broadening the scope of the original restraining order may have been an attempt to increase the buffer zone between them. Barring Mr. Cesario from being in the presence of either the children or Ms. Assante decreased the chances of his coming into contact with Mr. Bergquist.

Plaintiffs cite Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981), apparently in support of their argument that Judge Fortunato's order of August 31, 2001, prohibiting contact with the children, was outside of his jurisdiction. In Harper, the court found that "[t]he controversy that led to [the plaintiff's] incarceration did not center around any matter then pending before the judge; rather, it centered around the domestic problems of one of the Judge's friends, [the plaintiff's] former wife." Id. at 859 (internal quotation marks omitted). The judge in Harper, not in judicial attire and seated behind his secretary's desk, had attempted to place the plaintiff, who was seeking information about the whereabouts of the secretary in an adjacent chambers, under oath. When the plaintiff refused and

left the judge's chambers, he was pursued by bailiffs and returned to the judge's chambers. After a "hearing," he was found to be in contempt of court and sent to the county jail. See id. at 851-53. The Harper court, in ruling that the defendant judge was not protected by judicial immunity, found it "clearly unreasonable to conclude that [the plaintiff] entertained the expectation that judicial matters were at hand when he entered Judge Merckle's office on nonjudicial business." Id. at 859. The circumstances in Mr. Cesario's case are obviously vastly different, and, as this court has already found, Judge Fortunato's actions in entering the restraining orders were at least arguably related to the original case before him, namely PC 00-6141. Thus, the Harper decision actually supports the application of judicial immunity here.

Plaintiffs also cite a case note by a law student which discusses Dykes v. Hosemann, 743 F.2d 1488 (11th Cir. 1984). See Plaintiffs' Mem. Mot. to Amend at 17 (citing Robert Craig Waters, Casenote, Federal Tort Law: Judges Cannot Invoke Judicial Immunity for Acts that Violate Litigants' Civil Rights, 21 Tort & Ins. L.J. 509 (1986). The court in Dykes found that a Florida judge, who signed an order purporting to award custody of the plaintiff's three year old son to her husband when the plaintiff was still a Pennsylvania resident and had no notice of the Florida proceedings, did not have personal jurisdiction to enter the order. See Dykes, 743 F.2d at 1496. The Dykes court held that a judge who acts in the absence of subject matter jurisdiction may be held liable for his judicial acts, see id. at 1495 (citing Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872)), but concluded that under all the circumstances the Florida judge had subject matter jurisdiction to enter the order, see id. at 1496. However, the court also found that "a judge who acts in the clear and complete absence of personal jurisdiction

loses his judicial immunity," id. at 1497, and remanded the judge's case to the district court for a determination of whether the judge knew he lacked personal jurisdiction or acted in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, see id.

In the present case, notwithstanding Plaintiffs' conclusory assertions to the contrary, Judge Fortunato had both subject matter and personal jurisdiction over the parties, including Mr. Cesario. Moreover, to the extent that Plaintiffs are claiming that Judge Fortunato lacked personal jurisdiction because of procedural defects such as inadequate notice and insufficiency of service, their argument must be rejected. Such deficiencies cannot invalidate judicial immunity. Cf. Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978)("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). Furthermore, this court agrees with the dissent in Dykes. The majority held that a judge loses judicial immunity when he acts with knowledge that he lacks personal jurisdiction or in the face of clearly valid law expressly depriving him of personal jurisdiction. See Dykes v. Hosemann, 743 F.2d 1488, 1502 (11th Cir. 1984)(Hill, J., dissenting). Judge Hill criticized this ruling, describing it as "an alarming break with what has generally been considered necessary to pierce judicial immunity." Id. This court also agrees with Judge Hill as to the significance of Harper v. Merkle, the other case relied upon by Plaintiffs which already has been discussed:

> The "exceedingly narrow" holding in Harper was that a judge's actions are not "judicial acts" only when "it is beyond reasonable doubt that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears that no party has invoked the judicial

machinery for any purpose at all."

Dykes, 743 F.2d at 1502 n.2 (quoting Harper v. Merckle, 638 F.2d 848, 859 (5th Cir. 1981).

This court briefly addresses the some of the other authorities cited by Plaintiffs. The decisions of the Massachusetts Supreme Judicial Court in Piper v. Pearson, 68 Mass. 120, 1854 WL 5030 (Mass. 1854), and the Arizona Supreme Court in Davis v. Burris, 75 P.2d 689 (Ariz. 1938), do not appear to be inconsistent with the holding in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), which emphasizes that to pierce the cloak of judicial immunity the judge's action must be in the "clear absence of all jurisdiction," id. at 357, 98 S.Ct. at 1105. However, to the extent that they are, this court rejects them as overruled by Stump. The holding in Rankin v. Howard, 633 F.2d 844, 849 (9th Cir. 1980), that a judge who acts in the clear and complete absence of personal jurisdiction loses judicial immunity, was overruled in Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986). The court finds it unnecessary to discuss the other authorities cited by Plaintiffs.

