ORIGINAL

**UNITED STATES DISTRICT COURT STATE OF RHODE ISLAND**

**John Cesario**
**Carol Cesario Plaintiff's**
**Vs CASE # 05-90-S**

**Stephen Bergquist Defendant**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Cesario and Carol Cesario seek summary judgment to void judgments issued by the Superior Court of R.I and affirmed by the R.I Supreme Court without the merits being reached in the above titled action, and the void judgments of the Rhode Island Family Court. Plaintiff's assert that said judgment in the above entitled matter are void as due process requirements were not complied with, and extrinsic fraud of the court occurred. Whatever judgments, if any at all, not deemed void the Plaintiff seeks a hearing in this on the Constitutional claims which were not entertained in the State Courts. Plaintiff's attach Memoranda of law and Affidavit's with exhibits to support this Motion.

John Cesario Plaintiff pro-se

64 Verdant Drive, Cranston R.I 02920

401-615 -0549

Carol Cesario Plaintiff pro-se

7/2/2005

**CERTIFICATION**

I, John Cesario, certify that the motion, memoranda, affidavit and exhibits were mailed first class, US postage prepaid, to Stephen Bergquist at 189 Legion Way, Cranston RI,02910 and Patricia Rapoza 995 Park Ave, Cranston RI 02910 on July 5 2005

7/5/2005

**UNITED STATES DISTRICT COURT STATE OF RHODE ISLAND**

**John Cesario**
**Carol Cesario Plaintiff's**
**Vs CASE # 05-90-S**

**Stephen Bergquist Defendant**

Plaintiff John Cesario and Carol Cesario hereby notice their claims for relief under penalty of perjury pursuant to 28 U.S.C. § 1746 with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure as follows:

**Plaintiff's Memoranda of Law Supporting Plaintiff's Motion for Summary Judgment.**

**JURISDICTIONAL STATEMENT**

Venerable common law remedy available to collaterally attack a final State court judgment ***at any time*** as void as wanting in due process for gross irregularities and "departures from established modes of procedure", *Windsor v. McVeigh*, 93 U.S.274, 281-282 (1876); The Fifth Amendment of the Constitution and the Equal Protection Under the Law. *Davis v. Passman*, 442 U.S.226, 242 (1979). venerable common law remedy available to collaterally attack a final state court judgment ***at any time*** as void as wanting in due process for gross irregularities and "departures from established modes of procedure",

**Old Wayne Mut. L. Assoc. v. McDonough**, 204 U.S. 8, 27 S.Ct. 236 (1907)

*("jurisdiction of any court exercising authority over a subject `may be inquired into in every other court when the proceedings in the former are relied upon and brought before the latter by a party claiming the benefit of such proceedings,' and the rule prevails whether `the decree or judgment has been given, in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of states.'");*

**Pro Se Status**

Plaintiff's have diligently attempted to comply with all procedural rules. I realize that the holding in Haines vs Kerner 404 US 519 gives extra solicitude to pro se complaints, however plaintiff's have attempted to be extremely detailed throughout their complaint. The length of the complaint is directly related to the plethora of Constitutional claims spanning a half dozen hearings resulting in void orders.

**Summary Judgment Analysis / Motion to Dismiss and Subject Matter Jurisdiction**

The defendant cannot support any set of facts to support a defense, the merits of these Constitutional issues were not entertained by the RI Supreme Court. There is no set of facts that will make void judgments valid.

The plaintiff's have met the burden of subject matter jurisdiction and have cited numerous authorities relating to the "law of voids". The court should not grant a motion to dismiss "unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts" Conley v Gibson 355 U.S. 41. The report of the District Court of 11/22/2003 held that Plaintiff John's hearing was criminal in nature after reviewing the transcripts. The State had argued the hearing to be civil contempt. That hearing was conducted in violation of due process, including rights to notice under the Fourteenth Amendment, an attorney under the Sixth Amendment , a jury trial (RI CONSTITUTION) ( EQUAL PROTECTION CLAUSE), rights to self incrimination under the Fifth Amendment. This is just one example of a well plead fact. A void order is an order which, in effect, never had validity and is subject to being vacated at any time.

**I. Grounds for Summary Judgment in favor for the Plaintiff John Cesario striking the contempt conviction of the May 31st 2001 Hearing as VOID AB INITIO.**

A) **DUE PROCESS VIOLATIONS, FOURTEENTH AMENDMENT**.

