**UNITED STATES DISTRICT COURT STATE OF RHODE ISLAND**

**John Cesario**
**Carol Cesario**

**Plaintiff's**

**Vs** **CASE # 05-90-S**

**Stephen Bergquist**

**Defendant**

Plaintiff John Cesario hereby notices claims for relief under penalty of perjury pursuant to 28 U.S.C. § 1746 with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure as follows:

**SWORN AFFIDAVIT OF PLAINTIFF JOHN CESARIO IN SUPPORT OF HIS CLAIMS IN THE ABOVE TITTLED MATTER**

1. On December 5th 2000 I appeared in Providence Superior Court and consented to a preliminary mutual injunction with Stephen Bergquist, the defendant, (herein called the defendant) in this action. Judge Williams denied restraining me from the minor children of the defendant and my wife. Previously the defendant, on November 28th 2000 obtained injunctive relief for himself and his minor children in the form of a TRO. The minor children are now my stepchildren. **EXHIBIT 6** transcript of 12/5/2000

2. On 5/31/2001 I appeared in Providence Superior Court based on being served a witness subpoena. I was adjudged in contempt for calling the defendant after being told that DCYF initiated an investigation based on my wife's oldest child, 9 at the time. The DCYF investigation and report observed that the defendant was instilling threats of murder to the minor child. The restraining order of 12/5/2000 was not a no contact order. The back of the restraining order stated take notice of the stalking laws. I appeared before Judge Silverstien on 5/31/2001. Judge Silverstien did not know what we were in court for that day. The transcript of 5/31/2001 is attached to the complaint. The defendant did file a motion to adjudge me in contempt, nor did he give me any notice to the charges. Judge Silverstien denied me my right to call witnesses and

question the defendant. Judge Silverstien has never signed an order which decreed me in contempt, despite orders being presented to him.

3. My appearance was not voluntary, and I did not waive my rights to notice. I was found in contempt. Therefore the order is void. The order was affirmed by the R.I Supreme Court on 2/9/2001. The R.I. Supreme Court never reached the merits of my claims. It is impossible to present a competent defense without notice. In addition to the case law cited in the complaint and memorandums, I cite Peralta v. Heights Medical Center, 485 U.S. 80.

4. On 8/20/2001 I appeared in Superior Court before Judge Fortunato. I was summoned to Court on that day because the defendant served me with a subpoena ducus tacem. A criminal contempt trial initiated. See Judge Martin's report and recommendation and the Supreme Court opinion of 2/9/2001 which stated I could not avoid the sanction. I was not offered the opportunity to purge the contempt.

5. I was sentenced in violation of the Due Process Clauses of the Rhode Island and United States Constitution. The Rhode Islands Constitution purportedly offers more protections of rights than the United States Constitution.

6. The defendant did not file a motion to adjudge me in contempt, nor did he ever file one with the court. It remains a mystery how Judge Fortunato received the motion to adjudge me in contempt which was not filed with the court clerk, did not have a stamp of the court affixed to it, nor was any certification of notice to me on the motion. The defendant has testified and presented pleadings that he had arrangements and agreements with Judge Fortunato, although none could be found in transcripts. Further, on 8/31/2001 the defendant appeared in court but did not file any objection to the only motion on the calendar, which was my motion to reduce sentence.

7. I was denied my Sixth Amendment rights, Fifth Amendment rights, Fourteenth Amendment rights. Had I been presented with proper notice I could have argued First Amendment rights to contact any public official or officer of the court. Third party correspondence is routinely sent to judges, the law mandates that any such correspondence be excluded from interfering with a case. As I was denied these basic rights of Due Process, the entire hearing of 8/20/2001 is void ab initio.

8. The R.I Supreme Court refused to entertain my claims that the hearing was void. A void judgment can be collaterally attacked at any time.

9. The Rhode Island Supreme Court's opinion of 2/9/2004 stated that the hearing justice designated the hearing civil on 8/20/2001, without the benefit of the transcript. This statement is an outright fraud. Further, the defendant transmitted the
The Report and Recommendation of Judge Martin, which clearly rebuffed the R.I. Attorney Generals assertion that the hearing was civil. The Report of Judge Martin, clearly stated the hearing was criminal contempt and not only predicated that finding on federal law, but on the Rhode Island Supreme Court's case law.

10. There was no talk of a restraining order being placed upon me from contacting the children. The defendant did say that both Judge Williams and Judge Silverstien denied placing a restraining on me regarding the children based on the same inaccurate information the defendant told Fortunato; wherefore the long established doctrine of res judicata would have applied.

11. I was not restrained and enjoined from contacting the children at the hearing on 8/20/2001. My only punishment or sanction was a 30 day criminal sentence. I was sentenced via a criminal information sheet.

