UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN CESARIO<br>CAROL CESARIO,<br>Plaintiffs, | |
| vs. | C.A. No. 05-090-S |
| STEPHEN BERGQUIST,<br>Defendant. | |

**MEMORANDUM AND ORDER**
**DISMISSING VERIFIED COMPLAINT**

## I. Introduction

The long-simmering feud involving Plaintiffs John Cesario ("Cesario") and Carol Cesario, formerly Carol Bergquist ("Carol") (collectively, "Plaintiffs"), and Defendant Stephen Bergquist ("Bergquist"), which has been litigated in at least three state courts and two federal courts over the past five years, once again has reared its ugly head.[1] Plaintiffs have now filed a rambling

[1] The Plaintiffs have filed at least two previous actions in this Court on the same subject matter as the instant action. In June 2002, Plaintiffs instituted an action in which they asserted claims similar to those made in the instant case in connection with many of the same state court proceedings at issue here. See John Cesario, et al. v. State of R. I., et al., C.A. 02-289-S ("Cesario I"). This action was ultimately dismissed pursuant to this Court's Order adopting a Report and Recommendation filed on November 22, 2002 by Magistrate Judge David Martin ("Report and Recommendation, as adopted"). See Cesario I, Memorandum and Order dated January 15, 2003. The dismissal was summarily affirmed by the Court of Appeals. See Cesario v. State of R. I., Dkt. No. 03-1263, (1st Cir. Oct. 10, 2003) ("Cesario II").

In July 2003, Cesario filed a second action, naming as defendants the State of Rhode Island, the Rhode Island Superior Court and two of its Justices, a Superior Court stenographer, and a divorce attorney representing Bergquist. See John Cesario v. State of R. I., et al., CA 03-316-S ("Cesario III"). In that

Verified Complaint[2] alleging due process and equal protection violations and/or fraud in various Rhode Island state court proceedings and rulings, and requesting that such proceedings and rulings be vacated and/or declared void by this Court.

Currently before the Court are: (1) Bergquist's Motion to Dismiss the instant action (Doc. No. 2) ("Motion to Dismiss"), and (2) Plaintiffs' Motion to Amend their Verified Complaint (Doc. No. 8) ("Motion to Amend").[3] For the reasons set forth below, the Motion to Dismiss is granted, the Motion to Amend is denied, and the instant action is dismissed with prejudice. In addition, in light of the Plaintiffs' continual filing of frivolous complaints and motions, Plaintiffs are prohibited from filing in this Court any new actions dealing with the issues raised in either the instant case or their previous actions in this Court (as described

---

action Cesario asserted similar Constitutional claims arising out of many of the same state court proceedings at issue in Cesario I and in the instant case. Cesario III was dismissed in March 2004 due to Cesario's failure to file a properly supported application to proceed *in forma pauperis* or alternatively, to pay the required filing fee. See id., Order dated March 16, 2004.

[2] Plaintiffs' opening pleading is untitled but is signed on the final page by both Plaintiffs under pains and penalties of perjury. It is clearly intended to be a Complaint. It is herein referred to as "Verified Complaint" or "VC."

[3] The Motion to Amend is entitled "Petitioners [sic] Motion to Amend the above Captioned complaint In Rem Complaint [sic]," which this Court construes as Plaintiffs' Motion to Amend their Verified Complaint.

in note 1, supra) without first obtaining the written permission of this Court.

II. Background

The instant action[4] grows out of proceedings in Rhode Island Superior Court between Cesario and Bergquist, involving claims for mutual restraining orders prohibiting each from contacting or interfering with the other. See Stephen C. Bergquist v. John Cesario, C.A. No. 00-6141 (the "Superior Court action"). Those proceedings in turn arose out of a divorce proceeding between Bergquist and Carol (then Carol Bergquist) in Rhode Island Family Court. See Carol Bergquist v. Stephen Bergquist, Dkt. No. P00-1371 (the "Divorce Proceeding").

