UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN CESARIO
CAROL CESARIO
Plaintiff's

Vs CA 05-090-S

STEPHEN BERGQUIST **Plaintiff's Request A Hearing**
Defendant

**Plaintiff's 60 b Motion To Vacate the Orders of Judge Smith dated 3/10/2006 and the Final Judgment entered By Judge Smith on 3/13/2006**

Plaintiff's state that the above captioned complaint should not have been summarily dismissed, sua sponte, without allowing the Plaintiff's a hearing on their objections to the defendants motion to dismiss.

1. Plaintiff's state that Judge Smith clearly erred in applying the Rooker-Feldman Doctrine as a ground for depriving the court subject matter jurisdiction. Judge Smith dismissal is in direct violation of the U.S. Supreme Court's 2005 holding in ***Exxon Mobile Corp v Saudi Basic Indus Corp. 544 U.S. 280, 125.(2005)***.

2. Plaintiff's state that Abstention only applies to issuing a divorce decree, determining alimony, placement and child support. Plaintiff's are not seeking any relief that would be barred by abstention, and Judge Smith erred as the U.S Supreme Court's holding in **Ankenbrant v Richards, 504 US 689 (1992),** Moreover, the three conditions in ***Quackenbush v Allstate 517 US 706(1996),*** are not present to rely on Younger doctrine. The court does not have discretion to deny the plaintiff's federal claims

3. Judge Smith clearly erred when he considered and incorporated outside materials in his memoranda and Order dated 3/10/2004, without converting Bergquist's Motion for Summary Judgment, or give the plaintiff's notice and an opportunity

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN CESARIO
CAROL CESARIO
Plaintiff's

Vs CA 05-090-S

STEPHEN BERGQUIST **Plaintiff's Request A Hearing**
Defendant

**Plaintiff's 60 b Motion To Vacate the Orders of Judge Smith dated 3/10/2006 and the Final Judgment entered By Judge Smith on 3/13/2006**

Plaintiff's state that the above captioned complaint should not have been summarily dismissed, sua sponte, without allowing the Plaintiff's a hearing on their objections to the defendants motion to dismiss.

1. Plaintiff's state that Judge Smith clearly erred in applying the Rooker-Feldman Doctrine as a ground for depriving the court subject matter jurisdiction. Judge Smith dismissal is in direct violation of the U.S. Supreme Court's 2005 holding in ***Exxon Mobile Corp v Saudi Basic Indus Corp. 544 U.S. 280, 125.(2005).***

2. Plaintiff's state that Abstention only applies to issuing a divorce decree, determining alimony, placement and child support. Plaintiff's are not seeking any relief that would be barred by abstention, and Judge Smith erred as the U.S Supreme Court's holding in **Ankenbrant v Richards, 504 US 689 (1992),** Moreover, the three conditions in ***Quackenbush v Allstate 517 US 706(1996),*** are not present to rely on Younger doctrine. The court does not have discretion to deny the plaintiff's federal claims

3. Judge Smith clearly erred when he considered and incorporated outside materials in his memoranda and Order dated 3/10/2004, without converting Bergquist's Motion for Summary Judgment, or give the plaintiff's notice and an opportunity

to oppose the outside materials Judge Smith relied upon. See **Greene v R.I 398 f3d 45, a 2005**

4. Judge Smith erred when he referenced a Supreme Court order dated 4/9/2004, without notice to the plaintiff's, and either intentionally or inadvertently left out that in the course of denying rehearing for Cesario, the Supreme noted that nothing changed the result. Judge Smith omitted the most valuable part of that order, the order actually stated; "would cause us to alter our prior determination as decided in the Opinion". Judge Smith knew, or should have known, that the Supreme Court of R.I passed on determining Cesario's federal claims. Moreover, the Opinion did not even acknowledge Cesario had I and IV Amendment claims.

5. Judge Smith erred when he relied on a R.I Supreme Court docket sheet, in Carol's case, as grounds for dismissing her IV Amendment claims. Judge Smith did not give the plaintiff's notice, and had Judge Smith used his inherent powers to look at the Unpublished Order of the Supreme Court, he would have seen that the Supreme Court did not acknowledge or address any of Carol's IV Amendment claims, they only addressed reversible errors. Moreover, dismissal of Carol's claims with prejudice are precluded by the U.S Supreme Court's holdings in ExxonMobile and Ackenbrandt.

6. Judge Smith misstated the Plaintiff's claims, the plaintiff's claims are very clear. The plaintiff's were seeking to vacate fifteen (15) final orders of the R.I State Courts that were either void based on orders being entered in violation of rights protected by the IV Amendment of the United States Constitution. The orders themselves, as opposed to the hearings, were either fraudulent or the hearings were conducted without adhering to fundamental guarantees of the U.S Constitution. standard rules and procedures and basic guarantees as being given notice of charges, being given an opportunity to oppose those charges and be given an opportunity to call witnesses. Judge Smith stated that all the Plaintiff's claims required review of state court hearings, this is a misstatement. However,

the District Court has jurisdiction over federal claims that were passed by the State's highest Court.

7. Supreme Court law mandates federal courts rely on state law when applying res judicata, R.I laws as passed by the R.I. General Assembly, the Superior and Family court's Rules and Procedures, and case law state an independent and collateral action is permissible. Moreover, "void" judgments can be attacked at any time.

8. Judge Smith states that Cesario, I, II and III may preclude jurisdiction to certain claims, notwithstanding that many claims were discovered after those judgments, preclusion would require the District Court to foreclose jurisdiction as to matters that were " heard and decided on the merits after a fair trial". As the District Court never accepted jurisdiction. it is without peradventure that the merits of the plaintiff's claims were not heard. See the U.S Supreme Court's holding in **Rivet v. Regions Bank, 522 U.S. 470, 474-77 (1998)**

9. The plaintiff's state that Judge Smith directly violated the U.S. Supreme Court holdings and the First Circuit's holding in Cok v Family Court, when Judge Smith restricted the plaintiff's filings without giving the plaintiffs notice or an opportunity to be heard.

10. In a motion to dismiss, the plaintiff's claims are admitted as fact. The plaintiff's claims must, by a matter of law, be admitted as true. The plaintiff have made more than cognizant claims, the plaintiff's have made absolute fundamentally guaranteed claims protected by the United States Constitution. No citizen of the United States can be bound by void or fraudulent orders.

Plaintiff's state as the R.I Supreme Court opinion of 2/9/2004 and the unpublished order 10/20/2005 do not acknowledge or determine the merits of the Plaintiff's federal claims, which were properly presented, that District Court has Jurisdiction. The Plaintiffs request a hearing on this motion. While the plaintiff's believe the claims were presented quite clearly in the complaint, which was accompanied by sworn affidavits and exhibits, the plaintiff's memoranda is prepared with particular precision, as to case law and facts.

**As the Court acted in clear violation of recent U.S Supreme Court cases, First Circuit Cases and violated various rights of the plaintiff's which are protected by the V Amendment of the United States, the plaintiff's pray that their motion be granted and the following relief be permitted**

**RELIEF SOUGHT BY PLAINTIFFS**

1. That the order of final judgment based on the orders of 3/10/2006 be vacated
2. That the Plaintiff's be allowed to amend their complaint.
3. That the Court reinstate and expedite the Plaintiff's motion to enjoin the State of R.I's judicial officers from enforcing void judgments. This prayer is within the spirit of Younger.

Plaintiff's pro se

John Cesario 4/5/2006
Carol Cesario
Carol Cesario

64 Verdant Drive
Cranston R.I 02920
401-413-6461
401-615-0549

Certification

A true copy of this motion was mailed to Stephen Bergquist, on April 7th 2006, first class US mail, postage prepaid to his usual address, 189 legion Way Cranston RI 02910 With exhibits and memo

4/6/2006

 C.A. 90-S-05

**Plaintiff's Memoranda Of law In Support Of the Attached 60 (b) Motion**

**Statement of Case**

This case arises out of the State Courts attempts to punish Cesario for reporting child abuse and abusive behavior by Bergquist and incompetent Court officials covering it up. Defendant (Bergquist) was the former husband of Cesario's wife. After Bergquist initiated an affair with a neighbor, Carol filed for divorce on or about 6/10/2000. On or about 1/15/2001 Bergquist began instilling fears into the minor children of the marriage that Cesario was going to murder the minors and was coaching the children what to tell judges. On or about 7/25/2001 Cesario wrote Family Court officials that they were ignoring child abuse and abuse to Carol. Cesario, who agreed to a mutual preliminary do not harass order with Bergquist on 12/5/2000, was commanded to appear in Superior Court on 8/20/2001 after receiving a witness subpoena duces tacem. Without notice of charges, and in violation of U.S Supreme Court holdings, Cesario was criminally jailed. Upon release, Judge Fortunato ststed that Cesario was not to contact the Carol's children, however Fortunato did not issue an order. Cesario attempted to vacate those orders on 10/22/2001, as he never had contact with the children anyway, and the children were indicating that they were afraid of him even though they did not know him, Cesario subpoenaed witnesses. The Guardian ad Litem took exception to being called to testify in Superior Court, even though she was an independent witness for the children, and issued threats to Carol. The threats were that if Carol appeared in Superior court as a witness for Cesario the GAL would file an emergency motion to have Carol's children taken away.

Bergquist's attorney, Kevin Bristow, filed an invalid motion to adjudge Cesario in contempt. At the hearing Fortunato stated that he did not issue any restraining order in the case. On 10/25 2001 Cesario appeared in Superior Court with a motion to resort witness coercion, on the guardian ad litem and attorney Rioles. Fortunato told Cesario that he had to give the GAL notice; Cesario sent the motion, a check for $500.00 and a note which stated "witness tampering is against the law and you will pay dearly next year". As Cesario reported the witness tampering. Cesario was found in contempt for sending the GAL those documents, even though there was not an order preventing Cesario from contacting the GAL, she was not a party to the restraining order and Cesario claimed he had a First Amendment right to contact any official. Next, after the purported final judgment entered in Carol's divorce action, Cesario was found in contempt for interfering with the divorce for sending a Disciplinary Complaint about Rioles for her role in witness tampering in Cesario's Superior Court action. Rioles was no longer involved in the divorce, the divorce was over, the witness tampering occurred in Superior Court, Rioles was not a party to the mutual restraining order, yet Cesario was again found in contempt for violating the order; based on Judge Fortunato stating that the appeal period is alive and vibrant; whatever that means. In a contempt proceeding, the parties are to have crystal clear knowledge of what behavior they are to refrain from, and an order actually has to be violated. Bergquist prepared a fraudulent restraining order based on the hearing of 2/28/2002; which stated that Cesario was restrained from contacting the children. Fortunato signed the order, without Cesario being given notice or an opportunity to oppose the order, moreover, the order was a fraud as Fortunato never issued said order on 2/28/2002. Cesario appealed to the R.I Supreme Court, and filed multiple motions to

vacate the order in Superior Court, none of which were heard. On 2/9/2004 the Supreme Court affirmed the orders, without addressing acknowledging or addressing Cesario's federal claims. On 3/24/2004, Family Court changed placement of Carol's children based soley on this fraudulent order of Superior Court, without a valid motion to change placement of the children and without Carol even given notice that she could possibly lose placement of her children because she was peaceably living with her husband and the children.

Bergquist next filed a motion to adjudge Cesario in contempt, for living with his wife and stepchildren, in violation of the Superior Court order affirmed by the R.I. Supreme Court. (judges Flanders, Goldberg and Suttell). On 5/4/2004, after a three day hearing, Superior Court Judge Prococcini found the restraining order Fortunato signed to be "not credible." While R.I judges must abide by R.I. Supreme Court law, the exception is if the order is void or fraudulent. Bergquist actually testified that he had a prior agreement with Fortunato to enter the order.

The Family Court did not have authority to hear a change of placement motion. The Motion, which Bergquist filed on 1/29/2004, seeking a Change of placement was based soley on the children's en camera interview on 1/27/2004. Bergquist had a contempt motion on the calendar. Carol had multiple motions that were not heard. Further, Carol was subjected to nearly a dozen contempt motions and never adjudged in contempt. Carol has been abused by Bergquist and his attorney filing a plethora of erroneous and fraudulent orders. Carol's motions have been repeatedly ignored and not heard by the Court. The R.I. Supreme affirmed an order changing placement of the minor children of Bergquist and Carol based on a purported change of placement Motion filed by

Bergquist.

While the instant case was pending, the R.I Supreme Court issued an unpublished order dated 10/20/2005. Carol, and Carol's attorney, did not receive notice of this order. Carol had multiple grounds for appeal, including four (4) IV Amendment violations. The Supreme Court order did not acknowledge Carol's federal claims, nor did the court address any due process claims. Shockingly, the Supreme Court order dated 10/20/2005 stated a cursory review of the file shows Bergquist filed a Motion For A Change Of Placement Of The Minor Children and Other Relief, and Carol should have known that a motion was filed and would be addressed at the hearing. The motion for a change of placement reference by the R.I Supreme Court; the Supreme Court order of 10/20/2005 did not state that Bergquist's Motion was filed on nearly a year and a half earlier, and was disposed of in Carol's favor.

As to the 3/24/2004 order, Bergquist rested his case on 2/3/2004 without calling any witnesses or testifying. Bergquist had a Motion to Adjudge Carol in Contempt for having Cesario in the presence of the children on the calendar and the children did an in camera interview. **On 3/2003 Family** Court Judge Mutter for the second time instructed Cesario and Carol to get married. Carol and Cesario filed a motion to vacate the restraining order, even though it was void and had previously been vacated by Judge Bedrosian on 9/17/2001. Cesario, although being involved with Carol since 10/2000 had absolutely no relationship with the minor children until September of 2003, nearly 4 months after the Plaintiff's married.