**2. The State**

In addition to the above stated actions of Judge Fortunato which Plaintiffs also attribute in large measure, if not entirely, to the State, Plaintiffs further claim that the State violated their civil rights by: 1) failing to train judges in the law, see AC II ¶ 13f); 2) denying Mrs. Bergquist her right to a speedy trial by allowing repeated continuances of her divorce case in violation of the Family Court's own order in June of 2001 that no more continuances would be allowed, see id. ¶ 15; 3) suppressing evidence (presumably on December 6, 2001,[36]), by and

[36] The court uses "presumably" because this allegation appears in paragraph 15 of the AC II which begins with the date of December 6, 2001.

through Family Court Judge Bedrosian, so as to deny Mrs. Bergquist's right to a fair and impartial hearing, see id.; 4) denying Mrs. Bergquist her right to a fair, impartial, and speedy trial, her Fourteenth Amendment rights, and her right to call witnesses at the April 8, 2002, Family Court hearing, see id. ¶ 18; and 5) inhibiting Plaintiffs' remedies through the action of the Superior Court in prohibiting Mr. Cesario from filing any pleadings in PC 00-6141 or in any case involving Mr. Bergquist, and altering the Family Court docket in P00-1371, the report of the guardian ad litem, and the transcripts of the Superior Court hearings on October 22, 2001, and February 28, 2002, in PC00-6141, see id. ¶ 27 3). For these alleged wrongs, Plaintiffs seek from the State a letter of apology. See id.

As the claims against Judge Fortunato are barred based on judicial immunity, all claims attributed to the State based on Judge Fortunato's actions or orders (or the actions or orders of Judge Bedrosian, see AC II ¶¶ 15, 18, who is likewise protected by judicial immunity) are also barred. Plaintiffs' claim that the State violated their civil rights by failing to train judges in the law, see id. ¶ 13f, is barred by the holding in Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 105 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The claimed violations of Mrs. Bergquist's right to a speedy trial are barred both by Judge Bedrosian's judicial immunity and the fact that the Sixth Amendment's guarantee of a speedy trial applies only to criminal prosecutions. In short, the court finds that all claims asserted by Plaintiffs against the State in AC II are barred.

**3. Attorney Murray-Rapoza**

Although Attorney Murray-Rapoza's name is mentioned repeatedly throughout the Amended Complaint II, Plaintiffs appear only to charge her with the following: 1) misleading the court to deprive Mr. Cesario of a fair trial on October 22, 2001, see AC II ¶ 16; 2) committing a "fraud upon the Superior Court" by

falsely testifying on December 10, 2002, that she was afraid of Mr. Cesario, id.; 3) conspiring with Attorney Rioles to tamper with a witness, namely Mrs. Bergquist, so as to prevent her from appearing as witness at the October 22, 2001, Superior Court hearing, see id. ¶ 22; 4) negligently failing to address the abuse to the Bergquist children, see id. ¶ 24; and 5) possibly altering her report, see id. ¶ 27 3).

Plaintiffs' claims against Attorney Murray-Rapoza are barred because she is protected by absolute quasi-judicial immunity from civil liability. Cf. Butz v. Economu, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)("Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."). In Cok v. Cosentino, the First Circuit held that a guardian ad litem, appointed by the Family Court, has

> absolute quasi-judicial immunity for those activities integrally related to the judicial process ... [and] **absolute immunity would fail to attach only when such persons perform acts which are clearly outside the scope of their jurisdiction.** Finally, allegations of malice, or bad faith or, as here, a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders.
>
> Having determined that the GAL and conservator possessed quasi-judicial immunity, we hold that Cok's pleadings fail to show that their actions were taken in clear and complete absence of authority. The gist of the complaints against both the conservator and the GAL is a dissatisfaction with the manner in which they performed their appointed duties. There are no allegations of theft or personal profiteering, or that any of their acts were taken without the sanction of the family court. At most, Cok states a claim for negligent performance or dereliction of duty. The Supreme Court has made plain that due process, whether procedural or substantive, is not implicated by mere negligence of persons acting under color of state law. Similarly, Cok has alleged no facts to sustain an equal protection claim or cause of action under § 1985(3) or § 1986.