The R.I Supreme Court refused to entertain Plaintiff's Constitutional claim that the hearing of 5/31/2001 was void ab initio to want of due process even after they received the transcripts. The Superior Court records prove that there was never any motion to adjudge the Plaintiff in contempt ever written or filed. Plaintiff appeared in Court based on receiving a witness subpoena. Judge Silverstein did not know what why the case was before him. Plaintiff was not apprised of the charges against me, wherefore, plaintiff was not able to create a defense. Judge Silverstein has refused to sign an order adjudging me in contempt. However the certified Superior Court docket (**EXHIBIT 1**) and the transcript of 5/31/2001 clearly indicate plaintiff was adjudged in civil contempt. The contempt finding was a gross aberration of protected 14th Amendment rights. The order of 12/5/2000 which controlled the parties was not a do not contact order. Certainly if plaintiff was given notice a defense of making a phone call based upon the DCYF report which stated that the Defendant was coaching my wife's 9 yr old daughter to say plaintiff was threatening to kill him and that he was instilling fears in the child about me could have framed an aggressive defense. Plaintiff was not allowed to call witnesses or able to consult an attorney in regards to rights protected under the Fifth Amendment. Further, Judge Silverstein may have inadvertently read the 12/5/2001 order to read "no contact". The order was not a "**no contact order**". As not to be repetitive plaintiff will end this memoranda/ sworn affidavit with one list of supporting case laws and the corresponding grounds. There was no waiver of any constitutional right to notice, the merits of plaintiff's claims were not entertained at the state court level.

**II. Grounds for Summary Judgment To Strike The Contempt Conviction of 8/20/2001 and Subsequent Fraudulent Civil Contempt Holding by the R.I. Supreme Court as Void Ab Initio.**

**B. DUE PROCESS VIOLATIONS, FOURTEENTH AMENDMENT , FIFTH AMENDMENT SIXTH AMENDMENT.**

Plaintiff John appeared in Superior Court on 8/20/2001 after being commanded to appear by means of being served with a ***subpoena duces tacem*** . The subpoena duces

tacem was prepared by the Defendant and served on me by the Bristol County Sheriff. After appearing at the Defendants table with the requested documents a criminal contempt trial apparently began. Plaintiff never waived rights to service, was not notified of charges, and was denied protected rights guaranteed by the Fifth, Sixth and Fourteenth Amendments. The R.I Supreme Court opinion clearly states that the Defendants claims that he served me are **not** supported by the record. While a motion to adjudge plaintiff in contempt was given to judge Fortunato, it was never docketed, stamped by the court or certified. It is still a mystery as to how Judge Fortunato came to possess this defective motion.

Judge Martin found that the hearing of 8/20/2001 was a criminal contempt hearing by applying both R.I and federal Law in an opinion filed 11/22/2003. The R.I. Attorney General argued that the hearing of 8/20/2001 was a civil hearing. The R.I Supreme Court opinion corresponds with the finding by Judge Martin **no option** of a purge was afforded the plaintiff. The R.I. Supreme Court in its opinion of the 8/20/2001 hearing clearly stated that the hearing was criminal and as I was not served properly under Rule 42 of Criminal Procedure. The opinion of the R.I. Supreme Court regarding the hearing of 8/20/2001 was that it was a criminal hearing and the sanction of a thirty day sentence was vacated as it violated rights protected by **Rule 42 of Criminal Procedure.**

**Hicks v. Feiock [1988.SCT.1981, 485 U.S. 624,** *this U.S. Supreme court determines the standards of proof in prosecution and defense. Civil contempt imprisonment is upheld if the sentence vacates upon compliance with the order, but is held to be criminal in nature if the punishment is not expunged upon satisfaction of the order, or is for fixed time period without waiver upon compliance.*

**In Re Oliver , 333 U.S. 257 (1948**) *A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.*
**Mr. Justice FRANK FURTER:** *But an opportunity to meet a charge of criminal contempt must be a fair opportunity. It would not be fair, if in the court in which the accused can contest for the first time the validity of the charge against him, he comes [333 U.S. 257 , 285] handicapped with a finding against him which he did not have an adequate opportunity of resisting.*

**Taylor v. Hayes, 418 U.S. 488 (1974)** *Reasonable notice of the specific charges and opportunity to be heard [418 U.S. 488, 489] are essential in view of the heightened potential for abuse posed by the contempt power. Pp. 496-500.*

**Even if the hearing was civil, which it was not, sanctions could include loss of liberty and property and due process clause to reasonable notice is in effect.**

The Rhode Island Supreme Court (herein called RISC) declined to entertain whether the entire hearing of 8/20/2001 was void. The RISC stated the hearing justice designated the hearing civil, the transcript of 8/20/2001 does not reflect such a designation, and equal protection under the law dictates the hearing was criminal, regardless of the baseless unsupported holding that the hearing justice designated the hearing civil. Additionally, it can be stated without peradventure that the opportunity to be heard according to due process rests upon reasonable notice of charges. The entire hearing was void as to want of due process depriving me of an adequate opportunity to be heard or have an attorney present.

**Sixth Amendment**

**The United States Supreme Court's holding in JOHNSON v. ZERBST, 304 U.S. 458 (1938)** states "*Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this [304 U.S. 458, 468] right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has* **not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction** *and sentence depriving him of his life or his liberty. A court's jurisdiction at the hearing of trial may be lost 'in the course of the proceedings' due to failure to complete the court-as the Sixth Amendment requires-by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed.* ***The judgment of conviction pronounced by a court without jurisdiction is void"***.