12. I hired attorney Mike DiChiro from the ACI. He informed me, after meeting with Judge Fortunato, that Fortunato would hear a motion to reduce my sentence after I served 10 days provided that I write apology letters to judges Bedrosian and Jeremiah, along with attorneys Rapoza and Watson. I was not required to write an apology letter to the defendant.

13. On 8/31/2001 I appeared on a motion to reduce sentence. The motion was granted. Fortunato reduced my sentence to time served but as a condition told me he was reemphasizing that I was not to contact the children.

14. That order, or non order, was contrary to the Due process clause. I had no means of escaping the order, or non order, as I needed to be released from my criminal sentence to attend to my personal and business affairs. Judge Fortunato never signed the order adjudging me in civil contempt or the purported restraining order of 8/31/2001. Even after the R.I. Supreme Court defied all logic and law and affirmed both a civil contempt finding and the restraining order, Fortunato refused to sign orders to that effect. I have 4 orders prepared, presented and time stamped by the clerk that Fortunato not only has refused to sign, but have disappeared from the Court file.

15. The Rhode Island Supreme Court found no error in Fortunato's "marksmanship" in issuing a restraining order in which he would not sign even after the Supreme Court of R.I affirmed the order without the benefit of the transcript.

16. The R.I. Supreme Court's opinion of 2/9/2004 reversed the criminal contempt of 8/20/2001. They did so on the grounds that I was not provided notice per the Rules of Criminal Procedure, not civil procedure. Wherein the Supreme Court held that the hearing of 8/20/2001 was criminal. Yet, when addressing the hearing of 8/31/2001 the Supreme Court fraudulently stated the hearing was civil. Even more incredible is that the Supreme Court stated that I had notice as to the possibility of a restraining order entering on me because the defendant asked for such relief in a prayer of his uncertified and unfilled motion to adjudge me in contempt.

17. The Rhode Island Supreme Court stated in its opinion that I may have waived my right to notice, which is absurd as I was held in criminal contempt on 8/20/2001. I never received the motion to adjudge me in contempt until after my release from the illegal

incarceration of 8/20/2001. I obtained the motion to adjudge me in contempt by checking the court file after I was released from the ACI. The motion was placed in the file, apparently by Fortunato, as it remained not certified, not docketed and not stamped as received by the Superior Court clerk.

18. I have submitted approximately 15 cases from the United States Supreme Court and various Federal Appeals courts conclusively proving the hearing of 8/20/2001 to be void ab initio. The Rhode Supreme Court's holding in both LaMarche v. LaMarche holdings also validate that the hearing was void ab initio.

19. On 10/22/2001 I appeared in Superior Court based on my motions to vacate the restraining order on the minors and the mutual restraining order. There was never a hearing on the merits in either restraining order.

20. The defendant hired attorney Bristow who filed an untimely motion to adjudge me in contempt for being at a health club at the same time as my wife and the children. Bristow's motion was not only procedurally defective as per the ten day rule, he failed to enter an appearance and did not file an omnibus form as required which would have put his motion properly on the court calendar.

21. I subpoenaed the Guardian Ad Litem, Rapoza (GAL), and DCYF and therapists of the minor children. The GAL obtained a Family Court protective order for her and sealing her incompetent report which she subsequently illegally switched. She appeared in Court on 10/22/2001 with attorney Lois Iannone and asked the Court to quash her subpoena. I never received any such motion. The GAL was a legitimate witness and was paid the witness fee as required by law.

22. Fortunato granted the GAL's motion to quash the subpoena and ordered nme to pay her $500.00. The GAL is such a despicable professional and person that she then double billed my wife for the same time. Fortunato allowed the GAL to testify when he relaxed the rules of evidence, the GAL intentionally violated the protective order of family court. The GAL was not sworn in nor was I allowed to cross examine her. She stated that the children were in fear of me but didn't know why. I had no relationship with the children at that time. The DCYF report that the GAL ignored clearly stated the defendant was coaching the children and instilling fears of murder in the children regarding me. Further, my wife had placed three restraining orders on the defendant, one after he was arrested for assault and another after he child snatched the children. The Cranston Police had to physically retrieve the children.

23. Fortunato specifically stated to me on 10/22/2001 that he did not place a restraining order on me. He specifically stated that the only orders I was bound by was Judge Williams orders of 11/28/2000 which was superseded by the mutual restraining order of 12/5/2000 which did not include the children. I informed him that I had the transcript of 12/5/2000 in which Judge Williams denied the defendants request to have me restrained from the children. Fortunato stated equity speaks through decrees.