The Verified Complaint alleges due process and equal protection violations and/or fraud in connection with various proceedings and rulings in both the Superior Court action and the

---

[4] The factual background and proceedings are summarized from the allegations of the Verified Complaint (and attachments thereto) and, where noted, from the Rhode Island Supreme Court's February 9, 2004 decision in Bergquist v. Cesario, 844 A.2d 100 (R.I. 2004), cert. denied, 542 U.S. 925 (2004). Further details may be found in the Bergquist decision or in Cesario I, Report and Recommendation adopted by this Court. See Greene v. R. I., 398 F.3d 45, 48 (1st Cir. 2005) (in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b), a court may consider "not only the complaint but also matters merely incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment") (internal quotations omitted). This includes "matters of public record," id. at 48-49, which this Court construes to include prior court decisions.

Divorce Proceeding. (The details of these rulings are set forth in the Appendix attached to this Order.)

Plaintiffs allege that the hearings and rulings in both Superior Court and Family Court violated their procedural due process and equal protection rights, see VC at 29-30, ¶¶ F-J; that hearings and rulings of August 20-31, 2001, December 10, 2001 and February 28, 2002 were fraudulent, id. at 28, ¶¶ A-B; that Bergquist fraudulently procured Cesario's presence at various hearings via a witness subpoena, id. at 28 ¶ A, and fraudulently filed a motion to adjudge Cesario in contempt on the basis of an "admonishment," id. at 29, ¶ C; and finally, that the Rhode Island Supreme Court's rejection of his appeal was both a due process violation and fraudulent, id. at ¶¶ 68-69.[5]

Plaintiffs request that this Court (1) vacate the foregoing Superior Court rulings and orders, including the orders concerning payment into and from the Superior Court Registry, as void and/or fraudulent, and (2) vacate the Family Court decrees as void. Id. at 35-36.

---

[5] In addition, Plaintiffs make various unsupported, conclusory and scurrilous allegations concerning the Bergquist decision. For example, they allege that certain statements made by the Supreme Court in its Opinion were "clearly fraudulent," VC at ¶ 24, that the Supreme Court failed to substantiate any of its findings, VC at ¶ 42, and that the Supreme Court "clearly committed fraud, violated their oaths of office and committed treason against the Constitution." VC at 26, n.14. See VC at ¶ 40 ("treason against the Constitution"). Such allegations are clearly inappropriate and subject to being stricken.

## III. The Motion to Dismiss

### A. Standard of Review

In reviewing the Verified Complaint, this Court is mindful that a *pro se* complaint is held to a less stringent standard than those drafted by an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, while a *pro se* complaint is to be construed liberally, a plaintiff's *pro se* status does not excuse him from complying with procedural rules. See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The Verified Complaint is subject to dismissal on two grounds raised by the Defendant: (1) lack of subject matter jurisdiction and (2) failure to state a claim for which relief may be granted. It is also subject to dismissal for a third reason, not raised but obvious: the fact that the Defendant, Bergquist, is not constitutionally capable of committing the violations alleged. For all of these reasons, the Verified Complaint must be dismissed.

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), a court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff. See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). It is the plaintiff's burden to

prove the existence of subject matter jurisdiction. See Murphy, 45 F.3d at 522; Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. See Carreiro v. Rhodes, Gill, & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). Conclusory allegations or legal conclusions masquerading as facts will not suffice to prevent a motion to dismiss. See Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989).

The Court may consider certain materials extrinsic to the complaint on a Rule 12(b) motion to dismiss without converting the motion into a motion for summary judgment. See Greene, 398 F.3d at 48.

B. Analysis

1. Rooker-Feldman

The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005). The doctrine applies to

final state court judgments or rulings, i.e., "when the state proceedings [incident to the judgments or rulings] have ended" prior to the federal action. Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005) (quoting Exxon Mobil, 125 S. Ct. at 1521).