Yet the record is full of testimony and evidence that Bergquist has attempted to instill fears in the children and interfere with the Plaintiff's relationship. It should be noted that

Bergquist caused the breakup of the marriage by having an affair and moving in with a neighbor. This court should be shocked as it is without peradventure that there is no other case in the country which children have been so tortuously used. As early as 2001, DCYF issued a report in which it stated that Bergquist was instilling murder fears in the children and was coaching them what to tell the judge. Bergquist was arrested for assaulting Carol, Bergquist initiated approximately 30 police incidents against the Plaintiff's in an attempt to scare the children, yet no action was ever taken by the police as Bergquists complaints did not have any merit. Bergquist filed over a dozen contempt motions against Carol for her having Cesario in the presence of the children, none of them granted. One such motion was initiated by Bergquist when he purposely brought the children to the home of Carol while Cesario was there to pick up clothing as they were staying overnight with him and he was angry Cesario would not leave. The record of the case shows Bergquist testifying that he illegally seatbelted 2 children in one seat while he was carrying on his affair. The record also shows that Bergquist only provided one bed for three children until it was exposed in court. Bergquist stopped paying child support in 2001 despite a clear order from Judge Bedrosian on 9/17/2001 that child support is to remain in full force and effect. Bergquist also continued his abuse of process through filing a multitude of contempt motions (8) in Superior Court against Cesario. Four of those contempt motions were granted in violation of Constitutionally protected rights. Cesario claims that the RI Supreme Court has not addressed his clear claims of Constitutional deprivations that would render those orders void; the opinion confirms that claim. The Supreme Court did not even acknowledge Cesario's Constitutional claims. Plaintiff's have taken great care to address all of the facts, laws, case citations to assist

the Court.The District Court now has evidence that the Family Court orders in December of 2001 are void because the orders were fraudulent and there was never a hearing. Clearly violations of rights protected by the IV Amendment of the United States.

**Standard of Review.**

Plaintiff's pro se complaint is held to less stringent standards than those drafted by an attorney.

See Hainesv Kerner 404 U.S. 519(1972) Jenkins v Mckeithan 395 US 411(1959) *Pro se pleadings are to be considered without regard to technicality, pro se litigants pleadings are not to be held to the same high standards of perfection as lawyers" Maty v Grasselli Chemical Co, 303 US 197 (1938) Picking v Pennsylvania Railway 151 f2d 240 (3rd Cir) "plaintiffs civil rights pleadings was 150 pages and described by a federal judge as inept. Where a plaintiff pleads pro se in a suit for protection of civil rights, the court should endeavor to construe Plaintiff's pleadings without regards to technicalities".*

Moreover, the Plaintiff's have submitted two sworn affidavits that have not been refuted, and a plethora of transcripts and legal documents supporting their claim. The Plaintiff's will submit another sworn affidavit; and submit over a dozen more legal exhibits supporting their claims. It is highly unusual that a Plaintiff has to litigate their case prior to a case management conference; but it appears that is the only recourse available to the Plaintiff's. The plaintiff's complaints were supported by exhibits and affidavits, which were not refuted.

***A complaint should not be dismissed unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957)***

.**Whereas, Judge Smith dismissed the Plaintiff's action based on 12 (b) (1) and 12 (b) (6); in the clear absence of any legally tenable basis for dismissal. Federal Rule 12 (b) (1)**

In a motion to dismiss for lack of subject matter jurisdiction, Rule 12 (b) (1),

*a court must construe the complaint literally, treat all well pleaded facts as true, and indulge all reasonable inferences. See Aversa v United States 99 f3d 1200*

*Cochran v Kansas 316 US 255 (1942) " however inept Cochran's choice of words, he has set out allegations supported by affidavits, and nowhere denied, that Kansas refused him privileges on appeal which it affords others****

*Duncan v Missouri 152 US 377 (1894) Due process of law and the equal protection of laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government:" Jenkins v Mckeithan 395 US 411(1959) Pro se pleadings are to be considered without regard to technicality, pro se litigants pleadings are not to be held to the same high standards of perfection as lawyers" Maty v Grasselli Chemical Co. 303 US 197 (1938) Pleadings are intended to serve as a means of arriving at a fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end".*

Plaintiffs have submitted transcripts and affidavits which all the facts plead have NOT been disputed; by the Defendant or the Court. The Plaintiff's have clearly stated that claims lie under U.S. Title 28 & 1331 as well as the Diversity Clause. The Plaintiff's suit is posted on amatterofjustice.org/amoj/cases/cesario.htm. Plaintiff's further cite Constitutional claims protected by the First, Fifth and Fourteenth Amendments of the United States Constitution, as well as the Equal Protection Under the Law Clause. Jurisdiction of the Court has been established through both Congressional statutory law and the Constitution of the United States. Once jurisdiction of the federal court is established, it is the duty of the court to obtain jurisdiction. To the effect that the District Court declines to accept jurisdiction based on Rooker-Feldman, Abstention and Federal, State Preclusion and Res Judicata, as well as comity; Judge Smith is erroneous, mostly based on his false interpretation of the Plaintiff's claims. The Plaintiff's aver the following grounds why jurisdiction is not only proper, but the Court has a non discretional duty to assume jurisdiction. Abstention does not deprive a court of subject matter jurisdiction when a federal claim is presented, see Ackenbrandt v Richards 504 US 689 (1992), which controls the jurisdictional issue relative to abstention relative to

domestic relations. A 12(b) (1) dismissal flies in the face and slights United States Supreme Court very recent holding in ExxonMobile and Ackenbrandt, and the Plaintiff's rights protected and guaranteed by the Constitution of the United States, namely the IV Amendment equal protection under the law and access to the courts. Moreover, the court most certainly has jurisdiction of diversity claims against Bergquist.

**12 (b) (6) Grounds for Dismissal**

The plaintiff's state that vacating void judgments that are void, and not correctible, as the orders were either fraudulent, were prohibited from entering by statute, and were so repugnant to basic fairness of the I, IV Amendment and Equal Protections Clauses of the United States Constitution, are legitimate stated claims. Further, neither Judge Smith, or Bergquist has entered any evidence into the record that refutes the plaintiff's allegations. Plaintiff's have clearly stated Federal claims of First, Fourteenth, Equal Protection Violations.

In ruling on the defendants motion to dismiss, the court violated the United States Supreme Court's holding in **Walter Process Equipment v Food Machinery , 382 U.S. 172 (1965**) *in a motion to dismiss, the material allegations of the complaint are taken as admitted" Conley v Gibson 355 U.S. 41 (1957)*

Granting a 12 (b) (6) motion to dismiss without allowing the plaintiff's an opportunity to present evidence to support their claims is a direct violation of :

*Haines v Kerner, Prisoner's pro se complaint seeking to recover damages for claimed physical injuries and deprivation of rights in imposing disciplinary confinement should not have been dismissed without affording him the opportunity to present evidence on his claims. .... we conclude that he is entitled to an opportunity to offer proof. The judgment is reversed and the case is remanded for further proceedings consistent herewith.*

*And; Conley v. Gibson, 355 U.S. 41, 45 -46 (1957).Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf.*

*Maty v. Grasselli Chemical Co., 303 U.S. 197 . The judgment is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.*

Moreover, the plaintiff's direct the court to the United States Supreme Court's holding in *Gomillion v Lightfoot 364 U.S. 155 " Constitutional rights would be of little value if they could be indirectly denied."*

*Downs V Bidwell 182 U.S. 244 (1901) It will be an evil day for American Liberty if the theory of a government outside the Supreme Law finds lodgement in our constitutional jurisprudence. No higher duty rests upon this Court than to exert its full authority to prevent all violations of the principles of the Constitution."*

While the defendant filed a motion to dismiss, the plaintiff's state that timely objections were filed in opposition to Bergquist's motions to dismiss; subsequently the plaintiff's had a right to be heard on the pending objections. Absent the plaintiff's being given an opportunity to be heard on their objections, or notice that the court was contemplating dismissing the complaint over the plaintiff's timely objections, violations of the plaintiff's V, IV Amendment due protections were committed in the process of dismissing the complaint. The plaintiff's were not even afforded a pre trial hearing. In essence, without affording the plaintiff's an opportunity to be heard or on the merits, or in the alternative; an opportunity to amend the complaint, it is the equivalent of a sua sponte dismissal. The opportunity to be heard in a judicial proceeding is a fundamental right, which cannot be denied by procedure. Goldberg v Kelly 397 U.S. 254 The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394 (1914). The hearing must be "at a meaningful time and in a meaningful manner."

*Sua sponte dismissals are strong medicine, and should be dispensed sparingly."* **Gonzalez-Gonzalez v. United States, 257 F.3d 31, 33 (1st Cir. 2001).**

*This does not mean . . . that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand." Gonzalez-Gonzalez, 257 F.3d at 37; see also Clorox, 228 F.3d at 30 (noting "limited exceptions to the general rule barring dismissal without notice"); accord Curley v. Perry, 246 F.3d 1278 (10th Cir. 2001). The party defending the dismissal must show that "the allegations contained in the complaint, taken in the light most favorable to the*

*plaintiff, are patently meritless and beyond all hope of redemption."* Gonzalez-Gonzalez, *257 F.3d at 37.*

*We review* de novo *the dismissal of a complaint for failure to state a claim.* Aulson *v.* Blanchard, *83 F.3d 1, 3 (1st Cir. 1996). We accept the factual allegations in the complaint as true and indulge all reasonable inferences in the plaintiff's favor.* Id. *Contrary to appellees' suggestion, civil rights claims are not subject to a heightened pleading requirement. Moreover, as a* pro se *plaintiff, Cloud is entitled to have his complaint "liberally construed."* Estelle *v.* Gamble, 429 U.S. 97, 106 *(1976).*

*Fed. R. Civ. P. 12(b)(6).[4]* Clorox Co. P.R. *v.* Proctor & Gamble Commercial Co., *228 F.3d 24, 30 (1st Cir. 2000.... **Moreover, Proctor & Gamble's suggestion fails to address the fundamental problem with the district court's sua sponte actions: the failure to give Clorox notice and an opportunity to be heard. Even if the district court had converted the motion to dismiss into a motion for summary judgment--which it did not--such conversion usually requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion."** Fed. R. Civ. P. 12(b). Although we do not "mechanically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment," we do guard against allowing such a conversion where it would come as a "surprise" or be "unfair" to the party against whom judgment is rendered.* Chaparro-Febus *v.* International Longshoremen Ass'n, Local 1575, *983 F.2d 325, 332 (1st Cir. 1992). In light of Proctor & Gamble's acknowledgment that the complaint stated a claim under § 43(a) of the Lanham Act, the district court's conversion without notice would have been both surprising and unfair.* Catz supra Tingler v Marshall 716 f2d 1109 (1983), Ohlander v Larson no 954114. 6/97 (10th Cir) Pugh vs Gourd 9/24/2003 (2nd Cir) The parties should have warned, given notice of the court's intent to dismiss, and given an opportunity to amend the complaint.

HUGHES v. ROWE, 449 U.S. 5 (1980) *Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines, supra, at 520-521. 7 And, of course, the allegations of the complaint are generally taken as true for purposes of a motion to dismiss. Cruz v. Beto, 405 U.S. 319, 322* (1972). *Although petitioner's pleadings are prolix and lacking in stylistic precision, this is not a case like Estelle v. Gamble, 429 U.S. 97 (1976), in which a pro se litigant's detailed recitation of the facts reveals on its face the insufficiency of the complaint. We cannot say with assurance that petitioner can prove no set of facts in support of his claim [449 U.S. 5, 13] entitling him to relief.*

Plaintiff's will recite all material facts of various hearings at the end of this Memoranda, for the sake of clarity; and will then a multitude of claims that relief can be granted. Many claims were discovered after Cesario I and II; and the 2/9/2004 opinion by the R.I Supreme Court. Carol's Fourteenth Amendment claims were initiated before the Supreme Court order of 10/20/2004. The matters regarding fraudulent divorce decree can absolutely be attacked.

**One of the most fundamental and important <u>absolute guarantees</u> of the United States Constitution is the V and IV Amendments. The phrase of due process, while sometimes elastic, is nothing but firm when it comes to fundamental guarantees such as the right to notice of charges, and a meaningful opportunity to challenge charges brought through witnesses and an opportunity to be heard. The absolute guaranteed rights available to all citizens of the United States, is the bedrock foundation of law in the United States.**

**The Due Process Clause of the Fourteenth Amendment provides:**"[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." This Clause "raises no impenetrable barrier to the taking of a person's possessions," or liberty, or life. Fuentes v. Shevin, <u>407 U.S. 67, 81</u> (1972). Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process . . . ."

Plaintiff's state that Judge Smith, R.I. District Court Federal Judge, either intentionally or inadvertently, misstated the Plaintiff's claims; when Judge Smith sua sponte dismissed the Plaintiff's complaint; without affording the Plaintiff's notice or an opportunity to be heard; or an opportunity to amend the complaint; when he ruled on a 12 (b) (1 )and 12 (b) (6) motion to dismiss. Federal Judge Smith memoranda and order of 3/10/2006, which a final judgment entered on 3/13/2006, stated the plaintiff's complaint was barred by Rooker- Feldman and Abstention; and that no Constitutional action can lie against Bergquist. Judge Smith Memoranda and order stated that the Plaintiff's "filed a Verified Complaint alleging due process and equal protection violations and/or fraud in various R.I state court proceedings and rulings, and requesting that such proceedings and rulings be vacated and /or declared void by this court". Page 4 of Judge Smith's memoranda and order dated 3/10/2006 completely misinterprets the Plaintiff's federal claims protected by

the Fourteenth Amendment and fraud claims. The Plaintiff's never claimed the hearings or motions were fraudulent; as Judge Smith states on page 4 of Memoranda and order dated 3/10/2006. Judge Smith, misstated the core of the Plaintiff's complaint, which is seeking orders final (an order entered which is fraudulent or without allowing basic due process rights never achieves finality) state court judgments vacated for fraud upon the court; in which the orders themselves were fraudulent; and/or the state court lacked authority by statute to enter an order because there was a pending unresolved objection; and/or that the Plaintiff's Due Process Rights protected by the Fourteenth Amendment were so grossly violated as to procedure, notice and the opportunity to be heard that the orders from such hearings are "void", without reaching any determination on the merits. The Plaintiff's claim is a §1331 (federal questions), and was attempted to be amended to include a §1332 (diversity) action. The Plaintiff's reference and incorporate their previously filed complaint, and impose just some of the specific claims made in this Memoranda, such as.