876 F.2d 1, 3-4 (1st Cir. 1989)(citations omitted).

The court finds that the above quoted language is equally applicable to the Plaintiffs in this case. The AC II is replete with derogatory statements regarding the manner in which Attorney Murray-Rapoza performed her duties as GAL. See AC II ¶¶ 8, 9, 13, 15, 16, 24. As in Cok, Plaintiffs here claim that the GAL engaged in one or more conspiracies, see id. ¶ 22 (alleging conspiracy to "witness tamper" and to "interfere with the co plaintiff's relationship"). Plaintiffs similarly charge the GAL with negligence for failing to address "abuse to minors ... violating a Family Court Order and testifying that the children are in fear of [Mr. Cesario]." See id. ¶ 24.

Plaintiffs lose sight of the fact that Attorney Murray-Repoza's involvement with them arose only because of her appointment as GAL. Mr. Cesario sought to involve her in his Superior Court proceedings precisely because of the knowledge or information he believed she had acquired as a result of her appointment by the Family Court as GAL. Attorney Murray-Repoza did not unilaterally interject herself into those proceedings but, rather, was pulled in by Mr. Cesario's actions in subpoenaing her, the therapist, and the psychologist. This court, therefore, rejects Plaintiffs' implicit argument that the GAL's appearance in the Superior Court deprived her of immunity.

Plaintiffs' accusation that Attorney Murray-Rapoza threatened to have the children removed from Mrs. Bergquist's custody if Mrs. Bergquist came to court to aid Mr. Cesario does not alter the court's conclusion. Even if Attorney Murray-Rapoza made such a statement, the court finds that she is protected by her status as GAL. A GAL for a child must be free to perform her duties without fear that if she offends or alienates a parent or anyone else in the process, a civil lawsuit seeking damages will lie. See Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir. 1984) (recognizing that a GAL must be able to function without worry of

possible later harassment and intimidation from dissatisfied parents and that a failure to grant absolute immunity would hamper the duties of the GAL in his role and as advocate for the child in judicial proceedings). This means that even ill-advised statements or actions are protected.

In sum, the court finds that none of the acts which Plaintiffs attribute to Attorney Murray-Rapoza fall clearly outside of her jurisdiction as GAL, and, therefore, Plaintiffs can state no cause of action against her.

**4. Attorney Rioles**

Plaintiffs allege that Attorney Rioles, who represented Mrs. Bergquist in the Family Court: 1) "committed a fraud upon the Court and Carol Bergquist by removing the stipulation of Carol Bergquist not accepting child support when the final decree was drafted," AC II ¶ 15; 2) conspired with Attorney Murray-Rapoza to tamper with a witness, namely Mrs. Bergquist, see id. ¶ 22; and 3) negligently failed to address the abuse of the Bergquist children, see id. ¶ 24. Claims one and three fail to state a federal cause of action. The second claim is conclusory and need not be credited. See Feinstein v. Resolution Trust Corp., 942 F.2d 34, 45 (1st Cir. 1991)(holding that a conclusory assertion need not be honored under Rule 12(b)(6)).

**5. Attorney Lynch**

Plaintiffs assert that on May 14, 2002, Attorney Lynch, who represented Mr. Bergquist in the divorce, violated Mrs. Bergquist's Fourteenth Amendment rights to a fair and speedy trial. See AC II ¶ 19. He allegedly did this by making false statements to Family Court Judge Stephen J. Capineri about whether Mrs. Bergquist was present, about subpoenas which she wanted to remain in full force and effect, and about the motions that were before the court. See id. Mr. Cesario in an affidavit contends that "attorney Lynch [has] filed countless

baseless motions regarding me to intimidate Carol. This is all an attempt to prevent my relationship with Carol and is a clear violation of civil rights protected under Title 42." See Memorandum of Defendant John D. Lynch, Esq. in Support of Motion to Dismiss ("Lynch Mem.") at 3 (alteration in original).

As a private attorney representing a private litigant, Attorney Lynch was at no time acting under color of state law. See Hall v. Quillen, 631 F.2d 1154, 1156 (4th Cir. 1980)(holding that state-appointed attorney in civil commitment proceedings is not state actor for purposes of the color of law requirement of § 1983); Harley v. Oliver, 529 F.2d 1143, 1145-46 (8th Cir. 1976) (holding that actions performed by private attorney in state probate proceedings are not performed under color of state law); Hansen v. Ahlgrimm, 520 F.2d 768, 770 (7th Cir. 1975)("It is established that a private attorney, while participating in the trial of private state court action, is not acting under color of state law."); Haldane v. Chagnon, 345 F.2d 601, 604-05 (9th Cir. 1965)(finding that private attorneys were not state officers and that a claim could not be stated against them under the Civil Rights Act). Since Attorney Lynch was not acting under color of state law, no action lies against him under 42 U.S.C. § 1983. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988)("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."); Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999)("Establishing that the defendant acted 'under color of state law' is one of two essential requirements for an action under section 1983, which imposes liability only for conduct attributable to the state.").