In denying the plaintiff such basic Constitutional safeguards, it again is without peradventure that a criminal hearing found to be lacking such basic fundamental rights can after the fact be called civil; a civil contempt could carry the same sanctions of loss of liberty and property. The hearing of 8/20/2001 cannot fraudulently be called civil for the convenience and expediency of the RISC's ulterior motives.

**D. EQUAL PROTECTION UNDER THE LAW**

Judge Fortunato refused to sign multiple orders adjudging me in contempt both before and after the Supreme Court opinion, **Exhibit B** orders stamped by the Providence Superior Court Clerk which were stamped and filed. Even subsequent to the RISC opinion dated 2/9/2001, Fortunato refused to sign the orders which reflect the RISC, furthermore, said orders never returned by Fortunato to the court file.

**III. Grounds for Summary Judgment To Strike The Restraining Order of 8/31/2001 as Void ab Initio**

**E. DUE PROCESS VIOLATIONS, FOURTEENTH AMENDMENT**

The RISC and the report of Judge Martin held the hearing of 8/20/2001 was of criminal contempt. The holdings of the United States Supreme Court, the Law of the Land, *in Oliver, supra; Johnson, supra; Hicks, supra; and Taylor supra* support the Plaintiff's claims that the hearing was both criminal and void ab initio per violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The defendant entered the Report of Judge Martin in RISC matter, the plaintiff entered the missing transcripts attached to his Motion For Rehearing to the RISC. While the hearing of 8/20/2001 is void ab initio, the plaintiff argument that the restraining order affirmed by the RISC based on the Plaintiff's Motion for A Reduction of his criminal sentence heard on 8/31/2001, while extraneous, may be helpful to the Court.

A Motion for a Reduction of a Criminal Sentence, since vacated, must include any attachments to that unlawful sentence. The Plaintiff did not have notice of a possible restraining order, was not allowed an opportunity to oppose such an order, therefore the order is void on its own merits. Additionally, the children were not even a **PARTY** to the Superior Court matter as of 12/5/2001. The plaintiff was **not** afforded an opportunity to purge a contempt as the RISP fraudulently states. The 8/20/2001 hearing **does not** indicate a restraining order on the minor children being issued. The RISC, in addition to stating in the 2/9/2001 opinion that the restraining order on the minor children was to remain in full force and effect **provided** I was given an opportunity to purge the "civil" contempt, further stated that that restraining order could have entered as an **independent order**. The children were NOT a party to the Superior Court matter, and as they were not a party to the action an independent order would require proper notice to the plaintiff,

which would include a motion joining the minor children to the Superior Court matter. As the RISC opinion of 2/9/2001 states, the only filing by the defendant was a contempt motion, which was not docketed, not stamped by the Court clerk, and not certified to the plaintiff. **The RISC's opinion which stated the restraining order on the plaintiff from contacting the minors could have been a purge of a civil contempt is so preposterous and absurd it not only brings into question the lack of integrity and corruption of the R.I Supreme Court.**

**D. EQUAL PROTECTION UNDER THE LAW**

Fortunato refused to sign the order that he ordered me restrained and enjoined from contacting the children. Those orders are also missing from the file. On 10/22/2001 plaintiff appeared in Superior Court based on my filing three (3) motions. A contempt motion against the Defendant, a motion to lift the restraining order Fortunato placed on me regarding the children or have a hearing on the merits, and a motion to lift the mutual restraining order. On October 22nd 2001 I had this exchange with Fortunato:

*THE COURT: The best interest of those children will ultimately be determined as our legislature has ordained by the Family Court. And, yet,* **you persist in going contrary to the earlier orders in this matter that say you're not to interfere with Mr. Bergoquist. Emphasis added, there were no earlier orders in effect**

*MR. CESARIO: Well, this is not a Family Court hearing. You put a restraining order on me without any basis that I've done anything to the children based on lies that he told you.*
*THE COURT: Wait a minute. The initial restraining order was put on you long before I even knew this case existed. You were restrained and enjoined by Judge Williams at the outset of this matter from interfering with or harassing Mr. Bergquist, AL some later point, whether you regret it or not, you have represented that you agreed to have that extended as some sort of mutual Order. So, I never issued the original Order in this case. Here, it is, 12/5/2000. I think it was the second Order issued in this matter. The first Order was issued by Judge Williams in favor of Mr. Bergquist who came here on his behalf and also on behalf of his minor children. He got that Order on November 28th of 2000. On December 5th of 2000, he turned that into a mutual Order, and those are the Orders that control the behavior of the parties.*
*MR. CESARIO: The Order for the minor children was denied by Judge Williams.THE COURT: Well, if it was, it doesn't say it on the Order,* **and equity speaks through decrees.emphasis added**

*MR. CESARIO I have the transcript ...............*
*THE COURT: And, yet, you have a motion to lift the restraining order here, Mr, Cesario, that says you asked me to lift the Restraining Order placed on you from being near the Bergoquist girls*. **I probably said, I think it is a good idea in light of this to have such an Order, and, indeed, if there weren't one, I would probably have issued one. EMPHASIS ADDED** *But the real Order that presents a problem for you, if you consider it a problem, as you obviously do; is the Order of the Family Court. The Family Court has the primary responsibility for the best interest of those children, and they told you to keep away from these children. You may not like that Order, and Mrs. Bergquistt may not like it, but that's the Order. Plaintiff John was not restrained or a party to Family Court*

Fortunato stated that he did not place the restraining order on the plaintiff.