24. I did not believe that there was a restraining order on me regarding the children as of 10/22/2001 because Equity speaks through decrees, and Fortunato denied placing the order on me. Further, on 9/17/2001 Judge Bedrosian vacated the restraining order on my wife from having me in the presence of the children during the nominal hearing. She did this despite the defendant telling her there was a restraining order in Superior Court.

25. Prior to the hearing of 10/22/2001 the GAL began intimidating my wife by threatening her that if she appeared in court on my behalf she would file an emergency motion to have her children taken away in Family Court. This witness tampering was passed repeatedly to my wife through her own attorney, Brenda Rioles. I even tape recorded Rioles in a phone conversation restating the threat several times to me. The GAL admitted to my wife in the presence of witnesses that she did pass the threat to Rioles in Family Court on December 6th 2001. The GAL stated that she did not follow through on the threat however. The GAL was apparently upset that I subpoenaed her report, DCYF and witnesses to prove what an incompetent GAL she was. At some point during the an intermission on 10/22/2001 the GAL and Bristow told DCYF investigator MaryAnne Campbell to leave, as her testimony was not needed. My wife did not show up at the hearing despite being subpoenaed because of her fear of the GAL's threat. She only appeared after her sister called her during the intermission because the GAL was lying about the events surrounding the children.

26. The R.I District Court issued an opinion which stated the GAL was allowed judicial immunity as she was dragged into the Superior Court by me and apparently threatening a witness with such an obscene threat was a judicially appointed function. The claim against the GAL was dismissed with prejudice on a technicality without reaching the merits, That dismissal was affirmed by the First Circuit for different reasons than the Report and Recommendation, but the First Circuit did not identify the reasoning for the dismissal with prejudice.

27. I appeared in Superior Court on 10/25/2001 with a motion for a stay on mailing the GAL a check and a motion to report witness coercion. Fortunato stated to me "this is going to come back and haunt me". Fortunato, being a judicial officer had a duty to either conduct a hearing or report the witness tampering to the Disciplinary Committee. (**EXHIBIT 7** motions for stay and to report witness coercion)

28. On or about 10/28/ 2001 I mailed attorney Iannone the motion to report witness coercion, the motion for a stay, a check for $500.00 made out to the Gal and a handwritten note which stated; Here is the check per order of Judge Fortunato, witness tampering is against the law, you will pay dearly next year.

29. I did not receive any notice as to the possible entry of an order to pay fees to the GAL nor was I given an opportunity to oppose the order. The order was arbitrary by Fortunato and in violation of my rights to due process.

30. The GAL was not a party to the mutual restraining order of 12/5/2000. Fortumnato specifically told me on 10/22/2001 that the only order I was bound by was the order of 12/5/2000.

31. The defendant, through attorney Bristow, filed a motion to adjudge me in contempt based on an admonishment I received on 10/22/2001. An admonishment is not a court order. Further, the only matters before the Court on 10/22/2001 that were adverse to me was a motion to quash subpoena's and an improper contempt motion to adjudge me in contempt for being at a health club which was denied.

32. On 12/10/2001 I appeared before Judge Fortunato with attorney Kevin McKenna. Mckenna had filed an objection citing that the GAL was not a party, that the defendant did not have standing to complain for a third party and that I had a First Amendment right to contact any official.

33. The witness tampering occurred in my trial in Superior Court. There was absolutely no hearings in which the GAL appeared in Family Court subsequent to September 17th 2001.

34. Mckenna also filed a motion to vacate the illegal criminal hearing of 8/20/2001 which was flatly denied by Fortunato without McKenna being allowed to be heard.

35. Even though the GAL was not a party, and not the attorney of the defendant, I was found guilty of contempt and sentenced to the ACI. I was allowed to purge the contempt by depositing $5000.00 in the court registry and swearing an oath not to interfere in pending divorce proceedings. The contempt violated my due process rights as the GAL was not a party, an admonishment which did not occur is not a court order and the defendant lacked standing to complain on behalf of a third party.

36. There was no admonishment not to contact the GAL in the transcript of 10/22/2001 as the motion to adjudge me in contempt fraudulently states. In a prior hearing Judge Silverstein stated that unless the defendants had a restraining order against me the defendant was not able to bring a complaint on her behalf. Asserting the Equal protection Under the Law clause Rule 65 requires that a restraining order be so specific as to give very definitive notice of what the parties are to refrain from doing. The R.I. Holding of in the State v Ecert

37. Despite attorneys Rapoza, Ianone and and Bristow being present, no written order was entered forbidding me from contacting the GAL, and in fact I was ordered to send her a check and the motion for a stay and witness coercion.