Here, the Superior Court rulings between May 31, 2001 and April 15, 2002, including those concerning the Superior Court Registry funds, constitute "final" rulings which this Court may not review, as they were fully reviewed by the Rhode Island Supreme Court, see Bergquist, 844 A.2d at 104-111, with further review denied by the U.S. Supreme Court, well before the instant action was commenced.[6] The fact that the Superior Court action has not been formally terminated does not change this result, since for purposes of Rooker-Feldman, the proceedings complained of had "ended" prior to the commencement of the instant action. See Federación, 410 F.3d at 24-25 (deeming state proceedings "ended with respect to issues that federal plaintiff seeks to have

---

[6] The state Supreme Court's inability to resolve all of Cesario's procedural due process claims due to his failure to provide relevant transcripts, see Bergquist, 844 A.2d at 104-110, does not create jurisdiction in this Court, as those due process claims are"inextricably intertwined" with the issues that court did resolve - namely the validity of the Superior Court rulings. See Picard v. Members of the Employee Ret. Bd., 275 F.3d 139, 145 (1st Cir. 2001). Moreover, in the course of denying rehearing, the state Supreme Court reviewed pertinent transcripts belatedly provided by Cesario and noted that nothing in them changed the result. See note 6, supra.

reviewed in federal court, even if other matters remain to be litigated") (emphasis in original).

The Superior Court rulings made on August 22, 2002 and May 1, 2004 are precluded from review by this Court for the same reasons. The interlocutory nature of these rulings does not change this result. See Federación, 410 F.3d at 24 n.10 (Rooker-Feldman may preclude federal court review of state interlocutory orders, if otherwise final).[7] Moreover, the due process claims asserted here as to both rulings (lack of notice and restrictions on Cesario's right of access to the courts) are "inextricably intertwined" with the respective rulings themselves. See Picard, 275 F.3d at 145.

Plaintiffs' claims concerning the Rhode Island Family Court decrees (the Decision Pending Final Entry and the Final Divorce Judgment) are similarly barred by Rooker-Feldman. See Federacion, 410 F.3d at 24 (judgments of lower state courts, once they become final, are not reviewable by federal district courts). Here, the record does not show any appeal from either decree, and thus both are final for purposes of that doctrine. The Change of Placement Order, which was affirmed by the Rhode Island Supreme Court, Dkt. No. 2004-296-Appeal, also constitutes a final state court ruling which this Court may not review. See id.

[7] The record is silent as to whether Cesario attempted to seek appellate review of either the August 22, 2002 ruling or the May 1, 2004 ruling and does not reflect any further action by Cesario in the Superior Court with respect to either ruling. Thus, the state court proceedings as to both rulings can be deemed to have "ended" for Rooker-Feldman purposes.

In short, Plaintiffs seek to have this Court review and "second-guess" the Rhode Island state courts on all of the above-described rulings. Such review is precluded by the Rooker-Feldman doctrine.

2. Abstention

Even if not barred by the Rooker-Feldman doctrine, it would not be appropriate for this Court to consider Plaintiffs' claims in view of the abstention doctrine, under which federal district courts must refrain from exercising jurisdiction over matters traditionally adjudicated by state courts. See Younger v. Harris 401 U.S. 37 (1971); Hemon v. Office of Pub. Guardian, 878 F.2d 13, 15 (1st Cir. 1989) ("The long-standing policy of the federal courts to avoid interference in state domestic relations disputes - for example, by abstaining from asserting federal subject matter jurisdiction over domestic relations matters . . . *is not limited* to the area of child custody, but extends to the entire field of domestic relations.") (citations omitted). See also Cesario I, Report and Recommendation, as adopted at 23-25. This policy applies to the Superior Court rulings here as well, which stem from, and are related to, the Divorce Proceeding.

3. Failure to State a Claim

Finally, most of the allegations in the Verified Complaint concern actions taken by the Rhode Island state courts, not by Bergquist. As such, claims based on allegations of misconduct by

the courts do not lie against Bergquist and must be dismissed. Moreover, this Court has previously considered and rejected claims identical to the claims here concerning the Superior Court hearings and rulings between August 20, 2001 and April 15, 2002. See Cesario I, Report and Recommendation, as adopted passim.