**The Plaintiff's complaint:** **INTRODUCTORY STATEMENT**

**This is a separate and independent plenary action in the nature of a bill of equity available as a common law remedy under Federal law to collaterally attack Final Judgments of the R.I Superior Court dated 8-20-2001, 8-31-2001, 10-22-2001,12-10-2001, and 2-28-2002 amended to 4-15-2002, 8-22-2002 and 5-1-2004; the RI Supreme Courts affirming void orders in its opinion dated 2-9-2004 and Family Court final judgments dated 12-18-2001 and orders arising out of the court proceeding of 4-24-2004 in Family Court. Plaintiff's state that the above orders are void for lack of procedural and substantive due process under the Fourteenth Amendment of the United States Constitution, First Amendment, Fifth Amendment and FRAUD.**

**7. This bill of equity arises directly under the Due Process Clause of the Fourteenth**

**Amendment of the United States Constitution, a venerable common law remedy available to collaterally attack a final State court judgment *at any time* as void as wanting in due process for gross irregularities and "departures from established modes of procedure", *Windsor v. McVeigh*, 93 U.S.274, 281-282 (1876); The Fifth Amendment of the Constitution and the Equal Protection Under the Law. Additional specific federal claims in the complaint are:**

**Fraud and Procedural Due Process Violations protected by the Fourteenth Amendment**

**D. The Superior Court Order from the hearing of Febuary 28th 2002 was FRAUDULENTLY prepared by the Defendant, the Defendant knew that Judge Fortunato did not order a restraining order on Febuary 28th 2002. The Defendant committed extrinsic fraud on the Court. The Defendant even states that he had an agreement with Judge Fortunato to merge a previous order which Judge Fortunato denied placing on the Defendant into the order dated March 1st 2002. The fraud intentionally and maliciously perpetrated by the Defendant has caused injury to the Plaintiff's reputation, finances and lifestyle. The Plaintiff initiated this fraud knowing full well that Judge Fortunato did not sign an order restraining the Plaintiff from the August 31st 2001 hearing. The Defendant had the transcript and was in court on 10-22-2001 when Judge Fortunato denied placing a restraining order on the Plaintiff. The Defendant admitted in court filings that Judge Fortunato agreed to merge the order of 8-31-2001 into the Febuary 28th 2002 order when there is no record in the 2-28-2002 hearing of Judge Fortunato making any statement which would support that.**

**E. The Final Judgment in the matter of Bergquist vs Bergquist is fraud on the Court as the order presented by ATTORNEY BRENDA RIOLES states that the decision pending final entry and the stipulation dated December 6th 2001 was merged and incorporated into the final judgment, no such hearing took place to merge or incorporate either. ATTORNEY BRENDA RIOLES committed fraud on the Court. Plaintiff's have numerous annotated statutes regarding extrinsic fraud causing an order to be void. The Plaintiff's here note that the fraud on the Court was committed by Attorney Rioles and not Judge Bedrosian who actually entered the final Judgment.**

**F. Plaintiff John did not receive any notice as to the contempt hearing of 8-20-2001 which renders the hearing void. Plaintiff John opportunity to be heard was prejudiced as he did not know the charges against him. Plaintiff John is not seeking a review of judgment but a review whether the hearing should have occurred. As noted, the R.I Supreme Court passed on entertaining the Plaintiff John's Constitutional claims.**

**G. Plaintiff John did not receive any notice as to the restraining order placed upon on 8-31-2001, as it was a condition of reducing an unlawful criminal sentence which was vacated..**

**H. Plaintiff John did not receive any notice to the possible entry of a purported admonishment nor was he allowed to be heard on the matter on October 22nd 2001. There is no law, statute or rule regarding "purported admonishments".**

**I. Plaintiff John did not receive any notice nor was given an opportunity to be heard on the restraining order issued on him from the Febuary 28th 2002 hearing.**

**J. Plaintiff John did not receive any notice nor was allowed to be heard and present evidence in opposition to a void entry of an order restricting his ability to file pro se pleadings.**

**K. Plaintiff Carol did not receive any notice or opportunity to be heard on either the Decision Pending Final Entry which was objected to and then entered as an order, and the Plaintiff Carol was not notified or allowed to be heard on December 18th 2001, nor does the Plaintiff Carol know how that day was arbitrarily chosen as it was not set down on the calendar to be heard.**

**L. Plaintiff Carol was not given proper notice on March 24th 2004 that she was the subject of a possible restraining order, the only valid motion before the court which would indicate such an order being contemplated was prayer on a contempt motion which was not granted.**

**M. Plaintiff Carol was not given proper notice or an opportunity to be heard on March 24th 2004 that she was a motion to change placement was validly before the Court. Defendant had asked for such relief in a contempt motion, but the motion for contempt was not granted. Judge Mutter stated he issued the order "Sui Juris" when the issue of insuffiency of notice was presented to him.**

The Plaintiff's could not be anymore specific that they are invoking claims that are basic and FUNDAMENTALLY GUARANTEED by the United States Constitution. However, Judge Smith stated that the plaintiff's claims were asking for review, and second guessing the State Court.

**FIFTH AMENDMENT VIOLATIONS BY JUDGE SMITH**

The bedrock of our legal system is "the opportunity to be heard", squarely entrenched in the principle of due process which the United States prides itself on. The plaintiff's objected to Bergquist's two (2) Motions to Dismiss that the plaintiff's were aware of; and

the plaintiff's had a right to heard in opposition of those motions. The plaintiff's also had an absolute right to be given notice, and heard in opposition to Judge Smith's sui juris adding and referencing outside materials in clear violation of the 1st Circuits holding in Green. . .

**Goldberg v Kelly 397 U.S. 254 The** *fundamental requisite of due process of law is the opportunity to be heard." **Grannis v. Ordean,** 234 U.S. 385, 394 (1914). The hearing must be "at a meaningful time and in a meaningful manner." **Armstrong v. Manzo,** 380 U.S. 545, 552 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a [397 U.S. 254, 268] proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases. 15*

**OPP COTTON MILLS v. ADMINISTRATOR OF W. AND H.D., 312 U.S. 126 (1941)** ***The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long [312 U.S. 126, 153] as the requisite hearing is held before the final order becomes effectiveDue process of law does not require notice of a proceeding to determine merely whether an improvement shall be constructed without at the same time establishing the boundaries of the assessment district. It is enough if landowners who may be assessed are later afforded a hearing upon the assessment itself.***

*LONDONER v. CITY AND COUNTY OF DENVER, 210 U.S. 373 (1908) If it is enough that, under such circumstances, an opportunity is given to submit in writing all objections to and complaints of the tax to the board, then there was a hearing afforded in the case at bar. But we think that something more than that, even in proceedings for taxation, is required by due process of law. Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing, in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument, however brief: and, if need be, by proof, however informal. Pittsburgh, C. C. & St. L. R. Co. v. Backus, 154 U.S. 421, 426 , 38 S. L. ed. 1031, 1036, 14 Sup. Ct. Rep. 1114; Fallbrook Irrig. Dist. v. Bradley, 164 U.S. 112 , 171 et seq., 41 L. ed. 369, 393, 17 Sup. Ct. Rep. 56.*

The Plaintiff's state that dismissing an action over valid objections were prejudicial and violative of guaranteed due process rights.Moreoer, Judge Smith noticed and incorporated outside materials and used those materials to support his order, without affording the plaintiff's notice or an opportunity to explain those materials.

**DUE PROCESS VIOLATIONS IN JUDGE SMITH'S ORDER, ADDING OUTSIDE EXTRINSIC MATERIALS WITHOUT ALLOWING PLAINTIFF'S NOTICE OR AN OPPORTUNITY TO EXPLAIN THE MATERIALS, WHICH WERE CORE TO THE PLAINTIFF'S ACTION.**

Judge Smith cited Greene v R.I 398 f3d 45, a 2005 First Circuit holding, and stated on page 3 footnote 4 in quotations " *not only the complaint but also matters merely incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment"*

The Plaintiff's state that this is an intentional misstating of Greene, to rely on that quote without including the First Court's ruling regarding the issue of incorporating extraneous matters, as Greene states,

*We have interpreted Rule 12(b) as requiring some type of notice as a condition precedent to a court's conversion of a motion to dismiss into one for summary judgment. See, e.g., Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998), cert. denied, 526 U.S. 1023 (1999). Withal, "this circuit does not mechanistically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment. Instead, we treat 'any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy.'"*

As the Plaintiff's were not given notice by Judge Smith that he was performing his own independent discovery, and incorporating outside materials, without giving the Plaintiff's a an opportunity to respond to their accuracy, the Plaintiff's rights protected to due process was violated. It is without peradventure based on the Plaintiff's did not have any notice as to materials that Judge Smith considered and incorporated into his Memoranda and Order dated 3/10/2006, is a wholly unfair and prejudiced the Plaintiff's due process rights, as well as being violative of the First Circuit's holding in Greene.

Whereas the plaintiff's were attacking as void the very orders inclusive in the materials cited by Judge Smith, and the well settled law in Williamson v Berry; 8 How. 495, 540 12 Led 1170, 1189

***The jurisdiction of any court exercising authority over a subject 'may be inquired into in every other court when the former are relied upon and brought before the latter by a***

***party claiming the benefit of such proceedings, and the rule prevails whether 'the decree or judgment has been given, in a court of admiralty, chancery, ecclesiastical court, or a court of common law, or whether the point ruled has arisen under the laws of nations, the practice of chancery, or the municipal laws of States' [Emphasis Added]***

While it is true that the Superior Court and Family Court of R.I., had subject matter jurisdiction of the underlying cases, and personal jurisdiction over the plaintiff's; Judge Smith was aware that the state court judgments were being collaterally attacked for want of due process, and that several of the orders were fraudulent representations of the hearings. Judge Smith knew, or reasonably should have known, that a court loses jurisdiction when gross fundamental guarantees of due process are violated, and the court loses jurisdiction to enforce any order that is fraudulent. Judge Smith knew, or reasonably should have known as a U.S. District Court Judge, that cited the 1st Circuits holding in Greene, that his order stating that the 1st Circuits holding in Greene allowed a Motion to Dismiss to be granted without giving notice to the plaintiff's and converting the motion into one for summary judgment. The holding seems quite clear that for Judge Smith's finding to be legally firm and not violate the plaintiff's rights protected by the V Amendment, " *the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy.",* would mean that the plaintiff's would have had to receive notice of what outside materials Judge Smith incorporated. The District Court docket shows the last entries before Judge Smith's orders, to be Bergquist filing a 3rd Motion to Dismiss; that the plaintiff's never received.

Moreover, the Plaintiff's did not have any notice of the R.I. Supreme Court order dated 10/20/2004, referenced by Judge Smith. Carol did not even know any order entered until Judge Smith's decision was mailed to the Plaintiff's. Carol's attorney did not receive the order and correspondence from Bergquist indicates that he just received the

order. Carol did not have an opportunity to present the actual order of the R.I Supreme Court, which did not address multiple IV Amendment claims which were claimed in the parallel actions in State and Federal Court. Because Judge Smith, on his own initiative, only relied on a docket sheet of the Supreme Court, and not the actual order, Judge Smith unfairly prejudiced the Plaintiff's. Carol's claims regarding the 3/24/2004 hearing, in which Judge Smith relied on the docket sheet for disposition, were parallel claims (see Exxon Mobile) of IV Amendment claims and the order of 10/20/2004 by the R.I Supreme Court did not even acknowledge Carols federal claims, let alone adjudicate them.

> *Justice Scalia, In* **Pennzoil Co. v. Texaco, Inc.**, *481 U.S. 1. Furthermore, I reject Pennzoil's contention that District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), forbid collateral review in this instance. In Rooker and Feldman, the Court held that lower federal courts lack jurisdiction to engage in appellate review of state-court determinations.*

Judge Smith's 3/10/2006 Memoranda and Order, without notice to the Plaintiff's, considered and incorporated a Supreme Court order dated 4/9/2004 of the R.I Supreme Court in the Cesario/Bergquist Appeal ( **EXHIBIT 1** ), however, Judge Smith either intentionally or inadvertently, and without notice to the plaintiff's, misstated the accuracy of the 4/9/2004 order as to prejudice the Plaintiff's appeal. The actual order, discussed in detail on pages states that the RI Supreme Court would change the decision '**AS DECIDED IN THE OPINION**". In the opinion which was dated 2/9/2004, the R.I Supreme Court did not even acknowledge valid First and Fourteenth Amendment claims. By omitting " as decided in the opinion" Judge Smith has prejudiced Cesario's appeal because it unfairly assumes that Cesario's claims were litigated on the merits, when they were passed. It is without peradventure, if the R.I Supreme Court did not even acknowledge the Constitutional claims, it could not adjudicate them. Simply restated, The

plaintiff's were not given any notice of Judge Smith, on his own, seeking and obtaining outside exhibits, misrepresenting them in his Memoranda and Order ( **EXHIBIT 2**) dated 3/10/2006, and then using those exhibits prejudicially against the Plaintiff's without giving the Plaintiff's a chance to respond to them.

Judge Smith ERRATA, states on footnote 6, on page 7, of the Memorandum and Order signed on 3/10/2005, should read as follows:

> *6* The State Supreme Court inability to resolve all of Cesario's procedural due process claims due to his failure to provide the relevant transcripts, see Bergquist 844 A.2d at 104-110, does not create jurisdiction in this court, as those due process claims are "inextricably intertwined" with the issues that the Court did resolve, namely the validity of the Superior Court hearings. See Picard v members of the Employment Ret Bd 275 F 3.d 139 145 (1st Cir 2001) . Moreover, in the course of denying rehearing the State Supreme Court reviewed pertinent transcripts belatedly provided by Cesario and noted that nothing in them changed the result. See Appendix n 2. infra.

***The last sentence of the R.I Supreme order dated 4/9/2004 stated " nothing contained in the transcripts would cause us to alter our prior determination as decided in the OPINION"*** *The opinion of the R.I Supreme Court, dated 2/9/2004, did not acknowledge federal claims, or passed on deciding them.*

***Matthews v. Eldridge***, 424 U.S.319, 348-49(1976)(due process requires not just a mere opportunity to be heard; rather, such opportunity must be meaningful").

*U.S Cont Amed. 5. Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. Earle v McVeigh, 91 US 503, 23 L Ed 398.*

In Summary, the court's failure to comply with Greene, supra, the Plaintiff's were denied V Amendment protections to due process and were prejudiced by Judge Smith's actions of considering and incorporating outside materials without complying with Green supra and giving notice and converting the Motion to Dismiss into a Motion for Summary Judgment; or giving the Plaintiff's any notice that outside materials would be considered.

The materials relied upon by Judge Smith, clearly misrepresented the basis of the Plaintiff's complaint, that the state orders the plaintiff's are seeking to be vacated did not achieve finality, either because the orders were fraudulent or the process of entering the orders were so repugnant to the IV Amendment that they violated the Plaintiff's **BASIC CONSTITUTIONAL RIGHTS**, to notice and an opportunity to be heard. Judge Smith, should have known that affording the Plaintiff's notice and an opportunity to explain his prejudiced entertaining of extrinsic materials is an **absolute right of due process** protected by the IV Amendment.