Plaintiffs' claims against Attorney Lynch under 42 U.S.C. § 1985 fail for an additional reason. The First Circuit has

explained that

> To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). In Griffin, the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities under the laws" to signify that **a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."** Id.

Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(bold added). A claim under Section 1985(2), alleging a denial of access to state courts, requires an allegation of class-based animus in order to state a claim. See Portman v. County of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993)("It is well-settled that the 'equal protection' language of the second clause of section 1985(2) [requires] an allegation of class-based animus for the statement of a claim under that clause.")(alteration in original). Plaintiffs have made no claim that the actions for which they seek redress are based on racial or other class-based discriminatory animus.

Since Plaintiffs fail to state a claim under § 1985(3), they cannot establish a claim under § 1986. See Hahn v. Sargent, 523 F.2d 461, 470 (1st Cir. 1975)(upholding district court finding that plaintiff's § 1986 claim fails if he cannot state a valid claim under § 1985); Davey v. Tomlinson, 627 F.Supp. 1458, 1462 (E.D. Mich. 1986)("Without a violation of section 1985(3), there can be no violation of section 1986."); German v. Killeen, 495

F.Supp. 822, 830 (E.D. Mich. 1980). This is because a § 1986 claim is designed to punish those who aid and abet violations of § 1985. See Davey v. Tomlinson, 627 F.Supp. at 1462.

As explained earlier, see Discussion supra Section I.C.5., Mrs. Bergquist's right to a speedy trial is not guaranteed by the federal Constitution. Therefore, the deprivation of that right cannot provide the basis for a federal civil rights action. Plaintiffs fail to state any facts which would support a claim that Attorney Lynch was involved in a conspiracy and that some overt act was taken to further that conspiracy.

Plaintiffs cannot state any claim for negligence or malpractice against Attorney Lynch because he did not owe them any duty of care. See Macera Bros. of Cranston, Inc. v. Gelfuso & Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999)(holding that in order to prevail on a negligence based-legal malpractice claim, a plaintiff must prove a defendant's duty of care, a breach of that duty, and damages proximately resulting therefrom to the plaintiff); Montuori v. Narragansett Elec. Co., 418 A.2d 5, 9-10 (R.I. 1980)(same); see also Vallinoto v. DiSandro, 688 A.2d 830, 836 (R.I. 1997)("Failure to prove all three of those required elements, acts as a matter of law, to bar relief or recovery."). In sum, Plaintiffs can state no cause of action against Attorney Lynch.

**6. Mr. Bergquist**

The causes of action alleged against Mr. Bergquist in the AC II are few in number. Plaintiffs allege: 1) that Mr. Bergquist instilled fears in Mrs. Bergquist's family and his three minor daughters that Mr. Cesario is a murderer and child molester and that he was intent on harming them, see AC II ¶ 5; 2) that he displayed the August 31, 2001, restraining order which Judge Fortunato had issued prohibiting Mr. Cesario from having contact with the Bergquist children to administrators at the children's school, see id. ¶ 13; and 3) that he "knowingly, willfully and

maliciously through intimidation, child abuse, misrepresenting facts to police, therapists, and Court officials has repeatedly violated [Mr. Cesario's] rights under Title 42 & 1983, & 1985 and & 1985 [sic]," see id. ¶ 21.

As was the case with Attorney Lynch, Plaintiffs' claims against Mr. Bergquist fail to state any federal cause of action. They also do not warrant the exercise of pendant jurisdiction.

**C. Summary Regarding Motion to Amend**

In short, the court finds that Plaintiffs' Motion to Amend must be denied on grounds of futility. Plaintiffs are unable to state a federal cause of action against any Defendants because their claims continue to be barred by the holding in Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 105 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989), the doctrine of judicial immunity, the Rooker-Feldman doctrine, the policy of abstention, the lack of constitutional basis for their complaints, and the other reasons expressed in the preceding discussion of Plaintiffs' AC II.

**Conclusion**

For the foregoing reasons, I find that the State's Motion to Dismiss VAC should be granted and that the motions filed by Defendants Murray-Rapoza, Rioles, and Lynch to dismiss the Amended Complaint II should be denied.[37] By separate order issued with this Report and Recommendation, Plaintiffs' Motion to Amend is denied.[38]

Any objections to this Report and Recommendation must be

---

[37] See Note 2.

[38] Plaintiffs are advised that in order to appeal the Order Denying Plaintiffs' Motion to Amend they must file a Notice of Appeal separate from any objections to this Report and Recommendation. Objecting to this Report and Recommendation only preserves review of this Magistrate Judge's finding that the State's Motion to Dismiss VAC should be granted. Plaintiffs must file a separate Notice of Appeal to obtain review of the Order denying their Motion to Amend.

specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc., v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

David L. Martin
United States Magistrate Judge
November 22, 2002