Fortunato stated that the controlling orders were issued by Judge Williams. The 12/5/2000 order by Judge Williams superceded an expired TRO and did not include the children. Fortunato stated equity speaks through decrees, Fortunato did not sign a decree issuing a restraining order relating to the parties. It is beyond comprehension or jurisprudence that any rational court could conclude that an unsigned restraining order, erroneously stated as a condition without notice or an opportunity for me to be heard, as a condition of an unlawful criminal conviction which was vacated, that Fortunato unequivocally and emphatically stated was not issued by him, could be ordered in full force and effect by the R.I. Supreme Court. Equity speaks in decrees, Fortunato did not sign an order, and clearly misread existing orders.

**The R.I. Supreme Court did not make any finding of fact that the restraining order was not void nor did it make any valid legal opinion on the merits.** The opinion of 2/9/2004 merely guessed that the order could have been imposed as a purge of a contempt convictionor an independent order. The R.I Supreme Court stated without the transcripts it could not make that determination. The transcripts were provided and the R.I. Supreme Court did not address the merits of my argument

regarding due process violations and fraud. There can be no doubt that the R.I. Supreme Court committed fraud when it determined the hearing of 8/20/2001 was civil when it was criminal. That fraudulent finding was the basis of the R.I. Supreme Court stating erroneously and fraudulent that the restraining order could have been issued as a purge or an independent order.

**The March 1st 2002 / April 15th 2002 Amended Order From the Decision Fortunato Rendered on Febuary 28th 2002.**

The Defendant committed fraud on the Court when he prepared an order for Fortunato to sign which stated that on Febuary 28th 2002 Fortunato ordered plaintiff restrained from my now stepchildren. The transcript is wholly bereft of any restraining order preventing the plaintiff from contacting the minors entering. Supreme Court filings the plaintiff filed in that appeal challenged the order as the defendant did not give notice he was seeking such relief, the children were not a party to the action and the plaintiff was not given an opportunity to oppose the order. The Defendant cannot prove any set of facts which would defeat the fact that the order prepared by the Defendant was fraudulent, and the order violated rights to due process of notice and an opportunity to be heard as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

The plaintiff filed several more motions to vacate, modify or have a hearing on the merits regarding the purported restraining order, never to be heard. The Superior Court did not allow any of those motions to be heard, which would render the order void for due process violations. On March 1st 2002 (EXHIBIT 2 transcript of March 1st 2002, omnibus for motions to vacate) Fortunato stated to my attorney Kevin

McKenna that he was signing the fraudulent order because long before McKenna's appearance in my case an order was issued. On October 22nd 2001 Fortunato told stated in open court that he did not place a restraining order relative to the minors, he stated the controlling order was the 12/5/2000 order. That order did not include the children, nor were the children parties.

The RISC Court failed to address pleadings claiming due process violations of the Fourteenth Amendment and fraud regarding the order affirmed by the R.I Supreme Court. On May 1st 2004 Judge Procaccini of the Superior Court found the orders not credible. Judge Procaccini of Superior Court, after hearing a three day contempt proceeding stated on May 1st 2004 **"the court, *after considering the orders and transcripts introduced into evidence remains thoroughly confused and unconvinced as to the reliability of these exhibits. The Court has taken the extra step of trying to correlate this material and remains uneasy about the accuracy of the documents, including orders drafted by the parties*".** A Superior Court judge, who had thoroughly reviewed the file, documents and orders in addition to having three (3) Supreme Court orders rendered in the previous sixty (60) days found the restraining orders not credible. Based on the fact that there are no justicable issues that the Defendant can raise to defeat the proof offered that the orders are void based on gross due process violations and fraud; the restraining order(s) regarding the minor children that the R.I Supreme Court must be stricken as void ab initio as a matter of law and equity.

The plaintiff was ordered to pay the GAL 500.00 on 10/22/2001. The RISC failed to entertain my Constitutional challenge allowing a litigant to call witnesses in their defense, hostile or otherwise. The GAL was not a party to the action and was paid the legal witness fee required by law. The GAL is such a disreputable stain on the profession of law she actually double billed the actual parties for the same three hours.

**IV Grounds for vacating the contempt conviction of December 10th 2001**

The R.I Supreme Court's 2/9/2004 opinion stated that it could not determine Constitutional challenge to the December 10th 2001 contempt conviction because it did not have the transcript. The R.I Supreme Court passed on determining my Constitutional challenges therefore the matter is ripe for this court to determine. A void order never has any legal effect and the plaintiff is challenging that the order of contempt is void ab initio and or in the alternative the order is void based on the merits being reviewed for the first time by this court. .