38. The R.I Supreme Court declined to entertain my Constitutional claims, including the First Amendment. No restraining order can violate Constitutionally protected rights. The contempt finding is void as it does not comport with the Due Process Clause or Equal Protection under the law. Further, the GAL was not a party nor did the defendant have a right to complain on her behalf. The contempt conviction is void based on fraud in the

motion to adjudge me in contempt, the GAL was not a party and the Equal Protection Clause which guarantees that I be notified specifically what I am refrained from. The notion that my contacting the GAL with legal motions and claims because of her witness tampering in my Superior Court case was a willful violation of a mutual restraining order between the defendant and I is such an absurd stretch it is laughable.

39. On Febuary 28th 2002 I appeared in Providence Superior Court Judge Fortunato to answer another contempt charge. The defendant had filed a motion and misled the Court as to the date of a Disciplinary Complaint which was sent to attorney Rioles regarding her role in witness tampering in my Superior Court case.

40. First, the order is void based on the grounds being the order of 12/10/2001 in which I swore an oath after being adjudged in contempt for violating the mutual restraining order of 12/5/2000 because I sent correspondence to a GAL who was not a party to that restraining order relating to her witness tampering in my Superior Court case. I made the oath under duress being in complete disbelief that I could be jailed for contacting a quasi public official who was not a party and I was not restrained from contacting for witness tampering in my case,

41. Notwithstanding paragraph 40, the RI. Supreme Court failed to answer my First Amendment claims that were brought up both at trial and on appeal. I have the right to contact any public official.

42. The notion that violated a sworn oath not to interfere with pending proceedings in Family Court by writing a Disciplinary complaint about an attorney who didn't represent the defendant and was no longer involved in a divorce in which the final decree entered is absurd. The Equal Protection Clause affords me the protection of Rule 65 which states that a contempt of court can only be established if a valid court order is violated by clear and convincing evidence.

43. Notwithstanding that the RI Supreme Court failed to address my First Amendment claim, and that no evidence of any pending Family Court proceeding was interfered with, it is absurd that I could be found in contempt in based on pure conjecture that the appeal period was alive and vibrant. What does that mean, because the appeal period is alive and vibrant the fact that I wrote a Disciplinary Complaint against an attorney who was no longer involved in a divorce that was final, may someday in the future interfere with a pending Family Court hearing. It is clear from Riole's testimony that she did not consider my wife her client as she was sending letters to Attorney Lynch, her daughter who she was friends with and other people, yet she failed to send the Disciplinary Complaint to my wife, as she was "out of the loop". Is it possible to held in contempt for writing a Disciplinary complaint against a corrupt attorney, who is not a party to the order, not involved in the divorce, when there were no pending proceedings that were interfered with, based on the possibility that someday in the future that complaint may interfere with a future proceeding.

44. As the R.I Supreme Court did not address the Constitutional Claims they are ripe to be decided by this court, as First Amendment rights are issues this Court routinely hears.

45. I believe the order void based on the contempt order of 12/10/2001 being void, however in the alternative I will argue the First Amendment and that no valid court order was violated since the RI Supreme Court choose not to entertain those claims.

46. The only reference to the children during the 2/28/2002 hearing was when the defendant brought up the restraining order. Fortunato chose his words carefully and stated that he admonished me not to go near the children.

47. The defendant did not pray for a restraining order against me in his motion to adjudge me in contempt, in fact his motion was all over the place and it was hard to understand what the charges against me were.

48. On March 1st 2002 the defendant prepared an order which fraudulently stated that on 2/28/ 2002 Judge Fortunato ordered me restrained and enjoined from contacting the children. This order was a blatant fraud as no such order entered.

49. When the defendant presented the fraudulent order on 3/1/2002. My attorney, Kevin McKenna, objected to the order and wanted to be heard on the matter. Fortunato told him that long before McKenna's appearance a restraining order issued against me regarding the children. McKenna told Fortunato that he thoroughly went through the court file and did not see any restraining order. McKenna wanted a hearing on the merits and objected as to lack of evidence.

50. Fortunato blatantly misrepresented that there was a restraining order against me in place. The last time the restraining order regarding the children was brought up was on 10/22/2001 when Fortunato stated that he did not place a restraining order on me, that I was only bound by the 12/5/2000 order, and that equity speaks through decrees.

51. On 8/21/2002 I appeared before Judge Vogel after Fortunato recused himself. Fortunato's stenographer added language to a previous transcript which stated that I was restrained and enjoined from filing any motions against the defendant in any court. I accused Fortunato of repeatedly violating my due process rights and on 7/31/2002 Fortunato and I had a very hearted exchange. I had filed 4 motions to vacate orders, or purported orders, and I filed an order replicating word for word the language the stenographer added to the transcript which purportedly restrained my pro se appearances. Fortunato refused to sign the order.