IV. Motion to Amend Verified Complaint

Plaintiffs have filed a Motion to Amend seeking to file an amended verified complaint in the instant action pursuant to Rule 15(a) of the Federal Rules of Civil Procedure ("Rule 15(a)").[8]

Despite the liberal amendment policy reflected in Rule 15(a), leave need not be granted in all cases. See Judge v. City of Lowell, 160 F.3d 67, 79 (1st Cir. 1998) (citing 6 Charles Alan Wright et al., Federal Practice and Procedure § 1487 at 611 (2d ed. 1990)). If the amendment would be futile or would serve no legitimate purpose, the district court "should not needlessly prolong matters" by granting leave to amend. Id. (internal quotations omitted).

---

[8] Rule 15(a) provides in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In the instant case, Plaintiffs' Motion to Amend is inherently futile. The proposed amended verified complaint, consisting of 36 un-numbered pages, is virtually identical to the original complaint with the exception of new allegations of violations of Cesario's Sixth Amendment rights in connection with the criminal contempt on August 20, 2001. Cesario's Sixth Amendment claim was specifically addressed by the state Supreme Court when it reversed his criminal contempt and incarceration sentence. See Bergquist, 844 A.2d at 106-107 (citing City of Pawtucket v. Council No. 70, AFL-CIO, Local 1021, 353 A.2d 607, 612 (1976)). That decision cannot be reviewed here.

Even under the liberal standard afforded *pro se* litigants, the proposed amended complaint suffers from the same flaws as Plaintiffs' original Verified Complaint and is futile. The Motion to Amend must be denied. See City of Lowell, 160 F.3d at 79.

V. Conclusion

In view of the foregoing considerations, Plaintiffs' Verified Complaint is DISMISSED with prejudice, and Plaintiffs' Motion to Amend is DENIED.[9] In addition, in light of the Plaintiffs'

[9] Both parties have filed additional motions in this matter. Bergquist has filed two subsequent motions to dismiss in this action, see Doc. 9 (filed June 24, 2005) and Doc. 15 (filed August 11, 2005) as well as a motion to restrain the Plaintiffs from filing frivolous pleadings in this Court (Doc. 5, filed April 5, 2005). Plaintiffs have filed a Motion for Summary Judgment on all of their claims and a "Motion for a Temporary Restraining Order Enjoining the Defendant from Attempting to Enforce Void Orders." In view of this Court's disposition of the first-filed Motion to Dismiss, all of these motions are moot and will be denied.

continued filings of frivolous and prolix pleadings and motions, this Court ORDERS as follows: Plaintiffs are hereby prohibited from filing in this Court any new actions in any way dealing with the issues raised either in the instant case or in their previous actions in this Court (described in note 1, supra) without first obtaining the written permission of this Court.

It is so ordered.

William E. Smith
United States District Judge
Dated: 3/10/06

---

Separate Orders will issue to this effect.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN CESARIO<br>CAROL CESARIO,<br>Plaintiffs,<br><br>vs.<br><br>STEPHEN BERGQUIST,<br>Defendant. | ) | C.A. No. 05-090-S |

**APPENDIX TO ORDER DISMISSING VERIFIED COMPLAINT**

Superior Court Proceedings:

1. Hearing, August 20, 2001: Cesario found in contempt of a prior court order restraining him from contacting or interfering with Bergquist; sentenced to 30 days in jail. VC at ¶ 17. August 31, 2001: Contempt sentence reduced to time served conditioned upon continued injunction against contacting Bergquist and the Bergquist children. Id. at ¶ 18.