CAREY v. PIPHUS, 435 U.S. 247 (1978) ***What the Constitution does require is "an opportunity . . . granted at a meaningful time and in a meaningful manner," Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (emphasis added), "for [a] hearing appropriate to the nature of the case," Mullane v. Central Hanover Tr. Co., supra, at 313. The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. 4 That the hearing required by due process [401 U.S. 371, 379] is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, 5 except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. 6 In short, "within the limits of practicability," id., at 318, a State must afford to all*** *individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause.*

***Rivet v. Regions Bank, 522 U.S. 470, 474-77*** *(1998)See Commissioner v. Sunnen, 333 U.S. 591, 597 (1948) ("The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.").*

**RESTRAINING PLAINTIFF'S PRO SE FILING NEW ACTIONS WITHOUT NOTICE OR AN OPPORTUNITY TO BE HEARD IN VIOLATION OF RIGHTS PROTECTED BY IV AMENDMENT OF THE UNITED STATES AND IN VIOLATION OF THE 1ST CIRCUIT'S HOLDING IN** *Cok v. Family Court of Rhode Island, 985 F.2d 32, 35 (1st Cir. 1993) (per curiam).*

The Court clearly erred, as the Plaintiff's were not afforded a hearing, notice or an opportunity to oppose the order *Cok v. Family Court of Rhode Island, 985 F.2d 32, 35 (1st Cir. 1993) (per curiam). Any order must comply with due process and afford a litigant notice and a reasonable opportunity to be heard.*

## SUBJECT MATTER JURISDICTION

**Whereas, Quackenbush states that District Courts are completely foreclosed from being "permitted to use the doctrine of abtebntion from dismissing a suit", and state actions are ended, the plaintiff's suit invoke the jurisdiction of the Court through claims of due process violations, the Court does not have discretion to decline jurisdiction.**

Quackenbush v Allstate 517 US 706(1996).
*We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. See, e.g., Colorado River, 424 U.S., at 821 ("[F]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them"); England v. Louisiana Bd. of Medical Examiners, 375 U.S. 411, 415 (1964) ("`When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction'") (quoting Willcox v. Consolidated Gas Co., 212 U. S. 19, 40 (1909)); Cohens v. Virginia, 6 Wheat. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not").... Otherwise, we have applied abstention principles to actions "at law" only to permit a federal court to enter a stay order that postpones adjudication of the dispute*, ***not to dismiss the federal suit altogether***. *See, e.g., Thibodaux, 360 U.S., at 28 -30 and the power to dismiss recognized in Burford represents an "`extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'*

*Justice Scalia, concurring. I join the opinion of the Court. I write separately only to respond to Justice Kennedy's concurrence. Justice Kennedy, while joining the opinion of the Court, says that he would "not rule out . . . the possibility that a federal court might dismiss a suit for damages in a case where a serious affront to the interests of federalism could be averted in no other way," post, at 1-2. I would not have joined today's opinion if I believed it left such discretionary dismissal* ***available. Such action is foreclosed, I think, by the Court's holding, clearly summarized in the concluding sentences of the opinion: "Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.*** *Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the Burford doctrine." Ante, at 24-25.*

The State was given every opportunity to decide federal claims, both the Family Court and the Superior Court denied the plaintiff's an opportunity to be heard on 11 motions to vacate or amend fraudulent orders. Cesario presented transcripts to the Supreme Court timely, and in accordance with the rules and procedures at the time his motion for rehearing was heard. Moreover, the 10/22/2001 transcript indicates that Judge Fortunato took the transcripts of 8/20/2001 and 8/31/2001 into the record, as he reviewed them

during a court recess.

On thing is very clear, the Supreme Court of R.I. can fabricate and misrepresent at will, and get away with it. For instance, in Cesario's opinion decided on 2/9/2004; the restraining order was not permanent, it was preliminary, there was no love rectangle, or triangle, the disciplinary complaint against Rioles was after the divorce ended and was for threatening a mother with a motion to have her children taken away if she appeared in Cesario's trial, Fortunato took the transcripts dated 8/20/2001 and 8/31/2001 and they were exhibits, Berqguist's purported motion to adjudge Cesario in contempt has never been docketed, the Writ clearly states on 5/31/2001 Cesario did not receive notice, and on and on. Moreover, Cesario complied with Article I, Rule (b)(1) in providing the transcripts to the Supreme Court. The Supreme court clearly stated that they declined Cesario's invitation to decide due process claims, and they certainly did not entertain them. Therefore, the R.I Supreme Court have passed on adjudicating the merits of Cesario's presented federal claims. .

**ROOKER –FELDMAN DOCTRINE**

Judge Smith cites the Rooker- Feldman doctrine as a jurisdictional barrier to pursue the claims. However the Supreme Court's holding in Exxon supra,

ion is properly conferred.

The ROOKER FELDMAN doctrine requires the District Court to assume jurisdiction of the plaintiff's claims. The Court does not have any discretion in this action, except to assume jurisdiction.

*U.S v Will 449 US 200 The concept of the absolute duty of judges to hear and decide cases within their jurisdiction revealed in Pollack. supra, and Philadelphia v. Fox, supra, is reflected in decisions of this Court.*

The Supreme Court 's holding in, ***Exxon Mobile Corp v Saudi Basic Indus Corp. 544 U.S. 280, 125.(2005)*** is the law of the land, and it states:

*Held:* **Nor does §1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction and state law determines whether the defendant prevails under preclusion principles.... When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court... Preclusion is not a jurisdictional matter.**

Assuming argumendo, the State Courts adjudicated properly presented federal claims, which they did not; the Supreme Court's holding in ExxonMobile cannot be any clearer. The court dies not have any discretion to decline jurisdiction. Moreover, the plaintiff's claims are separable, independent and collateral of any claims purportedly adjudicated on the merits, whereby the district court need not reach the merits of the issues intertwined in the hearings. Furthermore, failing to raise a constitutional claim when a court has authority to enter a judgment, will not preclude an independent and collateral action against a void, as opposed to reversible or voidable, act. Void judgments are not judicial inquires, as a court is completely deprived of jurisdiction and authority.

**PENNZOIL CO. v. TEXACO INC., 481 U.S. 1 (1987) Justice Marshall** *While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is* ***inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.*** *Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.*

Judge Smith must be aware, that if a judgment is void, whether based on the judgment being completely fraudulent, or so repugnant to guaranteed due process violations of the IV Amendment, it is without peradventure that a federal claim could be intertwined to the extent that a state court wrongly decided the issues before it.

***VERIZON MD. INC. v. PUBLIC SERV. COMM'N OF MD.***
. *Cf.* United States *v.* Fausto, *484 U. S. 439, 448-449 (1988). Indeed, it does not even mention subject-matter jurisdiction, but reads like the conferral of a private right of action* ***("[A]ny party aggrieved by such determination may bring an action in an appropriate Federal district court," §252(e)(6)). Cf.*** **Steel Co., supra,** ***at 90-91 (even a statutory provision that uses the word "jurisdiction" may not relate to "subject-matter jurisdiction"); see also*** **Davis *v.* Passman,** ***442 U. S. 228, 239, n. 18 (1979).***

Judge Smith mischaracterized the plaintiff's federal claims in the above titled complaint. The Plaintiff's point Judge Smith to the complaint where some specific federal claims have been clearly made. Page 1 of the Plaintiff's complaint

Whereas the plaintiff's are contesting that the state court judgments are not final, as to claims protected under the IV Amendment of the United States Constitution and are furthermore permissibly being collaterally attacked, under ExxonMobile, supra, the plaintiff's due process rights to a fair and impartial hearing as guaranteed by the IV Amendment has been violated by Judge Smith dismissing the case with prejudice without the Plaintiff's reaching the merits of their federal claims. There has not been any evidence presented that disputes the Plaintiff's claims. Judge Smith has not provided any evidence that the Plaintiff's federal claims have been decided on the merits. Bergquist has not provided any evidence that Judge Smith declined jurisdiction over the plaintiff's federal claims, and Judge Smith wholly misstated the claims in his memoranda and order signed on 3/10/2003

Wherefore, the plaintiff's will provide even more evidence that their claims are valid and cannot be disputed. The Court is already in possession of the motion to adjudge Cesario in contempt in which the fraudulent order entered restraining Cesario from contacting the children, the motion does not seek relief for Cesario to be restrained. The Court is in possession of the transcript of 2/28/2002 in which Judge Fortunato rendered his bench decision. The court is in possession of Superior Court Procaccini's bench

decision of 5/1/2004, where Judge Procaccini found the order restraining Cesario from contacting the minors, which was prepared by Bergquist, to be not credible.

*Cf. Raley v. Ohio, 360 U.S. 423, 436 -437 [460 U.S. 462, 483] 1959)*
*On appeal, the Supreme Court of Ohio, though affirming the convictions, abandoned reliance on the theories [360 U.S. 423, 434] under which the appellants were found guilty by the courts below*
*("There can be no question as to the proper presentation of a federal claim when the highest state court passes on it. . . . We think this sufficient here to satisfy the statutory requirement that the federal right sought to be vindicated in this Court be one claimed below.*

The Supreme Court, in Raley, further stated, that despite pleading claims in the appeal improperly, the Supreme Court on its own motion converted the appeal to a Writ of Certioria and stated: *But since various rights, privileges and immunities under the Federal Constitution were claimed below, 28 U.S.C. 1257 (3), we consider the appeal papers as petitions for certiorari, and in view of the public importance of the questions presented, grant certiorari. 28 U.S.C. 2103.*

For the sake of clarity and order, the plaintiff's will list court documents proving the issues were raised below, although fraud and due process violations need not to have been raised below. Theses documents prove without a doubt that the plaintiff's attempted to have their federal questions adjudicated by the State.

**THE R.I. SUPREME COURT DID NOT EVEN ACKNOWLEDGE PRESENTED FEDERAL CLAIMS, THE R.I. SUPREME COURT CLEARLY DID NOT DECIDE FEDERAL CLAIMS**

(**EXHIBIT 3**) Carol's CERTIFIED Supplemental 12a Statement dated 12/28/04 which stated on page 1 clearly claimed in question #1, Was the order transferring placement on 3/24/2004 a violation of the Petitioners Due Process rights as protected by the IV Amendment and the due process clause of the United States. Carol's Statement further claimed federal claims including that there was not a valid motion to change placement before the court, that the motion before the court was a legal nullity that would not have given her notice, and that Carol was not allowed to call witnesses and was denied a fair

hearing. Moreover, the Statement clearly states a restraining order was placed on her without notice or a right to be heard.

**** The R.I Supreme Court in a footnote on the 10/20/2005 order stated that after a cursory view of the file they found a Motion for a Change of Placement and Other Relief. That motion was set on the calendar by Bergquist to be heard in September of 2002 and was disposed of in Carol's favor on 12/28/2002. The R.I Supreme Court order did not even acknowledge Carol's federal claims. The certified transcript of Family Court (**EXHIBIT 4**) clearly shows that there were no other valid change of placement motions docketed with the Family Court, Carol was denied notice and an opportunity to be heard. (**EXHIBIT 5**) Carol's CERTIFIED Final Supplemental Brief, dated 4/3/05, which contained the heading Violations of IV Amendment and the R.I Due Process Clause.

(**EXHIBIT 6**) Cesario's CERTIFIED Brief in case # 03-55-A, dated 2/25/2003 which clearly stated that the restraining order regarding Cesario on the minors was a due process violation. The record shows that that Cesario was not given any notice, or an opportunity to oppose the order. After Cesario II and the Supreme Court opinion of 2/9/2004, it was discovered that Bergquist prepared the order. Moreover the order was not part of the bench decision of 2/28/2002, whereby the order is fraud.

(**EXHIBIT 7**) Cesario's CERTIFIED Petition For a Writ Of Certioria, dated 8/28/2002, Clearly the petition orders entered were in violation claims V and IV Amendment

**THE SHOCKING CHANGE OF PLACEMENT OF MINORS DESPITE THE RECORD BEING BEREFT OF ANY MOTION ON THE CALENDAR FAMILY COURT HEARINGS** 3/24/2004

There is nothing more sacred than parental rights, and denying those rights of a parent and child. Judge Mutter changing placement of the Carol's children without notice, and opportunity for Carol to be heard in opposition to such a judgment, or the outright denial of her to present witnesses and admit evidence obviously should "shock the conscience" of federal Court's. Plaintiff's enter the transcript Exhibit of the hearings dated 2/4/2004, 2/4/2004, 3/10/2004 and 3/24/2004. (**EXHIBIT 8**). While the case Kramer supra, about to be cited by the plaintiff's are not identical as to the claims, the Supreme Court's holding in Kramer certainly commands the courts respect as to the care state court's should maintain when determining the merits of any hearing affecting a child/ parent

relationship. The record is clear that the Bergquist had a contempt motion before the court, one of 16 he had filed threatening Carol. Carol was never found to be in contempt. Carol, from the outset of the divorce, had placement of the children. The record is clear Bergquist caused the divorce by having an affair with the neighbor. The record is clear Bergquist was abusive, had been arrested for assaulting Carol, and had continually tried to interfere with Carol's private life. The record is clear that Bergquist was instilling fears into the minor children regarding Cesario, (see **exhibit 12,11**). Judge Mutter, sui juris changing placement of the children without affording Carol due process of law is obscene. See exhibit 11 previously filed;

***Insuffiency of Notice. The motion for a change of placement was not properly before the court. The court did that sui juris based upon your testimony that you were aware that there was a Superior Court order in effect that Mr Cesario was not to be in the presence of the children. And you ma'am, said from the stand on that date not only were the children in his presence, but you wanted to introduce video's and pictures of what a wonderful time they were all having together. And on the basis of that I found you unfit and changed the placement of the children from you to the father.***

**SANTOSKY v. KRAMER, 455 U.S. 745 (1982),** a) ***The fundamental liberty interest of natural parents in the care, custody, and management of their child is protected by the Fourteenth Amendment, and does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. .... The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be `condemned to suffer grievous loss.'" Goldberg v. Kelly, 397 U.S. 254 . 262-263 (1970),***

Whatever inordinate fears Bergquist has, they do not stem from the plaintiff's trying to displace paternal rights. Throughout all of these proceedings there has never been an allegation that the plaintiff's said anything negative about Bergquist to the children. Bergquist's deplorable behavior in the presence of the children has already been documented; however, since the 3-24-2004 void order has purportedly entered Bergquist has used the order to defraud the State of R.I by placing the children on Ritecare, in violation of State Law as the children already have health insurance; but Bergquist was able to add himself to obtain free health insurance. (**see exibit 9, one of the documents of proof card**).