The plaintiff appeared in Providence Superior Court based on a contempt motion purporting that he was admonished not to contact the Guardian Ad Litem. The plaintiff asserts the Equal Protection Under the Law Clause and Due Process Clause of the Fourteenth Amendment to void this contempt judgment. The Guardian Ad Litem was not a party to the restraining order in Superior Court, which was a do not harass or interfere order with the Defendant, therefore the order is void. The defendant did not have grounds to bring a complaint for a third party. Moreover, On October 22nd 2001 Judge Fortunato stated that the only order that the plaintiff was bound by was the December 5th 2000 order, which did not include a third party, Patricia Murray Rapoza. Rule 65 must apply equally in all cases. There was **never** an order ever given by judge Fortunato which would have given direction to me not to contact the Guardian Ad Litem. Rule 65 requires that specific written decrees must set forth what the parties are and are not to do. The Fourteenth Amendment guarantees notice and an opportunity to be heard. In fact, Fortunato ordered me to send her a check and the motion regarding witness tampering. The GAL was never joined as a party.

The plaintiff was never given notice that I was not to contact the Guardian ad litem. The plaintiff was told on October 22nd 2001 to send her a check, and I was told on October 25th 2001 to send her the witness coercion motion.

1. The motion to adjudge the plaintiff in contempt is extrinsic fraud as it fraudulently states that the plaintiff was admonished not to contact the GAL and it

violates rights protected under the Equal Protection Clause as the Guardian Ad Litem was not a party to the restraining order, and the Defendant had no legal authority to make a complaint on behalf of a third party.

2. The plaintiff does not know of any law that could hold a litigant in contempt for a "purported" admonishment. The charge against on October 22nd 2001 was that the plaintiff violated a purported **"admonishment**" not to contact a person who was not a **"party"** to the case.. The record shows that there was not a purported admonishment. Judge Fortunato did state that the plaintiff "came this close to going to jail for dragging the GAL into Superior Court with her records", that statement is absurd as their was not a motion to adjudge me in contempt for calling witnesses and the ability to call witness, hostile or friendly, is part of due process.

3. The admonishment never occurred as the transcript of 10/22/2001 proves. The Defendant was represented by a seasoned attorney Bristow, the Guardian was an attorney and was represented by an attorney; no order was entered by any attorney because no order issued. The three (3) attorneys on the Defendants side didn't reduce the purported admonishment to an order, because no order entered.

4. The record of October 22nd 2001, in which the purported admonishment occurred is bereft of any notice or opportunity for me to be heard in opposition to the purported admonishment in violation of Rule 65 and the Fourteenth Amendment. In addition, R.I. case law in the Matter of the State vs Ekert is clear that a party was be informed of the behavior to which he is restrained and it must be written. Fortunato made it completely clear on October 22nd 2001 that the only order that I was bound by was the 12/05/2000 order. The GAL was not a party to that order. The GAL entered an order based the hearing of 10/22/2001 which did not contain any order that I was restrained from contacting her. She entered an order that I was in fact to send her a check. Attorney Bristow entered an order that I was voluntarily dismissing a slander suit against the Defendant.

It does not appear from the record that the GAL even filed a motion in Superior Court to quash subpoena's.

On October 25th 2001 I appeared before Fortunato to report witness coercion and asking for a stay of the order to pay the Guardian Ad Litem. Fortunato told me reporting the witness tampering "was going to come back to haunt me" and directed me to send the motions to the Guardian Ad Litem.

**It is extremely disappointing and shocking that this Court, which recently has dealt with contempt issues by attorneys and reporters, failed to address one of the most basic rights of citizen, being threatened by a court officer if she appeared as a witness. It is disappointing and shocking that this Court would found that the GAL had immunity for threatening a witness because I dragged her into court when she was a legitimate witness. The record was clear that there was confusion as to a restraining order, and not only was it my Constitutional right to call her as a witnesses , what better witness to have than a GAL.**

This Court has jurisdiction for the reasons that R.I Supreme Court passed on making a determination and finding of fact based on my Constitutional challenges and claims that the order adjudging me in contempt of a purported admonishment was void. **(Exhibit 3** Motion to adjudge me in contempt fraudulently claiming I was admonished) **EXHIBIT 4 Attorney McKenna's objection**

**V. Grounds for striking the March 1st 2002 order/ amended April 15th 2002 as void ab initio or in the alternative void as my First Amendment rights and rights protected under the Equal Protection Clause were violated.**

The order restraining me from the contacting my stepchildren must be stricken as void ab initio as the order fraudulently states that the order issued and was decreed on Febuary 28th 2002. As the transcript reveals that the order was not issued on Febuary 28th 2002 it is clearly fraudulent. In addition I was not given notice or an opportunity to oppose the order. The Rhode Island Supreme Court did not address my First Amendment challenge.

5. As the contempt conviction of 12/10/2001 was void, the basis to adjudge me in contempt on Febuary 28th 2002 ceased to exist.