52. On July 10th 2002, the defendant, through attorney Bristow, filed a motion to adjudge me in contempt without filing an omnibus. The certification was 7/10/2002 with a hearing date of 7/11/2002.

53. My motions were properly before the court and served; yet on 8/21/2002 Judge Vogel would not hear them. Instead she heard the contempt motion for filing motions

pro se which was improperly before the court and not properly noticed. Judge Vogel found me in contempt, with possible mitigating circumstances and told me to return at 2pm on 8/22/2002 for sentencing.

54. Judge Vogel reversed herself, to her credit, and vacated the contempt holding. She then sua sponte found me guilty of violating rule 11. She sanctioned me nearly $2000.00. I was not provided any notice, any specific findings that constituted a Rule 11 violation, nor was I given the opportunity to oppose the order.

55. Judge Vogel instructed Bristow to prepare two orders, one finding me in violation of Rule 11 and authorizing my money to be released from the registry of the court to the defendant, and an order restricting my pro se appearances. Judge Vogel instructed me that I could not file anything in Superior Court, which I assumed was an appeal of her order. She instructed me that I could only file a Writ Of Certiorari to the R.I Supreme Court, which was a gross violation of my rights. I filed the Writ, and the Supreme Court declined to entertain it.

56. As the Supreme Court declined to entertain such a gross violation of my rights to due process, the issue is ripe in this court. The order is Void ab initio as both federal and state case law require due process requirements to be complied with prior to making a finding. It is curious that despite attorneys for the defendant entering nearly a half a dozen blatantly fraudulent orders and filing nearly 20 bogus contempt motions that were never prosecuted that they escaped any sanctions.

57. I timely appealed the March 1st 2002 order which was amended on April 15th 2002, along with filing a Writ of Certiorari regarding the contempt conviction of 8/20/2001 and 12/10/2001, along with the purported restraining orders on the minors and the $500.00 witness fee to the GAL.

58. Except for vacating the criminal sanction of 8/20/2001, the R.I. Supreme Court affirmed all other orders on 2/9/2004

59. Subsequent to the hearing of 8/22/2002 before Judge Vogel, I filed numerous motions to vacate orders and have my money released from the court.

60. First Judge McGuirl refused to hear my motions, but did so after I filed a motion for reconsideration. The defendant then filed a motion to adjudge me in contempt for numerous grounds, including being with the children and filing pro se motions. The motion was so ridiculous that Judge McGuirl denied the defendants contempt motion without me even having a chance to put on a defense. The defendant is so delusional he wanted me in contempt for giving my stepchildren money in Easter eggs, for my wife driving them in my car and other absurd reasons. Judge McGuirl addressed the defendant and asked him if I was the children's stepfather, the delusional defendant would not admit to that until Judge McGuirl made him.

61. Judge McGuirl was reassigned, and my contempt motion was assigned to Judge Hurst. On 8/30/2003 I appeared before Judge Hurst on my motion to adjudge the defendant in contempt and a motion to adjudge the defendants attorney John Lynch sr in criminal contempt for filing fraudulent orders and abuse of process. Judge Hurst basically spent the afternoon telling Lynch's daughter that she is aware of how the firm of Lynch and Friel operate, and suggesting to her that they have a meeting and read the rules.

62. Judge Hurts was assigned to Newport and I proceeded on my motions before Judge Procaccini. The first motion neither the defendant or Lynch appeared. On 2/2/2004 I appeared before Judge Procaccini on my contempt motion against Lynch and the defendant. Lynch did not show despite being lawfully subpoenaed. Justin Shay entered a limited appearance for Lynch. Judge Procaccini stated he would not hear my motions and Lynch was not a party to the restraining order.

63. On 2/5/2004 I filed a motion for reconsideration detailing that not only is Lynch a party per rule 65, but I presented several case laws supporting that an attorney is bound by a restraining order. I also presented a memoranda and case law on why I could not be restrained from pro se appearances, which included due process case law as well as I was a defendant with judgments against me.

64. Judge Procaccini stated he would give me a full hearing and would not sign attorney Shay's prepared order. Judge Procaccini was true to his word. A hearing date of 4/7/2004 was given to me.

65. On 2/9/2004 the R.I. Supreme Court opinion was issued and in part stated that I was restrained and enjoined from contacting my wife's children.

67. I married my wife on 5/5/2003. Family Court judge Mutter twice told my wife in open court to get married and he would rescind the purported restraining order in Family Court. Getting married is not a light event, and doing so without the children being able to participate was obscene on its face.

68. I moved into the marital home in September of 2003 after my wife's attorney Lembo informed my wife and I that the purported restraining order in Family Court was a fraud. The order was vacated on 9/17/2001 however attorney Lynch entered a fraudulent order which didn't state that fact or Judge Bedrosian's order that child support was to remain in full force and effect.