2. Hearing, October 22, 2001: Court, *inter alia*, quashed subpoena issued by Cesario for confidential records held by the guardian ad litem for the Bergquist children (the "GAL"); Cesario ordered to pay $500 in attorney fees to the GAL; and directed to refrain from contact with the Bergquist children. Id. at ¶ 32 and VC, Ex. E (Transcript of Hearing Conducted on October 22, 2001) ("Ex. E") at 29-30, 31.

3. Hearing, on December 10, 2001: Cesario found in contempt for sending the GAL a threatening note and other documents. See VC at ¶ 33; Bergquist, 844 A.2d at 109, (permitted to purge the

contempt based upon promise to refrain from further contact with the GAL and depositing $5,000 security into the Registry of the Superior Court). VC at ¶ 34.

4. Hearing, February 28, 2002: Cesario found in contempt for drafting a disciplinary complaint letter concerning Carol's divorce attorney, in violation of order prohibiting him from interfering with the Divorce Proceeding, VC at ¶¶ 39-40; sentenced to 15 days at the ACI, but allowed to purge sentence by depositing additional $5,000 into the Superior Court Registry; (original $5,000 released to Bergquist). See Bergquist, 844 A.2d at 110.[1]

NOTE: Upon appeal, the Rhode Island Supreme Court, with one exception, affirmed all of the foregoing rulings and orders. See Bergquist, 844 A.2d at 104-111. The court found that the August 20, 2001 order unconditionally incarcerating Cesario constituted a criminal contempt sanction that was not imposed in compliance with R.I. Superior Court Rule of Criminal Procedure 42, but re-characterized that order as a civil contempt, and affirmed the August 31 condition of release prohibiting Cesario from contacting the Bergquist children. Id. at 106-108. The court also rejected Cesario's procedural due process claims as to several of the

[1] This order was amended on April 15, 2002 to provide that Cesario could apply for the release of the registry funds after one year. See VC at ¶ 6; Bergquist, 844 A.2d at 110.

hearings, in part due to his failure to provided pertinent transcripts. Id. at 104, 105-106, 108-109, 109-110.[2]

5. Hearing, August 21-22, 2002: Superior Court Justice *sua sponte* found that Cesario violated R.I. Super. R. Civ. P. 11 by filing certain *pro se* pleadings. See VC at ¶ 50.

6. Hearing, May 1, 2004: Court, *inter alia*, denied cross motions for contempt filed by Bergquist and Cesario (based on alleged violations of the respective restraining orders); ordered both Bergquist and Cesario to refrain from filing any further *pro se* pleadings in the Superior Court action, upon risk of being found in criminal contempt. Id. at ¶¶ 45, 47.

Family Court Proceedings:

1. Two decrees entered in the Divorce Proceeding: "Decision Pending Entry of Final Judgment" dated on or about September 27, 2001;[3] and Judgment for divorce of Stephen and Carol Bergquist entered on December 18, 2001 ("Final Divorce Judgment").

---

[2] This Court takes judicial notice that in the course of denying rehearing, the Rhode Island Supreme Court stated that it had "throughly reviewed" several hearing transcripts filed by Cesario after its February 9 decision -- which had not been available to it in making that decision -- and had concluded that nothing therein caused it to alter its prior determination of the issues decided. See Stephen Bergquist v. John Ceserio, Dkt. Nos. 02-614-MP and 03-66-A, unpublished Order dated April 9, 2004 at 2. See also VC at ¶69 at 25.

[3] The Court adopts the date reflected in the Docket for the Divorce Proceeding. A copy of this decree does not appear in the record.

2. Order entered on March 24, 2004: Transferring placement of the Bergquist children to Stephen Bergquist and giving Carol unlimited visitation with the children, so long as Cesario was not present (the "Change of Placement Order"). See VC at 30, ¶¶ L-M.

NOTE: The Change of Placement Order was affirmed in all respects by the Rhode Island Supreme Court in October 2005. See Carol Bergquist v. Stephen Bergquist, Dkt. No. 2004-296-Appeal, Order dated October 20, 2005 (R.I. Supreme Court) (unpublished).