What is more shocking is that the youngest daughter, Katie, age 7, sleeps with Bergquist

in "his" bed. She states that she does not want to sleep there and would rather stay at her grandmothers or aunts. Carol cannot get any relief or have any confidence ion State Court's as they continually fail to hear her motions, and allow orders that do not reflect the bench decision to enter.

The plaintiff's complaint was not asking this court to make a custody determination. The plaintiff's complaint stated that there was not a valid change of placement motion before the court, as there was not a valid change of placement motion before the court, an order granting a change of placement motion is void. Moreover the Plaintiff's allege that Carol was not allowed a fair hearing, she was not allowed to present witnesses and evidence which is a fundamental right protected by the United States Constitution

The facts are as follows:

The children, on Bergquists motion, conducted an en camera interview with Judge Mutter on 1/27/2004. The only motion Bergquist had before the court on 1/27/2004 was a motion to adjudge Carol in contempt. This was Bergquits's 14th motion, attempting to adjudge Carol in contempt; none were ever granted. On 1/29/2004, Bergquist filed an untitled Motion, seeking a change of placement and a restraining order on Cesario. That motion was a legal nullity, and could not be considered by the court. It did not comport with statutory Family Court procedures and the motion was void on its face. Carol's attorney tried to dismiss the motion. He was denied. The court relied on the children's testimony prior to the motion, which was a legal nullity, from being filed. Carol was denied the right to call witnesses, including the children, and to present evidence.

On 3/10/2004, Bergquist introduced the Supreme Court opinion dated 2/9/2004, which affirmed a void, fraudulent restraining order in the Superior Court, regarding

Cesario and the minors. On 3/10/2004 and 3/24/2004 the testimony of Carol revolved around the Superior and Supreme Court action between Bergquist and Cesario. of which Carol was not a party to. Carol informed Mutter that Cesario would testify to the Superior and Supreme Court order. Mutter repeatedly cut off Carol and her attorney.

Carol did not receive any notice that she was being charged being unfit mother because she was living with her husband and her children; and that somehow she was with assisting Cesario in violating a void/ fraudulent order prepared by Bergquist.

The Supreme Court order of 10/20/2004 did not address Carol's due process claims. The Supreme Court only addressed Carol's claims that Mutter acted arbitrarily. The court found "no reversible error". A IV Amendment due process claim so great as to deprive the court authority to enter a judgment renders a hearing VOID, not reversible. Carol was not allowed witnesses, was not allowed to examine the children as direct witnesses, was not allowed to place video's into evidence. The Supreme Court did not answer due process challenges that the children testified before the "nullity" Motion was placed. Whereas, Carol is seeking to vacate a void judgment for want of due process of fundamental rights GUARANTEED by the IV Amendment of the United States Constitution, and she is not asking this court to make a custody determination, this Court does not have discretion to decline to hear Carol's claims, and slight the United States Supreme Court's holdings in ExxonMobile and Ackenbrant.

Moreover, it is well settled law that anytime a judgment in one court, is being used to gain an advantage in another court; the validity of that judgment can be attacked at any time. Why would Carol have any fear about the void order prepared by Bergquist in Superior Court. The plaintiff's are confident that Judge Smith is aware that R.I law,

allows collateral attack on void judgments.

*KEY v. WISE . 454 U.S. 1103 (1981) The significance of a state court's acting in an area of exclusive federal jurisdiction is such that we have held that even a contempt conviction for violation of a state court order in a matter pre-empted by federal law may be void and of no effect. See In re Green,* 369 U.S. 689, 692 , *1116 (1962).*

On 10/20/2004, the R.I Supreme Court appears to have entered an unpublished order, to which the parties never received notice until March of 2006. The first page of the order states that Carol contends (1) that the Family Court's decision to grant custody of the children to Bergquist was arbitrary and capricious, and (2) that the decision deprived her of due process because she was denied a full hearing. The order further states that the Supreme Court discerns no reversible error. The R.I Supreme Court has that discretion, although Bergquist was not given custody; the Family Court order of 3/24/2004 was a placement order; not a custody order. Moreover, it was based soley on the fact that Mutter found Carol unfit based on Carol allowing Cesario ( her husband, who had been living with the children) to come into contact with the children despite knowing about a Superior Court order on Cesario, which was upheld in the Supreme Court.

On 2/3/2004 Bergquist rested on the children's en camera interview. Bergquist only motion before the court was repetitive contempt motions. Carol had 4 motions on the calendar. The transcripts prove Carol had witnesses and video's that she wanted to call. After Judge Mutter sua sponte restrained Carol from having Cesario in the presence of the children until the Superior court matter is taken care of. Berguist's attorney jumped up and stated he had a change of placement motion before the court. Mutter granted that motion. There was not a valid change of placement motion before the court. Carol was not allowed a fair hearing to present witnesses. The children had been brainwashed since and bullied into lying by Bergquist since 2001. See DCYF report (**exhibit 10**) Judge Voccolla partial decision 12/18/2002 (**EXHIBIT 11**) . The transcripts show that Carol not only had witnesses, but it was agreed she could put in video tape as evidence.

***Due process, at a minimum, requires a person to know what charges are against them and then have an opportunity to meet the charges, with explanation and witnesses, whether civil or criminal. CHAMBERS v. STATE OF FLORIDA, 309 U.S. 227 (1940)***

Standard of Revue.. The District's court's dismissal is in clear violation of the U.S Supreme Court's holding in Rooker-Feldman. Abstention is in clear violation Of Ackenbranndt; abstention is never grounds to dismiss a suit. Carol had IV Amendment claims, not only was the illegal change of placement motion precluded from being heard by statutes, and rules of procedures, but Carol was not allowed to call witnesses; denying her rights.

1. Bergquist filed a pleading called Motion, (**exhibit 21**) discussed later, on 1/31/2004. That motion did not comport with the Rules of Procedures and was a legal nullity.
2. The transcripts conclusively prove that Carol had many witnesses, and that she planned on calling them to testify.
3. Carol was not given notice or an opportunity to oppose judge Mutter restraining Carol from having Cesario (her husband) in the presence of the children. Bergquist only valid motion before the court was a motion to adjudge carol in contempt, which were not granted.

In reviewing 1 and 3 Carol's guaranteed rights protected by the IV Amendment were clearly violated. Moreover, these federal claims of due process were presented to the R.I Supreme Court is court prior to adjudication by the Supreme Court, and the Supreme Court did not acknowledge or address Carol's federal claims. Moreover, void orders are subject to collateral attack at any time. It is without peradventure that a judge cannot enter a change of placement motion in violation of statutes; and admit that he did it on his own.

4. Allowing evidence of the children's testimony, prior to an illegal motion to change placement was filed may be a procedural error reversible on appeal.
5. On 3/10/2004, Bergquist was allowed to enter a Supreme Court order as evidence in violation of the rules, as he had rested his case and the rules of cross examination prohibited him from entering evidence.

4. and 5. are errors available for reversal by appeal; there is a distinct difference from being denied due process of law; and errors reversible on appeal.

**Carol did not receive notice of the R.I. Supreme Court order that entered until 3/21/2006. The only reason Carol received notice was because she was put on alert by Judge Smith's memoranda. The plaintiff's had continually called the Supreme Court clerk and checked the internet for an opinion; the clerk, up until January had told the plaintiff's no opinion was rendered. This denial of notice of the Supreme Court order dated 10/20/2005 has caused Carol to lose her 90 day appeal**

window, and the 60 day extension that the Supreme Court clerk can grant. The Plaintiff's have been advised by the Supreme Court clerk that they can file one petition for a Writ out of Time, and to include as many documents as possible, including this motion, Supreme Court post marked envelopes, Carol's pleadings to the Supreme Court, pictures, the motion to recuse Judge Smith, the motion to recuse Judges Suttell and Goldberg, the order of 10/20/2005, transcripts and video's and affidavits. That does not guarantee the Supreme Court will hear Carol's case. As the District Court now has absolute evidence that Carol did not receive notice of a change of placement motion, the record is wholly bereft of a legitimate motion for a change of placement motion being filed or docketed, that Mutter admitted in court he changed placement "sui juris" ; that Carol was precluded from calling witnesses; that Carol repeatedly pled IV Amendment violations; and that the Supreme Court order dated 10/20/2005 did not acknowledge or adjudicate any of Carol's federal claims; jurisdiction lies squarely with this court.

Moreover, Carol's attorney Lembo objected to the order prepared by Bergquists attorney; that objection was heard and granted before Mutter on on 3/26/2004. Bergquist's attorney presented another motion, which the parties did not agree. Finally, attorney Christopher Friel, presented an order that correctly presented the bench decision. The bench decision was the sole reason Carol was found unfit was because she knew there was a restraining order on Cesario that was affirmed by the Supreme Court. That order remains in the Family Court file, stamped by the clerk, and unsigned.

**FRAUD ON THE COURT IN THE SUPREME COURT ORDER DATED 10/20/2004**

As in the Cesario opinion, the R.I Supreme Court continues to knowingly commit fraud on the court.

1. The defendant did not have a proper change of placement motion before the Court, the entire record of the case is bereft of Bergquist filing any motion for custody, Bergquist and Carol have always had "joint custody".
2. The 10/20/2004 order states that on 6/13/2004 Carol filed a motion to vacate the purported "restraining order" , this is true, the motion was never heard and therefore could not have been denied as the Supreme Court fraudulently states.
3. The family court never reaffirmed the restraining order on Carol, except on 12/18/2002 Judge Voccolla stated that there is not enough change in circumstance to vacate the order. The order was void. Moreover, Judge Voccolla heard evidence that Berguist only provided one bed for 3 girls, unlawfully seatbelted the children 2 to a seat, refused to let the DCYF caseworker testify that Bergquist was instilling murder fears in the children and was coaching the children what to tell judges, Voccolla would not let the Guardian Ad Litem testify, and heard evidence of how abusive Bergquist was, and of his arrest for assaulting Carol. The plaintiff's paid $2300.00 for the transcripts and appealed the order, the Supreme Court sat

**on the case and never heard it. Moreover, Voccolla found Bergquist obsessed with Cesario and found that he destructively, and in the presence of the children, conveyed his anger at Carol. Yet she toolk no action to prevent Bergquist from that behavior.**

**4. The Supreme court referenced the in camera interview with the minors, which the children all parroted the same story, that they were afraid of Cesario. Yet the Supreme Court received evidence that the children were playing with Cesario the very next day, 1/30/2004. Moreover, the Supreme Court had evidence that Judge Proccaccini found the children's testimony wholly not credible, when the children were presented with pictures and Judge Procaccini viewed video tapes and listened to witnesses.**

**5. Moreover, the Supreme Cort committed fraud when it stated that the hearing justice did not indicate with a great deal of specicifity the factors on which he relied in making his decision about placement. This is absolute fraud, the hearing ended on 3/24/2004 with this exchange, page 24, the end of the hearing.**

*Mr. Lynch: we have filed a motion for a change of placement to my client because of the repeated continued presence of John Cesario. Your honor, when we were here before you in this court on march 10th that supreme Court decision, specifically page 12,paragraph 2, was read in open court several times. This witness read it herself. Yet on March 10th, the very day that was read to her, within an hour she was at that property with John Cesario, knowing full well that these children had come before the Court and stated that they were afraid of John Cesario. And I would ask that these children until further order of the court, be allowed to, and since she has continued to do this in the face of admonition after admonition, that these children be placed with their father.*

*The Court: The Court's going to make that order, that the children be placed with the father...*

*Mr. Lembo: (Carol's lawyer) I haven't completed.. CUT OFF BY MUTTER*

The Court: *I made the ruling Mr Lembo, based on the evidence. There is already a restraining order. The very fact that she knows there a restraining order and she can hedge as much as she wants, she knows there is a restraining order which has been upheld by the Supreme Court, and in view of that, she has assisted Mr Cesario in coming into contact with the children, which in the opinion of this court, makes her unfit to have the children at this point in time.*

**The Supreme Court only considered whether Judge Mutter abused his discretion, which he clearly did. The order did not consider any of the IV Amendment claims made by Carol.**

**FAMILY COURT VOID ORDERS**

**9/17/2001** Fraudulent Decision Pending Final Judgment. This court has evidence (transcript 9/17/2001) that the Decision Pending Final Judgment was not only fraudulent, it was timely objected to ( **EXHIBIT** 12) Carol's Timely Objection (**Exhibit 13**). That objection prohibited the order from entering until either a hearing or stipulation allowed entry. (not discovered until after Cesario I)

**11/6/2001** Next, a hearing was Court reporters statement that there is nothing in the record on 11/6/2001, there is no record of a hearing, as none took place ( **EXHIBIT 14** Cesario I)

**12/6/2001** Next, a hearing was scheduled for 12/6/2001, Carol was pressured into initialing a stipulation; which was never signed by a judge. ( **EXHIBIT 15**) That stipulation disappeared and was discovered in Attorney Lynch's possession in May of 2004. The stipulation never entered as an order. ( **Exhibit 16)** court reporter statement that there is nothing on the record 12/6/2001) Not discovered until after Cesario I) Carol immediately called Rioles and told Rioles that she wanted to go before Judge Bedrosian because Carol was pressured into initialing that stipulation. Rioles was instructed not to enter the stipulation. Judge Bedrosian did not sign the stipulation, it remains a legal nullity.

**12/7/2001** Next, on 12/7/2001 Carol's attorney entered a fraudulent order. The order stated that on 12/6/2001, after coming before Judge Bedrosian 4. that the restraining order shall remain in full force and effect on John Cesario… ( the restraining order in Family Court was modified, on 9/17/2001), by Judge Bedrosian to only unrelated males and females). The order also fraudulently stated that the final judgment shall enter on December 18th 2001 and shall incorporate this order and the stipulation executed by the parties on 12/6/2001. No hearing ever took place before Judge

Bedrosian, the initialed stipulation/order, was never signed by Judge Bedrosian, and Carol immediately called Rioles and stated she was bullied, and coerced, and that Carol wanted to go before Judge Bedrosian. Attorney Lynch entered the Decision Pending Final Judgment even though it was objected to and could not enter as a matter if law ( **EXHIBIT 17 order** ). This Court has evidence that the stipulation (stipulations of 12/6/2001 and 12/07/2001) entered on 12/06/2001 is fraudulent. There was no hearing scheduled on 12/07 2001. Rioles took the stipulation to a different judge than was assigned to the case.