6. Plaintiff further states he asserted that a First Amendment Right to contact any public official. A restraining order cannot violate rights protected by the First Amendment. The record is clear that no interference of any Family Court occurred, that there were no pending matters, Rioles was not a party to the restraining order nor was the co plaintiff's attorney at the time the Disciplinary Committee letter was forwarded to her. Plaintiff is not restrained to contact Rioles now, and despite Fortunato's erroneous conclusion that plaintiff sent the Disciplinary complaint, was not restrained from contacting her then. The plaintiff did not have his asserted First Amendment challenge heard by the RI Supreme Court. The issue of the letter was witness tampering in Plaintiff's Superior Court case. Certainly the plaintiff has a protected First Amendment right to express his opinion to anyone who was not a party to the restraining order.

7. Equal Protection Under the Law guarantees that the plaintiff be treated the same as anyone else under the LAW. Rule 65 states that in order to hold someone in contempt a lawful court order has to be violated. Rule 65 states that a litigant must now what conduct he is restrained from. Fortunato ruled that my sending the Disciplinary Committee Complaint regarding her role in witness tampering in my Superior Court case violated a court order which stated " plaintiff was not to interfere in pending Family Court matters". Fortunato ruled the appeal period is alive and vibrant. As stated, the final judgment entered, Rioles testified that she did not sent my wife letters because she was out of the loop, and there were no pending matters nor did the Disciplinary Committee interfere with any divorce proceedings. The idea that someone could be held in contempt because a Disciplinary Committee Letter regarding witness tampering in Superior Court interfered with some undisclosed future hearing in Family Court is far fetched and does not square with the Equal protection clause. The RISC Court did not entertain Constitutional claims that regarding due process and Equal Protection under the Law based on the December. For the stated reasons that the order of Febuary 28th is void because it is based upon a void order of 12/10/2001 and that the RI Supreme Court failed to even

acknowledge let alone make a finding of fact as to my First Amendment rights being violated, and not entertained by the RI Supreme Court, the issue is ripe for this court to either issue summary judgment in my favor or, in the alternative, proceed to trial.

**August 22nd 2002**

Summary judgment must be granted as a matter of Law. The Rule 11 order was sua sponte withhout notice or opportunity to be heard. Defendants motion to adjudge in contempt was not properly on the docket as their was not an omnibus form filed and only motion shows only one day notification. The R.I. Supreme Court declined my Writ of Certiorari which contained federal due process claims and questions. The transcript of 8/22/2002 clearly shows the trial justice reversing an earlier contempt holding from 8/21/2002. The trial judge did not give me any prior notice that sanctions were contemplated. Notice and an opportunity to be heard are the essence of due process of law. "[T]he manner in which [Rule 11] sanctions are imposed must comport with due process requirements. At a minimum, notice and an opportunity to be heard are required." Sanko S.S. Co. v. Galin, 835 F.2d 51, 52-53 (2d Cir. 1987) (citations omitted). See also Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1027 (5th Cir. 1994) (affording person accused of Rule 11 violation an opportunity to submit brief usually enough to satisfy due process requirement);

A court's failure to provide adequate notice and the opportunity to be heard when imposing sanctions sua sponte "in itself provide[s] the ground for reversal of an order imposing sanctions." Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 322 (2d Cir. 1990). In G.J.B. & Assocs., Inc. v.Singleton, 913 F.2d 824, 831 (10th Cir. 1990) Cok vs Read RI Supreme Court. **EXHIBIT 5** transcript of 8/22/2002

**May 1st 2004**

Judge Procaccini entered an order restricting my pro se appearances. The transcript of May 1st 2004 does not show any notice or opportunity for me to oppose the order. EXHIBIT **6** transcript of 5/1/2004. Plaintiff will add evidence at trial.

**Plaintiff Carol Cesario, Family Court.**

On September 17th 2001 the plaintiff appeared at a hearing entitled the Decision Pending Final Judgment. The defendant, through counsel, prepared an inaccurate order representing that hearing. The order did not accurately reflect the bench decision with regard to 1) child support remaining in full force and effect, and 2) the restraining order being modified to only include unrelated males and females. Prior to that the parties agreed to an order in which the parties were restrained from having Cesario and the defendants girlfriend in the presence of the children. As the order reflecting the Decision

Pending Final Judgment was inaccurate, the Plaintiff Carol timely objected. Therefore, the ORDER of 9/17/2001 in its current form never entered as an order. The plaintiff appeared in court on November 6th, November 18th, and December 6th with nearly a dozen witnesses as matters not adjudicated on 9/17/2001 were being vigorously contested. Judge Bedrosian had previously signed an order stating there would be no more continuances. Each of the previous mentioned dates were continued without cause shown or upon a filed motion.