69. The defendant moved to adjudge me in contempt for living with the children as soon as the Supreme Court order was issued on 2/9/2004. He was given a date of 4/1/2004 by Judge Proccacini's clerk.

70. I filed a timely motion for a rehearing and transmitted the missing transcripts.

71. My motion was denied without cause given, however the order did not state that Justice Flaherty was recused nor did the order state the Writ of Certiorari case number.

72. I filed a motion to clarify that order and to correct the court's mistakes. I filed a judiciary complaint against Justice Flaherty.

73. On 4/1/2004 my contempt trial began, Judge Procaccini stated that the other motions I had would be held as to hear the contempt and cross contempt motions.
I subpoenaed DCYF investigator and that motion was quashed.

74. Judge Procaccini was extremely hostile towards me and repeatedly cut me off. Judge Prefacing and I had some major differences during the three day hearing as far as process and evidence, however, none of that is germane to the issues before this court.

75. I have been unable to obtain the entire transcript of the hearing, however, a temporary court reporter was on duty on 4/1/2004 and that transcript is my **Exhibit # 8.**

76. The children were completely led by the defendant in their testimony. The children blatantly lied during their testimony. The defendant was telling the children that their mother was going to jail, got the children to chant that I was going to jail and has repeatedly instilled fears in the children dating back to 2000 that I am going to harm them. In fact, in the original complete in my case with the defendant, the defendant stated that I threatened to harm his children. The defendant filed a police report to that effect stating that there were hidden threats in a tape recording, however he would not allow the police or the court to hear those hidden threats.

77. From the time I moved into the marital home the children were wary of me, and the defendant would call the home 25-50 times a day. The defendant would tell the children to lock themselves in their room to be safe. The defendant made numerous calls to the Cranston Police. The children never once called the defendant to come and take them out of the marital house, and as unrebutted testimony before Judge Procaccini unfolded it became clear that the children would lie to the defendant and state that I was not home when I was. During police encounters the children never once asked to leave the home. The children not only quickly became accustomed to me, they actually played with me and called me on the phone wanting to know when I was coming home so they could play with me. That is incredible considering the bullying tactics of the defendant and the incompetence of certain R.I. state judges.

78. As earlier stated, the defendant had a history of abusive behavior. On 12/18/2002 Family Court judge Voccolla found the defendant to be obsessed with me, and destructively convey that anger both verbally and non verbally in the presence of the children. The oldest child, Laura, had stayed back a year from school after the defendant began his affair. On July 18yj 2001 the defendant stipulated in open court to Judge Bedrosian's finding of fact that his girlfriend was the reason for the breakup of the marriage.

92. Judge Bedrosian is aware that the final decree is a fraud, and it appears that the only way for my wife to obtain child support and make a record of the defendants abusive behavior is to void out the fraudulent decree.

93. Judges Goldberg and Suttell were clearly aware that affirming void orders was not only illegal, but makes them knowing trespassers of the Supreme Law of the land. Goldberg and Suttell knew that void orders were void regardless of their failing to "entertain" them.

94. Not only did Goldberg and Suttell's affirming a void order which they failed to entertain or remand back to the Superior Court for further hearings to determine whether or not the orders were void for Due Process, fraud and the fact that neither the children, the GAL or Rioles were parties to the restraining order; Goldberg and Suttell reasonably were aware of the damage that the defendant could continue to cause the children and my wife because of their unlawful determinations.

95. Goldberg and Suttell clearly have committed intentional fraud and fraud of the court, as we have seen recently RI judges can virtually get away with murder before they are held accountable. The Supreme Court can rework the RI Constitution and determine merits of a case without discovery or the other side briefing, and multiple ethics charges and perhaps a couple hundred bad checks later a judge will finally be called to task. Goldberg and Suttell clearly should have recused themselves and if they don't an ethics complaint will be lodged, as well as judicial complaints.

96. Small children have been emotionally abused for five years, as has my wife, yet no action has been taken to prevent this abuse. My wife suffered a second miscarriage recently after a violent and threatening outburst at her in the presence of the children which left her shaking. Goldberg, Suttell, Mutter and Fortunato should be accomplices to murder by federal statutes, at the least they have aided and abetted in child abuse.