**12/18/2001** Next, on 12/18/2001 a fraudulent final judgment entered which stated that the Decision pending Final Judgment and the stipulation of 12/7/2001 was incorporated into the final decree. The decree was fraudulent. ( **EXHIBIT 18** final judgment) ( Exhibit RR court reporters signed statement that there was nothing on the record in the Bergquist matter on 12/18/2001) This Court has evidence that the Final Judgment entered on 12/18/2001 is fraudulent as it states that Decision Pending Final Judgment and Stipulation were merged and incorporated into the Final Judgment. ( not discovered until after Cesario I)

It is without any peradventure or second guessing that if there was not a hearing, or stipulation, merging and incorporating the Decision Pending Final Judgment (which by law is a nullity) and the order of 12/7/2001 ( which is fraudulent and a nullity), then the Final Judgment is fraudulent.

This Court has evidence in the way of a docket sheet (**CERTIFIED DOCKET SHEET EXHIBIT 19**) and court reporters signed statement that no hearing took place between 9/17/2001 and 12/18/2001.

**Superior Court Hearings 5/31/2001 8/20/2001**

Cesario clearly stated that the hearings of 5/31/2001and 8/20/2001 was void as to lack of notice, on 10/22/2001. The record shows that Cesario did not receive notice of a contempt motion, the contempt motion was never docketed with the court, the contempt motion was never stamped by the clerk of the court. Cesario was tricked into appearing in court based on a subpoena duces tacem served upon him. The transcript proves Cesario did not waive his rights to notice. (vacation not claimed in Cesario I or heard on the merits).

**IN RE GREEN, 369 U.S. 689 (1962)** *We said in In re Oliver, 333 U.S. 257, 275 , that procedural due process "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented [369 U.S. 689, 692] by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or* explanation."

**COOKE v. U.S., 267 U.S. 517 (1925)** *Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed.*

*KEY v. WISE , 454 U.S. 1103 (1981) The significance of a state court's acting in an area of exclusive federal jurisdiction is such that we have held that even a contempt conviction for violation of a state court order in a matter pre-empted by federal law may be void and of no effect. See In re Green,* 369 U.S. 689, 692 *, 1116 (1962).*

Whereas, Cesario did not have any notice as to the contempt hearings of 5/31/2004 and 8/20/2004, so the hearings are void ab initio. Cesario did not waive his rights, he did not know he was a contempt hearing until after they proceeded, and he was never advised of any charges at the outset of the hearing.

* Plaintiff's note the Appendix to Order Dismissing Verified Complaint, which reads, contempt sentence reduced to time served conditioned upon continued injunction against contacting Bergquist and the Bergquist children.

There was not an injunction against Cesario from contacting the children, see order of 12/5/2005. There was not a no contact order against Bergquist. There was a mutual do not harass order.

**8/31/2001**

Fortunato purportedly restrained Cesario from contacting the minors, it was neither a purge of a civil contempt or an independent order. Cesario did not have notice, an opportunity to be heard or present witnesses. Moreover, Fortunato denied placing any order on 10/22/2001, and did not sign any order. Cesario did not have notice, nor was given an opportunity to be heard.

**WALKER v. CITY OF BIRMINGHAM, 388 U.S. 307 (1967** *We do not deal here, therefore, with a situation where a state court has followed a regular past practice of entertaining claims in a given procedural mode, and without notice has abandoned that practice to the detriment of a litigant who finds his claim foreclosed by a novel procedural bar. Barr v. City of Columbia, 378 U.S. 146 . This is not a case where a procedural requirement has been sprung upon an unwary litigant when prior practice did not give him fair notice of its existence. Wright v. Georgia, 373 U.S. 284, 291 .*

**12/10/2001**

Cesario clearly stated that there was not a valid order preventing him from contacting the Guardian ad Litem, so the order is void based on due process violations. Cesario never received notice that he was not allowed to contact the Guardian Ad litem, and in fact, was ordered to send her a check and give notice of the motion to report witness tampering1st So a contempt finding was violative of First and Fourteenth Amendment rights. The R.I Supreme Court passed on these claims. (not previously claimed in Cesario I)

**10/22/2001**

Cesario clearly stated that he had a right to subpoena a witness that was relative to his defense, as it is one of the fundamental rights of the American legal system. ( Not claimed in Cesario I)

*** Plaintiff's note the Appendix to Order Dismissing Verified Complaint, which reads, Cesario found in contempt for sending a threatening note to the GAL, and other documents.. There was no restraining order against Cesario from sending communication, and the communication was related to the GAL witness tampering with Cesario's witness.**

## 12/25/2002, 2/28/2002, 3/01/2002

Cesario was restrained and enjoined in violation of due process rights. Cesario did not receive notice, nor was given an opportunity to oppose a restraining order issuing preventing him from being in the presence of his stepchildren. Moreover, it was discovered after Cesario I,II and II that the order was a fraud. Fortunato never issued an order restraining Cesario from contacting the children, as the fraudulent order by Bergquist purports.

**8/22/2002** In violation of rights protected by the V and IV Amendment, Cesario had his property taken from him without due process of law. This court never made any decision on the merits, and in fact never accepted Cesario's complaint based on filing fees. For the reasons discussed in the preclusion chapter, the Court must make a determination on the merits.

**5/01/2004**

Cesario was not given an notice or an opportunity to be heard regarding restricting his pro se appearances. The only motion that Judge Procaccini stated he was hearing at the commencement of the trial, which began on 4/1/2004; was whether Cesario was in contempt of the Superior Court order, affirmed by the R.I Supreme Court, which enjoined Cesario from being in the presence of his stepchildren which he was living with. Procaccini found the order "not credible" .

**VOID JUDGMENTS ARE NOT JUDICIAL ACTS AND NEVER CAN REACH FINALITY**

***Matthews v. Eldridge,* 424 U.S.319, 348-49(1976)**(due process requires not just a mere opportunity to be heard; rather, such opportunity must be meaningful").

***U.S Cont Amed. 5,*** *Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. Earle v McVeigh, 91 US 503, 23 L Ed 398.*

*A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. Sabariego v Maverick, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal.*

*"A void judgment does not create any binding obligation. Federal decisions addressing void state court judgments include **Kalb v. Feuerstein (1940)** 308 US 433, 60 S Ct 343, 84 L ed 370; Ex parte Rowland (1882) 104 U.S. 604, 26 L.Ed. 861: "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be lopped off, if the power to do so exists." People v. Greene, 71 Cal. 100 [16 Pac. 197, 5 Am. St. Rep. 448]. "If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void."*

(1 Freeman on Judgments, 120-c.) *An order that exceeds the jurisdiction of the court is void, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue. (See Rose v. Himely (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877) 95 US 714, 24 L ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 l ED 897; Windsor v. McVeigh (1876) 93 US 274, 23 L ed 914; McDonald v. Mabee (1917) 243 US 90, 37 Sct 343, 61 L ed 608.*

*"If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void." (1 Freeman on Judgments, 120-c.) "A void judgment is no judgment at all and is without legal effect." (Jordon v. Gilligan, 500 F.2d 701, 710 (6th Cir. 1974))*

***"a court must vacate any judgment entered in excess of its jurisdiction."(Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972).).***

***"A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere. Pennoyer v. Neff, 95 U.S. 714, 732-733 (1878)."*** *[World-Wide Volkwagen Corp. v. Woodson, 444 U.S. 286 (1980)]*

***Scheuer v Rhodes 416 U.S.232*** *"when a state officer acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.*

***Howlett v Rose 496 U.S. 356 (1990)*** *Federal Law and Supreme Court cases apply to state Court cases; held: Under the Supremacy Clause, state courts have a concurrent duty to enforce federal law according to their regular modes of procedure. See, e. g., Claflin v. Houseman, 93 U.S. 130, 136 -137. Such a court may not deny a federal right, when the parties and controversy are properly before it, in the absence of a "valid excuse." Douglas v. New York, N. H. & H. R. Co., 279 U.S. 377, 387 -389. An excuse that is inconsistent with or violates federal law is not a valid excuse: The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source. See, e. g., Mondou v.*

*New York, N. H. & H. R. Co., 223 U.S. 1, 57. A valid excuse may exist when a state court refuses jurisdiction because of a neutral state rule of judicial administration, see, e. g., Douglas, supra, unless that rule is pre-empted by federal law, see Felder v. Casey, 487 U.S. 131. Pp. 367-375* c)

Plaintiff's have presented federal claims in the state courts, those claims have been ignored. Moreover, the plaintiff's have filed over 20 motions to vacate orders, amend erroneous orders, to have hearings on the merits, to receive child support from a child support order that has never been vacated, and to have state court judges sign orders which reflect the bench decision rendered; in violation of the law; the plaintiff's have not been allowed to be heard.

R.I State judges are states officers, if they violate a litigants rights protected by the United states Constitution their authority is stripped away, their orders are not voidable, but void, and of no legal force and effect.

Carol has moved to vacate other orders in Family Court, those orders were either fraudulent, or were prohibited from entering based statutory law, as the order was timely objected to.

**RES JUDICATA, PRECLUSION, ABSTENTION AND COMITY**

**Federal resjudicata and preclusion**

Federal Courts are foreclosed from claim preclusion unless a matter was heard on the merits. It is without peradventure that Cesario I, II and Cesario III were not decided on the merits, as Cesario I, A 1983 action, was dismissed because of lack of subject matter jurisdiction and failure to state a claim. Cesario II and III were never accepted by the court, Cesario III was soley based on filing fees. Preclusion or collateral estoppel, can only prevail if a case was decided on the merits; Under the doctrine of collateral

estoppel, when the second action is upon a different cause of action, the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).

**The First Circuit, in** its holding in *No. 03-1091 DEBORAH MILLS AND PETER MILLS,HARMON LAW OFFICES, P.C., SALEM FIVE CENTS SAVINGS BANK, clearly noted the district court dismissed cases "with prejudice" pursuant to the Rooker-Feldman doctrine. Our review of those cases indicates that, without exception, they originated in federal court and hence were not subject to the provisions of the federal removal statute. Accordingly, those cases do not counsel against the outcome we reach here.*

**Rivet v. Regions Bank, 522 U.S. 470, 474-77 (1998)** *A case blocked by the claim preclusive effect of a prior federal judgment differs from the standard case governed by a completely preemptive federal statute in this critical respect: The prior federal judgment does not transform the plaintiff's state-law claims into federal claims but rather extinguishes them altogether. See Commissioner v. Sunnen, 333 U.S. 591, 597 (1948) ("**The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, *******absent fraud or some other factor invalidating the judgment."*******). Under the well-pleaded complaint rule, preclusion thus remains a defensive plea involving no recasting of the plaintiff's complaint, and is therefore not a proper basis for removal**.*

******But where the second action between the same parties is upon a different cause or demand, the principle of [333 U.S. 591, 598] res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Cromwell v. County of Sac, supra, 353 of 94 U.S. And see Russell v. Place, 94 U.S. 606 ; Southern Pacific R. Co.v . United States, 168 U.S. 1, 48 , 27; Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 671 , 64 S. Ct. 268, 273. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of the Law of Judgments, 68, 69, 70; Scott, 'Collateral Estoppel by Judgment,' 56 Harv.L.Rev. 1.***

The United States Supreme Court holding in Rivets v Regions Bank clearly controls claim preclusion in this case. Further, void judgments, orders that are fraudulent or were so repugnant to the absolute guarantees of due process that the United States Constitution guarantees; can never be final. Simply stated, the merits of the plaintiff's claims that

orders are void have never been "litigated and determined". The only federal claims that can be barred by preclusion are claims that were not litigated. Cesario's claims were never litigated, as the court declined jurisdiction. A void judgment procured by fraud can be collaterally attacked. A void order, based on gross irregularities in due process, is certainly a reason to invalidate an order; it is the Court's duty to vacate the void order. Of course it is without peradventure that no merits could have been reached if the District Court did not accept jurisdiction in Cesario I, II and III. Additionally, it is without peradventure if a court order enters in violation to due process rights or in the face of valid statutory or procedures depriving the order of validity, the order is void.

**Ruhrgas AG v Marathon Oil Co et al 526 U.S 574 (1999)** Justice Ginsberg: *Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind the parties.*

While Federal Court attempted to state that the R.I Supreme Court had both subject matter and jurisdiction over Cesario in its previous dismissal of Cesario I, the Court failed to take in to account that the court must comply with statutes and the U.S Constitution to assume in personam jurisdiction and subject matter jurisdiction over the motions heard. Without, compliance of both the statutes and Constitution of the United States, the court exceeds it's authority, whereby jurisdiction is completely lost relative to those matters. Simply put, a court cannot just enter orders without notice and an opportunity of the litigants to be heard simply because the court has jurisdiction over action. Lack of subject matter jurisdiction (of the purported motions before the court) precludes a disposition on claims against "void" judgments must be heard on the merits and it is the Court's duty to resolve the issue. Void judgments are not subject to res judicata for the same reasons, there has never been a decision on the merits as to whether the orders are void. Moreover, all of Carol's claims were discovered after Cesario I. The fraud regarding Bergquist preparing a fraudulent order stating that Cesario was restrained

from contacting the minors which was signed by Judge Fortunato was not discovered until after Cesario I.