Plaintiff's attorney Rioles advised plaintiff on 12/6/2001 that Bedrosian wanted the parties to negotiate. The plaintiff was bullied and coerced by the defendant in the presence of witnesses, including the hallway of family court. The Guardian Ad Litem, stated that the defendant is "fucking nuts" numerous times, as overheard by witnesses. The plaintiff broke down and initialed the stipulation previously dated entered as an exhibit dated 12/6/2001. That stipulation has been altered. The stipulation was never filed with the Court, and it is not on the stamped action sheet from the RISC **Exhibit 13** . The alterations include the handwritten word "order". The stipulation stated that the final judgment was to enter on 12/6/2001. Rioles wrote a fraudulent order which was signed by Judge Jeremiah on 12/7/2001.Rioles did not have the order signed by Judge Bedrosian on 12/7/2001 even though Judge Bedrosian heard a full calendar.

The plaintiff, immediately upon arriving home on 12/6/2001 phoned Rioles and instructed her **NOT** to enter that stipulation, as she wanted to go before Judge Bedrosian and explain that the stipulation was not of free will because of the pressure and bullying. The RISC recent opinion in McBurney vs Rozlowski stipulations were subject of that appeal. An attorney is bound by the clients wishes, and the attorney cannot operate outside of the law. Rioles not only violating the plaintiff's clear and unambiguous directive **NOT** to enter the stipulation, Rioles committed fraud by adding and deleting language from the stipulation of 12/6/2001. Rioles deleted the language that the final judgment could enter on 12/6/2001, and in fact the final judgment entered on 12/18/2001. Rioles added language not stipulated to on 12/6/2001, including that the Decision Pending Final Judgment and the stipulation executed on 12/6/2001 were to be "**merged and incorporated**" into the final decree. The plaintiff does not know of any law that would allow a JUDGE to privately alter a stipulation without the consent of the

plaintiff, it is without peradventure that Rioles committed blatant and knowing extrinsic fraud on against plaintiff when she altered the language of the stipulation. The decision pending final entry was not even a valid order as that order was objected to by the plaintiff. The RISC has held that divorce final judgments can be piecemeal, see *Deluca vs Deluca*,. That holding, being that the plaintiff is entitled to Equal Protection Under the Law, would allow a final judgment to enter subject to other details being worked out subsequent to the judgment. The plaintiff never received a copy of either the stipulation or the order prepared by Rioles on 12/7/2001. **EXHIBIT 15** The stipulation was the subject of a hearing before Judge Bedrosian on 5/11/2004, Judge Bedrosian acknowledged the stipulation was not in the file, the defendants attorney had it. Additionally Judge Bedrosian acknowledged on the record that the order entered on 12/7/2001 contained different language than the stipulation. The court reporter for Judge Bedrosian has supplied the plaintiff with a letter confirming that there was no record made in the Bergquist matter on December 6th 2001, **EXHIBIT 16** , proving that there could have not been any oral stipulation in court which would have altered the hastily and incompetently written stipulation Rioles prepared on 12/6/2001.

The plaintiff moved to vacate the stipulation of 12/6/2001 and was heard on 4/8/2001, judge Bedrosian stated that she would not hear the plaintiff's motions because they did not contain prayers and "did not comport with the Rules". The plaintiff, despite bringing many witnesses, was not allowed due process to be heard. The defendants attorney filed an order which stated the plaintiff's motion to vacate the final judgment was denied. The plaintiff timely objected to this order and filed a motion to vacate the final judgment with the proper prayers. The plaintiff's objection and timely motion under Rule 60b have never been heard by Family Court, along with two dozen other motions filed by the plaintiff.

As to the final decree, the only mention of the children was that the restraining order on unrelated parties from being in the presence of the children was vacated. As John Cesario was not a party to the Family Court action the plaintiff is unaware of what restraining order is in effect on John Cesario. The plaintiff is in no way restrained from any activity by either the stipulation or final decree. On 8/31/2003 Judge Hurst of Superior Court told the defendant that the final decree does not state that the plaintiff is

restrained and enjoined from having John Cesario in the presence of the children. The plaintiff has been repeatedly told by attorneys and the defendant that the stipulation restrained plaintiff from having John Cesario in the presence of the children. The defendants testimony in a hearing before Judge Voccolla indicates that he thought the stipulation to mean that the plaintiff herself was to not have John Cesario in her presence, as that was the only restraining order in effect pertaining to John Cesario on 12/6/2001. That restraining order only prevented Cesario from interfering in the divorce. Despite clear evidence that Cesario was in the presence of the children, Judge Mutter, did not find the plaintiff in contempt of violating a family court restraining order. Mutter acknowledged that there was not a restraining order in family courtas he stated why would Judge Bedrosian need to place an order when there was one in Superior Court. Highlighting the incompetence of Judge Mutter, one only need look at a 2 hearings previous in 2003 when he instructed the plaintiff to marry Cesario.

The plaintiff does have an existing appeal as well as a Rule 60b motion to vacate pending which have not been heard. However, the exigent circumstances in these cases and violations of constitutionally protected rights remove the bar of abstention.

They are detailed in the plaintiff's affidavit.