97. I am not attempting to circumvent any other lawful means of appeal, as the Supreme Court opinion states, the Supreme Court decided not to entertain my Constitutional claims. Further, even after receiving the transcripts they opined that

they were not changing any orders. Humility obviously is foreign to the RI Supreme Court. As void judgments can be attacked at any time, and that court had a duty to expunge the void judgments of the R.I Superior Court. It is obscene that my wife lost placement of her children because Mutter, on the grounds that she was assisting me in violating Superior Court order found my wife unfit. It is extremely obscene that even after the R.I. Supreme Court affirmed the restraining order three times a Superior Court judge, after thoroughly reviewing the file and orders of the Superior and Supreme Court, found the orders not is extremely obscene that even after the R.I. Supreme Court affirmed the restraining order three times a Superior Court judge, after thoroughly reviewing the file and orders of the Superior and Supreme Court, found the orders not

79. In addition to his abusive behavior to my wife and children, the defendant had a history of this behavior. Unrebutted testimony in Superior Court regarding the defendants obsessions included his alienating his children and wife from her brother and the childrens husband because he had a friendship with a high school boyfriend of my wife's. The defendant had a picture burning party of this person. We have abusive tapes made in the presence of the children which the defendant stated that I was going to come and murder him and Laura, that the children will never be with me, that I hurt kids, that my wife chose me over her children, that the children hate their mother and on and on.

80. On May 31st 2005 before Judge Procaccini on a restraining order issued on the defendant for threatening my wife's family, Judge Procaccini told the defendant that this is the worse case he ever saw, and that the defendant was the most immature, abusive, bully he had saw. Judge Procaccini told the defendant that his behavior would come back at him in the future and he would pay the price with his children.

81. The defendant childhood perhaps drives his delusions, as his father had an affair with a neighbor. Once that affair occurred, the parents, while remaining married lived completely separate lives. They even split their refrigerator in half and attended separate churches. The defendant slept in his mommy's bed with his mommy through high school and apparently was beat up in school frequently by classmates including Vinnie Pazienza. Now he has become the bully, with regard to women and small children. During the time the GAL was involved in the case she stated that the defendant was "fucking nuts" in front of witnesses in the court room hallways several times, but the GAL didn't bring that up in her report, nor did she bring up the DCYF report or interview therapists, family or school officials prior to her report. To her credit, when the GAL switched her first report she did add that the defendant was living at the neighbors in plain view of the children while the divorce was being litigated. The defendant states that he is concerned of the welfare of his children but testified that he illegally seatbelted 2 children in one seat when with the other woman who he stated he wanted to marry and her children. He did not provide more than one bed for his three children for nearly a year, but as soon as it was disclosed in court he immediately bought beds. He has been jailed for failure to pay child support and has not paid a dime of child support since January 2002 despite a valid court order.
**EXHIBIT 8 Judge Voccolla's finding of fact regarding the defendant on 12/18/2002**

82. Despite the R.I. Supreme Court opinion of 2/9/2004, and the court's twice affirming its decision that the restraining order was to remain in full force and effect, Judge Procaccini found the restraining orders not credible on May 1st 2004. A judge of a lower court is bound by Supreme Court law of a case, except when the Supreme Court commits fraud and such blatant Constitutional due process violations that would put a lower court judge in jeopardy of violating his oaths of office. Supreme Court Justices Goldberg and Suttell are disgraceful and despicable.

83. Judge Procaccini made a point of stating on May 1st 2004 that ***"after considering <u>the orders</u> and transcripts introduced into evidence remains thoroughly confused and unconvinced as to the reliability of these exhibits. The Court has taken the extra step of trying to correlate this material and remains uneasy about the accuracy of the documents, including orders drafted by the parties". Judge Procaccini considered the October 22nd 2001 transcript which Fortunato stated he did not place a restraining order on me Judge Williams did, and the 2/28/2002 transcript in which there was no restraining order issued. The defendant prepared a fraudulent order and then stated that he had an arrangement with Fortunato to add that order.*** Judge Procaccini also stated that the defendant threatened me right in the courtroom and in the full presence of the children. As the defendant is a complete coward that is the only way he could threaten me, while under the protection of a courtroom. The defendant is so obsessed and delusional he cannot write my wife's legal name and he tells the children that I am their mommy's boyfriend. **EXHIBIT 10 transcript of 5/1/2004**

84. Judge Procaccini listened to abusive tape recordings of the defendant, proving that the defendant lied. Judge Procaccini watched video tape of me playing with the children, of them jumping on me, of me giving the children piggy back rides. Judge Procaccini asked if we had copies of the audio and video tapes for Family Court, I stated I did. Judge Procaccini entered the tapes as full exhibits. Among the lies the children told was that they were afraid of me, that they didn't play with me or ride on my shoulders. Sarah also said she was afraid when she spent an overnight with me at a friends home in Watch Hill. She stated that she didn't video the home. Yet we have a video tape of her video taping nearly the entire home which is nearly 20,000 square feet. The first witness on 4/1/2004 was the owner of that estate.