## STATE PRECLUSION AND RES JUDICATA

The Plaintiff's direct the court's attention to the 2005 U.S. Supreme Court's holding in ExxonMobile, as Rooker-Feldman does not present ANY bar to jurisdiction, The Supreme Court next stated that the federal court's would defer to the state's laws regarding claim preclusion and res judicata. **The Plaintiff's first state that neither State law preclusion or resjudicata law have any binding effect on federal courts, as the plaintiff's are seeking to vacate fraudulent final state court orders or orders that were so repugnant to due process that the orders void. However, for clarity, the plaintiff's will address R.I. law claim preclusion.**

******But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case.******

*Monroe v. Pape, supra,* ***the Court inferred that Congress had intended a federal remedy in three circumstances: where state substantive law was facially unconstitutional, where state procedural law was [449 U.S. 90, 101] inadequate to allow full litigation of a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice. 365 U.S., at 173 -174. In short, the federal courts could step in where the state courts were unable or unwilling to protect federal rights., or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim.*** *Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exists:* ***Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.***

**Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828):** Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is *"without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828)*

**World-Wide Volkwagen Corp. v. Woodson, 444 U.S. 286 (1980)** *A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere. Pennoyer v. Neff, 95 U.S. 714, 732-733 (1878)."*

ExxonMobile Supra, ***If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction and state law determines whether the defendant prevails under preclusion principles.*** *Pp. 10-12*

**RI GENERAL LAWS CHAPTER 9-21 Judgments, Orders, and Decrees SECTION 9-21-2**

§ 9-21-2 Relief from judgment or decree. – (a) On motion and upon such terms as are just, a court may relieve a party or his or her legal representative from a final judgment, order, decree, or proceeding entered therein for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under applicable law; (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) The judgment is void; (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) Any other reason justifying relief from the operation of the judgment. (b) The motion shall be made within a reasonable time and not more than one year after the judgment, order, or proceeding was entered or taken **CHAPTER 9-11Superior Court Practice SECTION 9-11-7** § 9-11-7 Trials without jury. – In every action at law originally brought in the superior court or removed to the superior court on appeal from a district court, if neither party claims a jury trial in **accordance with applicable procedural rules**, then jury trial as of right shall be deemed to be waived in the case and trial shall be had in such form as the **court shall determine in accordance with applicable procedural rules.**

Both the Domestic Court and the Superior Court Rules of Procedures incorporate Chapter 9-21. Further Rule 60 (b) (6) in both Superior and Domestic Rules of Procedures provide in part; this rule does not limit the power of a court to entertain an independent to relieve a party of a judgment or order or to set aside a judgment for fraud.

Moreover, the RI Supreme court's holding in LaMarche v LaMarche n
74 147 12/3/ (1975) RI Supreme Court. *Two essential elements of a valid judgment are that the court have jurisdiction of the subject matter and of the parties whose rights are to be adjudicated. A valid judgment cannot be entered against the individual who has not received*

*notice which would have afforded an opportunity for the concerned individual to show cause against its entry. The Family Court had no jurisdiction over the wife when it entered the suspension order and as a consequence the order is void. The universal rule holds that "a judgment is void on its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect, no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows an or extinguishes any right, and may be assailed whenever it is offered as the foundation for the assertion of any claim.*

**Deluca v Deluca 2202-9 p 00 2027***First, a void judgment or decision is one lacked jurisdiction over the matter or when the court's action violated a procedural requirement so substantial that it amounted to a "plain usurpation of power constituting a violation of due process" Allstate v lombardi 773 a2d 864 (2001) (quoting Hoult v Hoult 57 f3d 1 (1st Cir 1995) for a judgment to be void** it must be determined that the rebndering court was powerless to enter it. " a void judgment is from its inception a legal nullity U.S V Boch Oldsmobile 909 f2d 657 (1st Cir)*

## ABSTENTION

**Abstention for Superior Court proceedings**

Judge Smith's memoranda and order dated 3/10/2006 states that because the Superior Court hearings stemmed from the divorce proceedings abstention is warranted due to the domestic relations doctrine. That doctrine in inapplicable as a matter of law, as the Supreme Court has been very clear that abstention is only warranted in "issuing divorce decrees, determining alimony, child custody, alimony and support. Moreover, Family Court is a court of limited jurisdiction, the Superior Court hearings were not related to the divorce proceedings. Domestic relations jurisdiction lies with the Family Court.

The District Court also cites Abstention in moving to dismiss this action with prejudice. Judge Smith states that abstention would prevent the Plaintiff's from vacating void judgments if Rooker-Feldman failed. Judge Smith cites that abstention should occur because Carol's claims arise out of a divorce proceeding. The Plaintiff's state that Judge Smith's relying on abstention is absolutely erroneous; and in clear violation of the Supreme Law of the Land. Unfortunately, Judge Smith cited cases in his memoranda and order that are not applicable as it relates to this action. Abstention is not permissible as a bar to the Appellants claims. Jurisdiction of the Court can be claimed through 28 U.S.C. 1332, 28 U.S.C. 1331. The plaintiff's respectfully direct the court to the U .S. Supreme Court's holding in **Ankenbrant v Richards, 504 US 689 (1992),**

*The District Court erred in abstaining from exercising jurisdiction under the Younger doctrine. Although this Court has extended Younger abstention to the civil context, it has*

*never applied the notions of comity so critical to Younger where, as here, no proceeding was pending in state tribunals. Similarly, while it is not inconceivable that, in certain circumstances, the abstention principles developed in Burford v. Sun Oil Co., 319 U.S. 315 , might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody, such abstention is inappropriate here, where the status of the domestic relationship has been determined as a matter of state law and, in any event, has no bearing on the underlying torts alleged. Pp. 704-706.*

See also Catz v Chalker,142 F32d 279(6th Cir), Kahn v Kahn 21 F3d858 (8th Cir) and *Quackenbush v Allstate 517 US 706(1996), equitable cases," 47 F. 3d, at 356, but rather have extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief..*

*We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. See, e.g., Colorado River, 424 U.S., at 821 ("[F]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them"'); England v. Louisiana Bd. of Medical Examiners, 375 U.S. 411, 415 (1964) ("`When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction"') (quoting Willcox v. Consolidated Gas Co., 212 U. S. 19, 40 (1909)); Cohens v. Virginia, 6 Wheat. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not"). This duty is not, however, absolute. See Canada Malting Co. v. Paterson S. S., Ltd., 285 U. S. 413, 422 (1932) ("[T]he proposition that a court having jurisdiction must exercise it, is not universally true"). Indeed, we have held that federal courts may decline to exercise their jurisdiction, in otherwise "`exceptional circumstances,'" where denying a federal forum would clearly serve an important countervailing interest, Colorado River, supra, at 813 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959)), for example where abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration," Colorado River, supra, at 817 (internal quotation marks omitted)...... Though we have thus located the power to abstain in the historic discretion exercised by federal courts "sitting in equity," we have not treated abstention as a "technical rule of equity procedure." Thibodaux, supra, at 28. Rather, we have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. See NOPSI, supra, at 359 (mandate of federal jurisdiction "does not eliminate . . . the federal courts' discretion in determining whether to grant certain types of relief"). Justice Scalia "Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the Burford doctrine."*

**ALLEGHENY COUNTY v. MASHUDA CO., 360 U.S. 185 (1959**) *The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its*

*jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only [360 U.S. 185, 189] in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. Since no exceptional circumstances justifying abstention appear in this case we think that the Court of Appeals was correct in holding that the District Court should have adjudicated the respondents' claim.*

**COLORADO RIVER WATER CONS. DIST. v. U.S., 424 U.S. 800 (1976***) Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 -189 (1959). "[I]t was [424 U.S. 800, 814] never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." Alabama Pub. Serv. Comm'n v. Southern R. Co., 341 U.S. 341, 361 (1951) (Frankfurter, J., concurring in result). Our decisions have confined the circumstances appropriate for abstention to three general categories.*

*(a) Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." County of Allegheny v. Frank Mashuda Co., supra, at 189. See, e. g., Lake Carriers Assn. v. MacMullan, 406 U.S. 498 (1972); United Gas Pipeline Co. v. Ideal Cement Co., 369 U.S. 134 (1962); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941). This case, however, presents no federal constitutional issue for decision.*

*(b) Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959), for example, involved such a question. In particular, the concern there was with the scope of the eminent domain power of municipalities under state law. See also Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593 (1968); Hawks v. Hamill, 288 U.S. 52 (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In Burford v. Sun Oil Co., 319 U.S. 315 (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil [424 U.S. 800, 815] wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields. See also Alabama Pub. Serv. Comm'n v. Southern R. Co., supra. 21*

*The present case clearly does not fall within this second category of abstention. While state claims are involved in the case, the state law to be applied appears to be settled. No questions bearing on state policy are presented for decision. Nor will decision of the state claims impair efforts to implement state policy as in Burford. To be sure, the federal claims that are involved*

*[424 U.S. 800, 816] in the case go to the establishment of water rights which may conflict with similar rights based on state law. But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction. See Meredith v. Winter Haven, 320 U.S. 228 (1943); Kline v. Burke Constr. Co., 260 U.S. 226 (1922); McClellan v. Carland, 217 U.S. 268 (1910). The potential conflict here, involving state claims and federal claims, would not be such as to impair impermissibly the State's effort to effect its policy respecting the allocation of state waters. Nor would exercise of federal jurisdiction here interrupt any such efforts by restraining the exercise of authority vested in state officers. See Pennsylvania v. Williams, 294 U.S. 176 (1935); Hawks v. Hamill, supra.*

*(c) Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, Younger v. Harris, 401 U.S. 37 (1971); Douglas v. City of Jeannette, 319 U.S. 157 (1943); 22 state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); or collection of state taxes, Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943). Like the previous two categories, this category also does not include this case. We deal here neither with a criminal proceeding, nor such a nuisance proceeding, nor a tax collection. We also do not deal with an attempt to restrain such actions 23 or to seek a [424 U.S. 800, 817] declaratory judgment as to the validity of a state criminal law under which criminal proceedings are pending in a state court.*

**DOMBROWSKI v. PFISTER, 380 U.S. 479 (1965)** *(b) Abstention is inappropriate where a statute regulating speech is properly attacked on its face as being unconstitutionally vague. Pp. 490-491.The judgment of the District Court is reversed and the cause is remanded for further proceedings consistent with this opinion. These shall include prompt framing of a decree restraining prosecution of the pending indictments against the individual appellants, ordering immediate return of all papers and documents seized, and prohibiting further acts enforcing the sections of the Subversive Activities and Communist Control Law here found void [380 U.S. 479, 498] on their face. In addition, appellants are entitled to expeditious determination, without abstention, of the remaining issues raised in the complaint. It is so ordered.*

**NEW ORLEANS PUB. SERV., INC. v. NEW ORLEANS, 491 U.S. 350 (1989)** Held: The District Court erred in abstaining from exercising jurisdiction. Pp. 358-373. *(a) The Burford abstention doctrine - under which federal equity courts must decline to interfere with complex state regulatory schemes in cases involving (1) difficult state-law questions bearing on policy problems of substantial public import, or (2) efforts to establish a coherent state policy regarding a matter of substantial public concern - is not applicable. This case does not involve a state-law claim, nor even an assertion that NOPSI's federal claims are in any way entangled in a skein of state law that must be unraveled before the federal case can [491 U.S. 350, 351] proceed. Because NOPSI's facial pre-emption claim may be resolved without venturing beyond the four corners of the Council's rate order, federal adjudication of the claim would not unduly intrude into state governmental process or undermine the State's ability to maintain desired uniformity in the treatment of essentially local problems Our cases have long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." Cohens v. Virginia, 6 Wheat. 264, 404 (1821). "`[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor*

*of another jurisdiction.'" Chicot County v. Sherwood, 148 U.S. 529, 534 (1893) (citations omitted). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to [491 U.S. 350, 359] take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." Willcox v. Consolidated Gas Co., 212 U.S. 19, 40 (1909) (citations omitted). Underlying these assertions is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds. Kline v. Burke Construction Co., 260 U.S. 226, 234 (1922). That principle does not eliminate, however, and the categorical assertions based upon it do not call into question, the federal courts' discretion in determining whether to grant certain types of relief - a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted. See Shapiro, Jurisdiction and Discretion, 60 N. Y. U. L. Rev. 543, 570-577 (1985). Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is "the normal thing to do," Younger v. Harris, 401 U.S., at 45 . We have carefully defined, however, the areas in which such "abstention" is permissible, and it remains "`the exception, not the rule.'" Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236 (1984), quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). As recently as last Term we described the federal courts' obligation to adjudicate claims within their jurisdiction as "`virtually unflagging.'" Deakins v. Monaghan, 484 U.S. 193, 203 (1988) (citation omitted).*

The Districts Court reliance on Younger v Harris 401 US 37 (1971) and Hemon v Office of Public Guardian 878 F2d 13 (1st Cir 1989) must fail, as Ackenbrandt clearly controls. Younger concerns restraining a State, not vacating void orders. The First Circuit clearly cited the principles of Ackenbrandt in a 2001 case, **Dunn v Cometta No 00-1053, decided and published on January 26th 2001.** In Dunn, citing Catz supra, the First Circuit vacated dismissal on all counts citing the limited exception Ackenbrandt allowed. The Court clearly noted that the claims came out of the divorce proceedings, however if the claim was not seeking a divorce, alimony or an adjudication of child custody then the District Court could not dismiss the action. Additional cases reversed by U.S. Circuit Courts that are more recent are Frielander v Frielander, 149 f3d 739 (7th Cir 1998) and Compare Stone v Wall 135 F3d 1438, 14441-43 (11th Cir), all cited by the First Circuit in Dunn. The Appellants claims revolve around void orders and due process violations which deprives the court jurisdiction to enter an order, not around issuing divorce decrees, alimony or child support. There are no complicated State laws implicated in Cesario's moving to vacate void orders.

**Younger doctrine and bad faith**

Moreover, Carol filed a motion to recuse Judges Goldberg and Suttell, as they affirmed a fraudulent, phantom order; of the Superior Court, prepared by Bergquist; in so much as

that fraudulent order was the sole basis of Mutter's decision on 3/24/2004; Younger cannot apply because Carol was not afforded a fair trial. (**exhibit 20**). Goldberg and Suttell falsely stated the reason why Carol was found unfit; the only reason Family Court judge Mutter cited; was that Carol knew there was a restraining order upheld by the Supreme Court. The order was fraudulently prepared by Bergquist, and the Supreme Court did not address Cesario's acknowledge or address Cesario's IV amendment claims as to that order. On /5/4/2004, only a short time after the Supreme Court declined to hear rehearing petitions, Superior Court Judge Procaccinni found the order not credible and ordered that Bergquist could not bring any claims regarding the children in Superior Court. How could Judge Goldberg and Suttell be expected to be impartial, when the very order which was introduced into evidence, the amended April 15th 2002 order signed by Judge Fortunato, that was fraudulent, and entered without notice or an opportunity to be heard in violation of the most basic IV Amendment protections; was affirmed by Supreme Court Goldberg and Suttell without even acknowledging Cesario's federal claims in his appeal. The Supreme Court, Judges Goldberg, Surttell and Robinson, were so biased they would not let Carol have a transcript of the children's testimony; as the inconsistencies in their testimony is obvious. The children all parroted the same thing, including that they lived with Bergquist. The very next day after their interview, 1/28/2004, we have video's of the children jumping on and playing with Cesario.