The plaintiff hired attorney Lembo and filed several motions in Family Court after she married Cesario. Motions filed included child support, fraud by the defendant in concealing money from the property settlement, a motion for a home study and a motion to vacate the purported restraining order, if indeed there was one. The defendant filed one motion to adjudge the plaintiff in contempt for having Cesario in the presence of the children, the defendant prayed for the plaintiff to be incarcerated and for a placement change. That motion was not granted. The children were interviewed on 1/13/2004 on the defendants motion to adjudge the plaintiff in contempt. The plaintiff filed an untimely motion for a change of placement on 1/30/2004. On 2/3/2004 the trial began **(EXHIBIT 17 trial** transcript, 18 order of 3/24/2004) and the defendant rested his case on the childrens in camera testimony of 1/13/2004. The only motion the children could have testified to was the contempt motion filed by the defendant. The RISC opinion was issued on 2/9/2004. Without notice to the plaintiff, or without the opportunity to be heard, Mutter restrained the plaintiff from being in the presence of the children until the

Superior Court and Supreme Court matters were taken care of and then found the plaintiff unfit, transferring placement of the children to defendant. Mutters sole reason for punishing the plaintiff was that she knew there was a restraining order in Superior Court. Every time either the plaintiff or Lembo attempted to explain the restraining order in Superior Court was void, the transcript reflects Mutter cutting their answers off. Mutter did not allow the defendant to be heard in opposition to such an extreme punishment. Mutter stated in open court on 8/25/2004 that he entered the order sui juris, of his own will, not the rule of law, in response to a motion to reconsider Mutter's handwritten notes in the RISC state sui juris in response to the plaintiff's charge that she was denied due process. There was no pending motion for a change of placement. Mutter is a judge of limited jurisdiction and the plaintiff Carol was not a party to the Superior Court matter. On 5/1/2004 Judge Procaccini of the Superior Court held that the order in Superior Court was not credible after thoroughly reviewing transcripts and the record. The order signed by Fortunato was fraudulent as it represented a restraining issued on 2/28/2002. The plaintiff John's first amendment rights being violated were not entertained by the RISC. On 10/22/2001 Fortunato denied placing a restraining order, and stated the only order the parties were bound by was the 12/5/2000 order, which did not include the children as parties. Assuming argumendo, that an order did enter as a reduction of sentence, the sentence was vacated as it violated the plaintiff john's rights to notice so the restraining order would be vacated. Exhibit 16 mutter telling plaintiff to get married

The trial did not indicate that children were harmed by the plaintiff John. Every police encounter precipitated by the defendant resulted in the children staying at their home with the plaintiff by their own choice, including in July of 2004. The children testified in Superior Court and Laura stated that she was afraid of the plaintiff John because there was a restraining order. Sarah did not indicate that she was afraid of John, although the DCYF report made in 2001 Sarah did state she was afraid of John, **"but did not know why".** The DCYF report further states that the defendant was instilling murder threats to the children and coaching them what to tell a judge. Judge Voccolla found by a finding of fact that the defendant was obsessed with the plaintiff's and displays his anger both verbally and non verbally to the plaintiff in the presence of the children. The plaintiff was assaulted by the defendant, and he was arrested and charged. Defendant repeatedly calls

the police against the plaintiff's, nearly 2 dozen times, with no action take. The police have arrested the defendant and have had to physically retrieve the children from him. The court appointed psychologist found the defendant "**delusional**" but discounted it because of purported documentation, which was inaccurate.

The plaintiff was denied her right to call witnesses and present evidence.

The plaintiff Carol states the final decree is void and the orders of Judge Mutter are void and moves this court to vacate them, as they are not orders anyway because of their procedural defects.

The plaintiff John seeks the vacation of the fraudulent holding of civil contempt on 8/31/2001, the affirmation of two restraining orders from his contacting the minor children, the contempt holding of 5/31/2001, 12/10/2001 and 2/28/2002, as well as the holding which the plaintiff was ordered to pay the GAL 500.00.

Abstention of federal court intervention when a litigant is pursuing a federal right is highly discouraged by the United States Supreme Court. The plaintiff John has no pending matters before the state courts which would be grounds for abstention. The exigent circumstances in the plaintiff's case FEDERAL INTERVENTION. As the orders of Judge Mutter are void ab initio, the there is no intervention anyway. The plaintiff Carol is also pursuing an appeal from the bench decision of 12/18/2002 in which she seeks sole custody, where witness after witness testified against the defendant. While the bench decision indicated that the defendant is obsessed with the plaintiff's, and destructively conveys that anger the plaintiff both verbally and non verbally in the presence of the minor children. The court also found the defendant to be overly protective. The defendant himself admitted that he illegally seat belted 2 children in one seat while he was pursuing his affair, that he did not provide more than one bed for three girls for nearly one year, until it was exposed in court. The defendant also blatantly contradicted himself repeatedly regarding his bald assertions regarding plaintiff john tht his testimony is not credible.

Other exhibits include police reports, orders not being signed and continuances never allowed to be heard.

Executed this 2 day of July, 2005 under penalty of

perjury pursuant 28 U.S.C. § 1746.

John Cesario

Carol Cesario Plaintiff's

64 Verdant Drive, Cranston R.I 02920

401-615 -0549