85. As far as Family Court is concerned, on 3/24/2004 Judge Mutter restrained my wife from having me in the presence of the children for the third time and changed placement of the children based finding my wife unfit because she knew that their was a restraining order in Superior court and she was assisting me in violating that order. Not only was the purported restraining orders in Superior Court void based on due process violations and fraud, but I repeatedly filed motions to vacate those purported orders or modify them and the Superior Court never allowed me an opportunity to be heard on the merits.

86. The only valid motion the defendant had in Family Court was a motion to adjudge my wife in contempt for violating a purported restraining order in Family Court. The children did an in camera interview of the children on January 13th 2004 based on that motion. Purportedly the children stated that they were afraid of me, that I never harmed them. As testimony in the trial indicates, the children were under the care and spell of the defendant.

87. The defendant rested his case on the children's testimony. The defendant filed a last second motion to change placement that was a nullity as it did not comport with the 5 day rule. Further, the defendants attorney stated he was proceeding on his motion, not motions. As he rested on the children's testimony, and the only motion the children testified to was the contempt motion which was not granted.

88. Mutter repeatedly cut off both my wife and her attorney, Lembo. Mutter had sentenced Lembo twice to an illegal criminal contempt. Lembo sued Mutter and the State in District Court and Mutter should have recused himself as the District Court allowed the parties to dismiss the lawsuit without prejudice pending a determination by the R.I. Supreme Court.

89. Mutter is not a Superior Court judge, and my wife was not a party to Superior Court. My wife filed a motion for reconsideration that was heard on 8/25/2004 by Mutter. My wife attempted to introduce a police report from July of 2004 which the police stated the children were happy, and watching a movie with my wife and I. The defendant was waiting outside the house. The police left and the children stayed with us. Grounds for reconsideration was lack of notice as to a motion for a change of placement, Mutter should have recused himself and that Mutter had no jurisdiction over Superior Court matters and he did not allow my wife to call witnesses or present her case. In what is a complete outrage Mutter denied the motion without allowing my wife to be heard and he stated that due process was not needed as he enetered the order "sui juris". **EXHIBIT 11 Mutters outrageous comment that he entered the order sui juris.** I believe Mutter is just hanging around putting his 10 years in and is an extreme danger to the citizens of R.I.

90. As the Supreme Court didn't entertain fraud, as well as First, Fifth, Sixth and Fourteenth Amendment right violations the issues are ripe for this court. The children ceased to be a party to this litigation on 12/5/2004 . The GAL was not a party to the action between the defendant and I.

91. My wife has to vacate the final decree based on fraud, as she is entering a a document signed by the court reporter that there was no hearing before Judge Bedrosian on December 6th 2001. The stipulation of December 6th 2001 was never signed as an order. Attorney Rioles presented a fraudulent order on December 7th 2001 for Jeremiah to sign. Jeremiah apparently is the go to guy when you need a fraudulent order signed. Judge Bedrosian even stated on the record on 5/11/2004 that the stipulation contained different language than the order, which makes it fraud. Bedrosian, on 5/11/2004 stated that child support is to be added to the interlockatory decree, but then failed to enter the order. Bedrosian is obviously confused regarding Rule 60, as Rule 60 4,5,and 6 are excluded from the one year rule. Further, Bedrosian herself continued child support motion by Child services on 4/8/2002. Further, my wife has filed countless objections to orders which have not been heard and my wife filed a timely motion to vacate the final decree in March of 2002 which was never heard. Bedrosian does not hear legitimate motions by my wife to vacate the orders of Mutter for ridiculous reasons. Judge Bedrosian stated to my wife that she could not hear her motion to vacate because she couldn't find the docket sheet. She has a computer three feet from her and could have ordered the clerk to print out a docket sheet. Bedrosian continues to state the GAL did a good job despite the allegations against that completely incompetent, violated a protective order 3 times, altered her report and acted completely unprofessional.

credible. . It is doubly obscene that after both the R.I. District Court held the hearing of 8/20/2001 to be one of criminal contempt, and the R.I Supreme Court found that the sentence of 8/20/2001 to be vacated because it did not comport with due process notice of Rule 42, the Court would then concoct and fabricate a fraud that the hearing justice designated the hearing of 8/20/2001 civil. The sole purpose of that fraudulent finding was to affirm a restraining order to which the children were not even a party to, to attempt to punish me for speaking out and corrupt and incompetent judges.

98. The defendant has not accepted mail from me regarding this action since March of 2005. He has indicated in writing and on phone messages that he will not accept mail. The mail he has previously been sent is either been returned via the children ripped up or sent back from the post office.

Executed this 3 day of July, 2005 under penalty of

perjury pursuant 28 U.S.C. § 1746.

John Cesario Plaintiff

64 Verdant Drive, Cranston R.I 02920

401-615 -0549

Notary My commission expires 6/28/09