It did not take Judge Procaccini very long to see that the children were lying, and he found the children not credible. The DCYF report shows as early as 2001, Sarah stating she was afraid of Cesario, a man she did not know; nor could she give a reason why she was afraid. She was being coached by Bergquist. The plaintiff's reaver and allege that Goldberg, Suttell and Robinson could hardly perform their duties in an unbiased, professional and ethical standard, considering that a Superior Court judge had found the order they affirmed not credible.

**ESTES v. TEXAS, 381 U.S. 532 (1965)** *A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . [T]o perform its high function in the best way `justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 14 ." At 136. (Emphasis supplied.)*
*And, as Chief Justice Taft said in Tumey v. Ohio, 273 U.S. 510 , almost 30 years before:*

*"the requirement of due process of law in judicial procedure is not satisfied by the argument that men of the highest honor and the greatest self-sacrifice could carry it on without danger of injustice. Every procedure which would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." At 532. (Emphasis supplied.)*

**HEARING 3/24/2004**

Carol cannot be barred from any due process of law claim arising out of the 3/24/ 2004 hearing .

A) The Motion For a Change Of Placement Was a Legal Nullity and the Court was prohibited by Statute and Rules Of Procedure From Being Considered.

B) Carol was denied rights protected by Fourteenth Amendment due process as she was not allowed to cross examine witnesses, have witnesses heard, present evidence that the Superior Court order was void nor was she given notice that the Motion To Change Placement was on the calendar as it was a legal nullity.

C) Did the Court have the authority to enter a sua sponte restraining order against her from having her husband in the presence of the children until the Superior Court order was taken care of. Carol has properly asserted that such an order denying her due process to notice and an opportunity to be heard is in violation of the Fourteenth Amendment. The Supreme Court order does not even address this, nor does it address Carol' s14th amendment claims and Equal Protection Under the law claims.

Carol's claims are not barred by Rooker-Feldman Exxon Mobile supra, *When there is parallel state and federal litigation,* Rooker-Feldman *is not triggered simply by the*

*entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."* McClellan *v.* Carland, *217 U. S. 268, 282 (1910); accord* Doran *v.* Salem Inn, Inc., *422 U. S. 922, 928 (1975);* Atlantic Coast Line R. Co., *398 U. S., at 295. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. See,* e.g., Colorado River Water Conservation Dist. *v.* United States, *424 U. S. 800 (1976);* Younger *v.* Harris, *401 U. S. 37 (1971);* Burford *v.* Sun Oil Co., *319 U. S. 315 (1943);* Railroad Comm'n of Tex. *v.* Pullman Co., *312 U. S. 496 (1941). But neither* Rooker *nor* Feldman *supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains* sub judice *in a federal court.*

**The RI Supreme Court passed on deciding Carol's Constitutional Claims.** R.I Supreme Court UNPUBLISHED ORDER dated 10/20/2005 which was not mailed to the parties until 3/18/2006. Carol presented these claims in her Supplement; 12, 12A and Final Brief, as well as at oral argument; yet the R.I. Supreme Court did not address these claims. Plaintiff's draw the Court's attention to Page 3 of the unpublished Supreme Court order; as there is a footnote which states;

Mrs. Cesario also contends that the issue of change of placement of the children was not properly before the court and that she did not have proper notice. It is clear, however, from even a cursory review of the record that defendant filed at least one motion entitled "Motion for a Change of Placement of the Minor Children and Other Relief" and that Mrs. Cesario knew or should have known that that issue would be addressed at the hearing.

The record of the case shows that the motion for a change of placement the R.I Supreme court referenced was dated 7/23/2002. That motion was denied by Family Court Judge Voccolla on 12/18/2002.

An order entered on 5/9/2004 does not carry over any previous motions; the record shows that there were no pending motions on the calendar.

Carol's 12a supplemental brief presented 12 Questions Under Appeal:

**IF THE R.I SUPREME COURT STATES ACTUALLY STATES A CHANGE OF PLACEMENT MOTION WAS PROPERLY ON THE CALENDAR, THAT CONSTITUTES FRAUD ON THE COURT AND SUBJECTS THE ORDER TO COLLATERAL ATTACK BASED ON FRAUD. MOREOVER, IF THE SUPREME COURT HOLDS THAT THE MOTION THAT WAS PREVIOUSLY DISPOSED OF WAS PROPERLY ON THE CALENDER AND CAROL SHOULD HAVE KNOWN THAT MOTION WAS GOING TO BE HEARD; THEN THE ORDER WAS VOID BASED ON DUE PROCESS CLAIMS THAT ARE SO GROSSLY REPUGNANT TO THE CONSTITUTION THAT THE ORDER IS VOID VIA CAROL'S FOURTEENTH AMENDMENT CLAIM .**

**1. Was the Order transferring placement of the children issued by Judge Mutter based on the hearing on 3/24/2004 a violation of the petitioners Due Process rights as protected by the Fourteenth Amendment and the Due process Claus of the United States Constitution and R.I Constitution.**

**2. Was the order transferring placement of the children issued by Judge Mutter based on the hearing of 3/24/2004 an error of law and the Rules of Procedures as the record proves that no motion was pending before the Court for such an action.**

It is without peradventure that a change of placement motion was not properly on the calendar in accordance with statutes and rules of procedures, Carol's rights protected by the Fourteenth Amendment were egregiously violated; for instance.

A. Why did Bergquist file a pleading called "MOTION" on 1/31/2001 which plead for a change of placement if one was already on the calendar .
B. What motion did Mutter grant, if not the 1/31/2004 illegal Motion seeking a change a placement, as there is none docketed with the Family Court
C. Why did Judge Mutter state on 8/25/2004 deny Carol's rehearing based on lack of due process by stating, " sui juris based on your testimony that
D. On 4/28/2003 an order entered in Family Court, that order did not include carrying over any motions outstanding; and there is noting in the record or docket that would support the wildest notion that a change of placement motion was on the calendar; exempt for the Motion filed by Bergquist on 1/29/2004 which was a legal nullity.

Further, the transcript of 3/24/2004; pages 23 and 24; after Judge mutter entered a sua sponte illegal restraining order on Carol; stated as follows;

The Court: Mr Lynch, do you have anything?

Mr. Lynch: we have filed a motion for a change of placement to my client because of the repeated continued presence of John Cesario. Your honor, when we were here before you in this court on march 10th that supreme Court decision, specifically page 12,paragraph 2, was read in open court several times. This witness read it herself. Yet on March 10th, the very day that was read to her, within an hour she was at that property

with John Cesario, knowing full well that these children had come before the Court and stated that they were afraid of John Cesario. And I would ask that these children until further order of the court, be allowed to, and since she has continued to do this in the face of admonition after admonition, that these children be placed with their father.

The Court: The Court's going to make that order, that the children be placed with the father…

Mr. Lembo: (Carol's lawyer) I haven't completed.. CUT OFF BY MUTTER

The Court: *I made the ruling Mr Lembo, based on the evidence. There is already a restraining order. The very fact that she knows there a restraining order and she can hedge as much as she wants, she knows there is a restraining order which has been upheld by the Supreme Court, and in view of that, she has assisted Mr Cesario in coming into contact with the children, which in the opinion of this court, makes her unfit to have the children at this point in time.*

Moreover, Bergquist, in his filings with the R.I Supreme Court; never stated a change of placement motion was granted, Berguist had a contempt motion that was not granted; which included a prayer of relief for a change of placement. Carol fully briefed the Court that there was not a Change of Placement Motion before the Court and the "Motion" Lynch filed seeking a change of placement was a legal nullity as it did not comport with the 5 day rule; clearly denying the Court jurisdiction.

Additionally, the children testified relative to a contempt motion. Carol was not found to be in contempt of any order. Further, due process violations rendering the hearing void is that Carol was not afforded an opportunity to be heard or present witnesses. Carol had witnesses and evidence she wanted to admit, the transcript of the hearing proves this. Had witnesses and evidence been allowed Carol would have been able to prove:

1. That the children were being brainwashed for 4 years by Bergquist, Carol would have been able to admit the DCYF report of 2001 in which Bergquist was found to be instilling murder threats regarding Cesario; and Bergquist was coaching the children what to say. (Cesario did not know the children until 9 /2003 )

2. That Judge Voccolla found Bergquist to " be angry with carol's relationship with Cesario and destructively conveyed that anger in the presence of the children.
3. That Bergquist was arrested for assaulting carol in the presence of the children
4. Introduce tape recordings of Bergquist being abusive in front of the children, and attempting to get the children to chant they hate Cesario. (on 4/7/2004 in superior Court Judge Procaccini listened to these outrageous tapes). Carol clearly indicated that she wanted to introduce evidence)
5. Introduce video's of the children playing with Cesario, including jumping down stairs and having Cesario catch them, asking Cesario to give them piggy back rides and swimming with the children. On 4/7/2004 Judge Procaccini watched these tapes, and examined pictures. Judge Procaccini found the children's testimony totally not credible, as they expressed to him they knew the difference between telling the truth and lying. Carol clearly indicated that she wanted to introduce video's of the children's relationship with Cesario.
6. Carol was not allowed to cross examine the children or call them as witnesses. Bergquist called them as witnesses on his contempt motion. Cesario clearly proved the children were lying in superior court; as they were afraid of Bergquist.

Carol appeared in court based on a motion to adjudge her in contempt for violating a "purported" restraining order from 12/18/2001, the final judgment. Carol filed motions to vacate the "purported order" based on fraud as the order did not comport with the bench decision of Judge Bedrosian on 9/17/2001 Decision Pending Final Judgment. The children appeared for an in-camera interview on based on Bergquist's pressing his motion to adjudge Cesario in contempt.

Bergquist filed a Motion which sought a change of placement on 1/29/2004, **(exhibit 22 motion, legal nullity**) not only was the motion a legal nullity depriving the court jurisdiction, it was filed **after the children testified.** Carol never received said motion, but as it did not comport with the 5 day rule, and no waiver was consented to, the motion deprived Mutter jurisdiction from adjudicating the merits. The motion was a legal nullity as it did not comport with statutes and Rules of Procedures regarding the 5 day notice rule. Therefore, Bergquist could not obtain relief from said motion because the motion was a legal nullity and in violation of the laws passed by the General Assembly of RI. The record and the docket sheet is wholly bereft of any Motion to Change Placement of the Minors, as exhibit 23 indicates, no motion were carried over as of 5/9/2003 **(exhibit 23 ORDER, showing no continuances**) .

Further, the RI Supreme Court order dated 10/20/2005, which is stamped "THIS ORDER WILL NOT BE PUBLISHED" ( **exhibit 24, Supreme Court order dated 10/20/2005)** states the hearing justice repeatedly "ignored" the restraining orders and that such contumacious defiance of court orders render her an unfit parent. CAROL WAS NOT FOUND TO VIOLATE ANY COURT ORDER".

The order also states, as previously referenced, that a cursory view of the file indicates that a Motion For A Change Of Placement Of The Minor Children & Other Relief was in the file, the Motion was filed on 7/26/2002; it is clearly on the docket sheet, and it was clearly disposed of in Carol's favor in 2002 . ( see **exhibit 25** Motion For A Change Of placement and Other Relief dated 7/23/2002, docketed 7/26/2002). There was no other motion properly placed on the calendar, see docket sheet; and the only motions Bergquist continued to file after 5/9/2003; where contempt motions. That is; until he filed the

Motion, on 1/29/2004, which stated no grounds, nor made any charges available to Carol; the motion was a nullity.

Carol was blatantly denied a full opportunity to be heard as she brought witnesses, video's and intended on questioning the children on her motion. Bergquist had been telling the children to say they are afraid of Cesario since January 2000. Cesario never had contact with the children until September of 2003. A DCYF report not only states that in 2001 Bergquist was instilling murder fears in the children, but was coaching the children.

a) The children had an in camera interview with the children on 1/27/2004 on Bergquist's Motion to Adjudge Carol in Contempt. Carol was denied a transcript of the en camera interview at the trial court level and the RI Supreme Court. Carol now has transcript.

b) On 1/31/2004 Bergquist filed a Motion to Change Placement and set it on the calendar to be heard on 2/3/2004. The motion was a legal nullity the Family Court was deprived jurisdiction over the motion per statute, as the motion did not comport with the 5 day rule.

c) Bergquist rested his case on the children's en camera interview. The children did not testify on the motion to change placement, as that illegal motion was filed after the in camera interview. Carol was not allowed to produce witnesses and evidence including video's of Cesario's relationship with the children. Not allowing to provide witnesses and video's violated Carol's rights to a full and fair trial as guaranteed by the United States Constitution

d) On 3/24/2004 Family Court changed placement based on finding Carol was assisting Cesario in violating a Superior Court order. The order was void, Family court had no jurisdiction

e) The RI Supreme Court did not address Carol's claims that the motion to Change Placement was a legal nullity which deprived Family Court jurisdiction per statute and that Carol's 14th Amendment rights were violated predicated on Carol being deprived an opportunity to present witnesses, video's and other evidence.

Further, in light of the RI Supreme Court's recent order stating that relief was granted Bergquist based on his aforementioned Motion For A Change Of Placement, Carol has an absolute right to collaterally attack a final State Court judgment that is void for lack of in personam jurisdiction based on the Court being deprived of jurisdiction by STATUTE. The Supreme Court order did not address Carol's stated Fourteenth Amendment claim that Carol was not allowed due process to have a full, complete and impartial hearing, she was able to make testimony that the children always told the police they were safe and wanted to stay with us, the children never called Bergquist to have him remove them from our home, and Carol was able to testify that Berqquist instilled fears in the children long before Cesario knew the children. Further, Judge Mutter told Carol to get married in 2 hearings and one of the transcripts to that effect was entered in evidence. Judge Mutter never referenced a change of placement motion, in fact he was told on 3/24/2004 by Carol's attorney that Bergquist only had a motion to adjudge her in contempt on the calendar. On 8/25/2005 Carol appeared before Mutter on a Motion For Reconsideration, and Mutter stated he issued the order sui juris. ( exhibit 26 transcript of in camera interview, prior to motion filed, whereas Carol had no opportunity to call them as witness)

Certified

I John Cesario Certify THAT The memo-Anda/Exhibits and motion WAS sent To Bergquist AT 189 Legion Way, Cranston RI on 4/7/2006 priority mail

[signature] 4/6/2006